Grant Hanessian (GH-6582)
Susan Knox (SK-4110)
BAKER & McKENZIE LLP
805 Third Avenue
New York, New York 10022
(212) 751-5700

Attorneys for Plaintiff ITABO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
EMPRESA GENERADORA DE ELECTRICIDAD     :
ITABO, S.A. ("ITABO"),
                                       :
        Plaintiff,                            05 Civ. _____
                                       :
             - against -
                                       :      **COMPLAINT**

                                       :
CORPORACIÓN DOMINICANA DE EMPRESAS     :
ELÉCTRICAS ESTATALES ("CDEEE"),
                                       :
        Defendant.                     :
-------------------------------------------------------------- X

Plaintiff Empresa Generadora de Electricidad ITABO, S.A. ("ITABO"), by its attorneys Baker & McKenzie LLP, as and for its complaint against defendants Corporación Dominicana de Empresas Eléctricas Estatales ("CDEEE"), alleges as follows:

## THE PARTIES

1.      Plaintiff ITABO is a corporation organized and existing pursuant to the laws of the Dominican Republic with its principal place of business located at 1108 Avenida Romulo Betancourt, Sector La Julia, Santo Domingo, Dominican Republic.

2.      Upon information and belief, defendant CDEEE is an autonomous public service entity of the Dominican Republic, organized and existing under General Electricity Law No. 125

1

NYCDMS/440828.2

dated July 26, 2001, with its principal place of business located at Avenida Independencia and Calle Fray Cipriano de Utera del Centro de los Héroes de Constanza, Maimón y Estero Hondo (La Feria), Santo Domingo, Dominican Republic. Upon information and belief, a majority of CDEEE's shares is owned by the Government of the Dominican Republic and it is thus an agency or instrumentality of that Government as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1603(b).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to the provisions of 9 U.S.C. §203, 28 U.S.C. §1331, and 28 U.S.C. §1602 *et al.*

4. Venue is proper in the Southern District of New York pursuant to the provisions of 9 U.S.C. §204, and 28 U.S.C. §§1391(b), (c) and (f)(1) and (3).

5. Pursuant to Article 23(2) of the Rules of the Arbitration of the International Chamber of Commerce effective January 1, 1998 ("ICC"), this action is not incompatible with the arbitration that is currently pending before that organization.

## SUMMARY OF THIS ACTION

6. This is an action seeking relief in aid of an arbitration ITABO commenced in February 2005 pursuant to the ICC Rules, under ICC Case No. 13708/CCO (the "New York Arbitration"). Pursuant to the parties' agreement, the arbitration is to be conducted under New York law. On May 18, 2005, the ICC established New York, New York as the seat of arbitration. The arbitration panel has not yet been fully constituted.

7. ITABO seeks to enjoin CDEEE, a Respondent and Counter-Claimant in the Arbitration, from pursuing litigation it initiated in the Dominican Republic against ITABO

concerning disputes within the scope of the parties' arbitration agreement. Although CDEEE has answered the Demand for Arbitration and named its arbitrator, CDEEE has continued to pursue the Dominican litigation. Not withstanding ITABO's efforts to stay the Dominican litigation in favor of the New York Arbitration, the Dominican courts have required that ITABO and CDEEE proceed to trial on the merits of their dispute on May 27, 2005. In the Dominican litigation, CDEEE seeks to divest ITABO of its assets. If ITABO defaults on the merits of the Dominican litigation by refusing to answer matters related to the dispute or CDEEE otherwise receives the relief it has requested from the Dominican court, it will be impossible for ITABO to continue to do business, and the New York Arbitration will be rendered a nullity. If ITABO contests the merits of the dispute in the Dominican litigation, it may be considered to have submitted itself to the jurisdiction of the local court and waived its rights to arbitrate the disputes in New York.

    8.    ITABO seeks the following relief in this action:

    a.    an order enjoining CDEEE from continuing with or pursuing other litigation in Dominican courts against ITABO pending the determination by the arbitrators in the New York Arbitration of the disputes, including the issue of jurisdiction, between the parties subject to the New York Arbitration;

    b.    a judgment declaring that the arbitrability of the disputes between ITABO and CDEEE is to be determined by the arbitrators in the New York Arbitration under New York law;

    c.    an order compelling CDEEE to submit to the New York Arbitration all of its disputes with ITABO consistent with the parties' arbitration agreements.

3

## FACTUAL BACKGROUND

9.  CDEEE is a state-owned company created in 2001 as a successor to Corporación Dominicana de Electricidad ("CDE"), the former Dominican state electricity company. CDEEE's exclusive purposes are to coordinate the electrical companies that remained public property after CDE was capitalized, to carry out public projects to electrify rural and suburban areas and to administer contracts with independent electricity providers.

10. ITABO is in the business of generating and providing electrical power. ITABO was incorporated in the Dominican Republic on September 8, 1999. It was one of several private companies created pursuant to Law 141-97 (the General Law of Reform of Public Companies) to undertake certain activities that had formerly been performed by CDE. ITABO was capitalized partly by the issue of Series A shares to CDE in exchange for certain assets relating to power generation, and partly by the issue of Series B shares to private foreign companies. A total of 28,177,778 Series B shares were issued in exchange for a total initial private investment of some $178 million.

11. ITABO's Series A and Series B shares are almost equal in number – with the result that the Dominican state (initially CDE) holds a 49.9% interest in ITABO and the foreign investors collectively hold a 50.1% interest. However, pursuant to its Bylaws, ITABO's board of directors consists of four representatives of the private shareholders and one representative of the Dominican state (initially CDE).

12. Pursuant to a series of contracts dated 1999 (collectively, the "Basic Contracts"), ITABO was to generate and supply electrical power to CDE and other electrical distribution companies that were created at the same time and by the same process as ITABO. Also

pursuant to the Basic Contracts, and as a result of the capitalization process, ITABO acquired a predetermined number of former state power plants. ITABO began operations after September 8, 1999.

13. In 2003, differences arose between CDEEE and ITABO concerning a rehabilitation project involving two units at ITABO's main power plants (the "Rehabilitation Project"). CDEEE, despite being kept fully apprised of the efforts related to the Rehabilitation Project, subsequently claimed that ITABO, which had carried out the project during the period from January of 2000 through September of 2003, had spent some $15.7 million more than necessary on the project, and that these funds had been paid to affiliates and subsidiaries of ITABO's foreign shareholders.

14. CDEEE has brought two different actions against ITABO in the Dominican Republic in connection with the dispute over the Rehabilitation Project. The first action (the "First Chamber Action") is an action for an accounting of the expenses incurred in connection with the Rehabilitation Project, in the First Chamber of the Civil and Commercial Court of First Instance for the National District, initiated on July 21, 2004. The second action (the "Fifth Chamber Action") is an action for an accounting of the expenses incurred in connection with the Rehabilitation Project (with fines for delays), and for damages for breach of contract, among other causes of action, in the Fifth Chamber of the Civil and Commercial Chamber of the Court of First Instance of the National District, also initiated on July 21, 2004. The actions are described in more detail below.

## The New York Arbitration

15. Arbitration clauses in the Basic Agreements and ITABO bylaws provide for arbitration of all disputes between the parties under New York law before the ICC. Although the clauses differ slightly in various respects, all clauses contain the following provision:

> Should the Dominican Republic ratify the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards adopted by the United Nations Conference on International Commercial Arbitration dated June 10, 1958 and/or the Panama Convention on Commercial Arbitration, then the parties agree to settle their disputes through international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988 and under the laws of New York . . .

The Dominican Republic became a state party to the New York Convention in 2001.

16. Pursuant to these clauses, ITABO commenced an arbitration against CDEEE and the Fondo Patrimonial de las Empresas Reformadas / Fondo Patrimonial para el Desarollo ("FONPER"), another successor to CDE, on February 8, 2005 under the ICC Rules. In the Request for Arbitration, ITABO seeks (1) a declaration that (a) the Basic Contracts are valid and effective and (b) CDEEE violated the Basic Contracts by initiating and proceeding with judicial and extrajudicial proceedings before the courts of the Dominican Republic; (2) an order enjoining CDEEE and FONPER from initiating or proceeding with any judicial or extrajudicial action in the Dominican Republic against ITABO inconsistent with the Basic Contracts; (3) a declaration that all ITABO shareholders must comply with the bylaws of ITABO and with the Basic Contracts in raising any questions concerning the management or administration of ITABO; (4) damages, including costs and attorneys' fees, for the failure of CDEEE and FONPER to comply with the dispute resolution procedures set forth in the Basic Contracts; and (5) costs and attorneys' fees relating to the ICC Arbitration.

NYCDMS/440828.2

17.    On May 18, 2005, the ICC selected New York as the situs of the arbitration. The parties have appointed arbitrators, and are awaiting appointment of a third arbitrator, after which time the panel will be constituted. ITABO, CDEEE and FONPER are all actively participating in the arbitration.

### The First Chamber Dominican Action

18.    The First Chamber Action was initiated by means of Bailiff's Act No. 1798/2004, filed in the First Chamber of the Civil and Commercial Court of First Instance for the National District on July 21, 2004.

19.    In this action, CDEEE has sought an order that ITABO provide an accounting, that ITABO's assets be seized if it failed to comply, and that the administrators of ITABO be held personally liable if the court order were not satisfied. CDEEE also sought an award of its attorney's fees, and sought to have the entire court order be enforceable immediately, regardless of any right of ITABO to appeal.

20.    ITABO refused to participate in the litigation, maintaining that the dispute should be arbitrated under the arbitration agreement contained in ITABO's bylaws and the Basic Contracts. The First Chamber of the Civil and Commercial Court of First Instance dismissed CDEEE's case on November 29, 2004, on the grounds that (a) CDEEE had not submitted to the court the proofs necessary to substantiate its allegations, (b) the audit reports provided by Stone & Webster Management Consultants Inc. (dated August 1, 2004 and August 12, 2004), and the other proofs offered by CDEEE, failed to show any neglect on the part of ITABO's management, and (c) CDEEE had offered no evidence that ITABO had failed to provide an accounting.

21. CDEEE appealed the dismissal to the Civil and Commercial Chamber of the Court of Appeal of Santo Domingo. ITABO appeared at oral argument of the appeal on May 12, 2005, to ask the Court of Appeal to declare that the courts are without jurisdiction or are divested of jurisdiction because of the ongoing New York Arbitration and the arbitration clause in the Basic Contracts and ITABO's bylaws. Notwithstanding that the Court of Appeal has a legal procedural obligation – pursuant to Article II of the New York Convention, together with the Arbitration Agreement contained in ITABO's bylaws and the Basic Contracts – to determine before reaching the merits whether it has jurisdiction to hear a case, the Court reserved judgment on ITABO's argument that the matter should be resolved in arbitration, and ordered that the parties be heard on the merits at the hearing scheduled to begin on May 27, 2005.

### The Fifth Chamber Dominican Action

22. CDEEE initiated the Fifth Chamber Action by means of Bailiff's Act No. 422/2004, filed in the Fifth Chamber of the Civil and Commercial Court of First Instance for the National District on July 21, 2004.

23. Filing No. 422/2004 is significantly longer and more detailed than Filing No. 1798/2004, and seeks not only an accounting, but the imposition of sanctions on ITABO and certain officers of ITABO for noncompliance, the payment of money damages including punitive damages, and the payment of interest and attorneys' fees. The allegations contained in Filing 422/2004 are based in part on the preliminary findings of an audit ordered by FONPER and performed by Grant Thornton, an international accounting firm. The Grant Thornton audit did not relate to the Rehabilitation Project.

24. On March 30, 2005 a hearing took place at which ITABO's counsel asked the Fifth Chamber Court to refer the parties to arbitration. As it had done in the First Chamber,

ITABO argued that the Dominican courts are without jurisdiction or are divested of jurisdiction because of the arbitration agreement, local law, and the ongoing New York Arbitration. ITABO also argued that respecting the agreement to arbitrate was particularly important in light of the grave harm that a lack of respect for agreements entered into by the Dominican State with individuals and foreign private investors who have relied on the country's adherence to the rule of law would have on the foreign investment climate in the Dominican Republic and its prestige. ITABO further argued that it is improper for the court to reserve the question of arbitrability and compel ITABO to address the merits – thus effectively eviscerating its threshold defense that the court lacks jurisdiction to hear the matter – and for that privilege incur substantial costs in putting on its defense on the merits, which then creates a precedent for all future disputes regarding the applicability of the arbitration provisions found in the Basic Contracts and ITABO's bylaws.

25.     The Fifth Chamber judge gave the parties 15 days to produce written arguments in support of their respective positions on the question of whether the matter should be referred to arbitration. In its written presentation, which it submitted on April 14, 2005, ITABO reiterated and expanded on its arguments supporting dismissal in favor of arbitration. The matter is currently pending before the Fifth Chamber.

26.     As discussed above, ITABO has been ordered to submit its arguments concerning the merits of CDEEE's claims this Friday, May 27, 2005. The Court of Appeal has reserved its decision with respect to arbitrability, and will decide that issue after the parties make their presentations to the court on the merits of the case.

27. If ITABO were to make a presentation on the merits to the Dominican court on May 27, 2005, it would be in breach of the parties agreements which provide for its right to have its arguments heard, in the first and only instance, by the arbitrators in the New York Arbitration.

28. If ITABO intentionally fails or declines to make its presentation on the merits on May 27, 2005, the Court of Appeal may enter a default judgment on the merits against ITABO. This could happen as soon as May 27, 2005. If a default judgment on the merits were entered against ITABO, the Dominican Court could order that CDEEE take control of ITABO's assets, pursuant to an automatic embargo provision sought by CDEEE. If this were to happen, ITABO and its foreign shareholders would suffer the loss of the business and their investments. The fact that CDEEE is petitioning the Court of Appeal to enter an order that is immediately enforceable adds to the risks faced by ITABO.

29. If CDEEE were to prevail, and the Dominican Court of Appeal were to convert its decision to an immediately enforceable order attaching ITABO's assets, CDEEE could execute on tangible and intangible, real and personal property of ITABO, including power generation facilities and all cash and credit accounts. Moreover, if this were to happen, CDEEE could, in accordance with Articles 583 et seq. of the Dominican Code of Civil Procedure, without further authorization appoint a guardian to take custody and control of the seized assets until a public sale could take place.

30. Even if the New York Arbitration were to continue, and the arbitrators were to issue an award in favor of ITABO, it is extremely unlikely that ITABO would be able to enforce the arbitration award in the Dominican Republic – and therefore to enforce its contractual rights to arbitrate disputes before the ICC under New York law, and not to litigate disputes in a Dominican court under Dominican law – if a Dominican court had already issued and enforced a

judgment on the issues in dispute. ITABO knows of no assets of CDEEE or FONPER existing outside of the Dominican Republic that could be attached or otherwise restrained in order to compensate ITABO and its shareholders for the loss of ITABO's business and the investments of the foreign shareholders pursuant to a judgment of a Dominican court.

## FIRST CLAIM FOR RELIEF

### (Injunction in Aid of Arbitration)

31.  Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 30 hereinabove as if fully set forth herein.

32.  ITABO and CDE, the predecessor to CDEEE, have entered into the following agreement to arbitrate all disputes arising out of the Basic Agreements:

> Should the Dominican Republic ratify the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards adopted by the United Nations Conference on International Commercial Arbitration dated June 10, 1958 and/or the Panama Convention on Commercial Arbitration, then the parties agree to settle their disputes through international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988 and under the laws of New York . . .

33.  The Dominican Republic is a party to the New York Convention on the Recognition and Enforcement of Foreign Arbitration Awards.

34.  CDEEE is pursuing litigation against ITABO in the Dominican Republic of disputes within the parties' arbitration agreement.

35.  Article 23(2) of the Rules of the Arbitration of the International Chamber of Commerce effective January 1, 1998 permit application to any competent judicial authority for

interim or conservatory measures, and that such application shall not be deemed to be an infringement or a waiver of the arbitration agreement.

36. If CDEEE is not enjoined from pursuing its litigation against ITABO in the Dominican Republic, there is a grave and immediate risk that the merits of disputes subject to the New York Arbitration will proceed immediately to trial in the Dominican Republic, depriving ITABO of its rights to arbitrate the merits of its dispute with CDEEE.

37. If ITABO defaults or CDEEE is otherwise successful in the Dominican litigation, CDEEE could execute on tangible and intangible, real and personal property of ITABO, including its power generation facilities and other assets. CDEEE could, in accordance with Articles 583 et seq. of the Dominican Code of Civil Procedure, without further authorization appoint a guardian to take custody and control of the seized assets until a public sale could take place.

38. The issuance of an Order enjoining CDEEE from litigating in the courts of the Dominican Republic any dispute with ITABO pending the determination by the arbitrators in the New York Arbitration of the nature of the disputes subject to the New York Arbitration is therefore appropriate.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

39. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 38 hereinabove as if fully set forth herein.

40. An actual controversy exists between ITABO and CDEEE as to the nature of the disputes between ITABO and CDEEE subject to the arbitration agreement between the parties.

NYCDMS/440828.2

41. A judgment declaring that the arbitrability of the disputes between ITABO and CDEEE shall be determined by the arbitrators in the New York Arbitration under New York law will settle the existing controversy between the parties.

42. Therefore, ITABO is entitled to a judgment declaring that the arbitrability of the disputes between ITABO and CDEEE shall be determined by the arbitrators in the New York Arbitration under New York law that will settle the existing controversy between the parties.

## THIRD CLAIM FOR RELIEF
### (Order Compelling Arbitration)

43. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 42 hereinabove as if fully set forth herein.

44. ITABO and CDEEE have agreed to arbitrate their disputes in the New York Arbitration under a binding arbitration agreement.

45. By instituting actions in Dominican courts regarding disputes with ITABO within the arbitration agreements between the parties, and by failing and refusing to resolve those disputes exclusively in the New York Arbitration, CDEEE is in breach of its agreement to arbitrate.

46. CDEEE should be compelled to submit all of its disputes with ITABO to the arbitrators in the New York Arbitration pursuant to 9 U.S.C. sec. 206.

WHEREFORE, plaintiff ITABO demands judgment:

1. Temporarily, preliminarily and permanently enjoining and restraining defendant CDEEE and its officers, directors, principals, agents, servants, employees, successors and assigns, and all those acting in concert or participation with them from litigating in the courts of

the Dominican Republic any dispute with ITABO pending the determination by the arbitrators in the New York Arbitration of the disputes subject to the New York Arbitration;

2. declaring that the arbitrability of the disputes between ITABO and CDEEE shall to be determined by the arbitrators in the New York Arbitration under New York law;

3. compelling CDEEE to submit to the New York Arbitration all of its disputes with ITABO subject to the arbitration provisions in the parties' agreements; and

4. All such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.

Dated: New York, New York
May 25, 2005

BAKER & McKENZIE LLP

By _____ /SRK
Grant Hanessian (GH-6582)
Susan Knox (SK-4110)
Attorneys for Plaintiff
805 Third Avenue
New York, New York 10022
(212) 751-5700

NYCDMS/440828.2