Grant Hanessian (GH-6582)
Susan R. Knox (SK-4110)
BAKER & McKENZIE LLP
805 Third Avenue
New York, New York 10022
Tel. (212) 751-5700
Fax (212) 759-9133

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
EMPRESA GENERADORA DE ELECTRICIDAD   :
ITABO, S.A. ("ITABO"),
                                      :
     Plaintiff,                          Case No.
                                      :
     - against -
                                      :

CORPORACIÓN DOMINICANA DE EMPRESAS   :
ELÉCTRICAS ESTATALES ("CDEEE"),
                                      :
     Defendant.
-------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## ITABO'S MOTION FOR INTERIM RELIEF
## IN AID OF ARBITRATION
## AND IN SUPPORT OF AN ORDER TO SHOW CAUSE

Grant Hanessian (GH-6582)
Susan R. Knox (SK-4110)
BAKER & McKENZIE LLP
805 Third Avenue
New York, New York 1002
Tel. (212) 751-5700
Fax (212) 751-9133

NYCDMS/440763.4

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1
FACTS ..................................................................................................................................... 2
The New York Arbitration ..................................................................................................... 4
The First Chamber Dominican Action .................................................................................. 5
The Fifth Chamber Dominican Action .................................................................................. 6
The May 27, 2005 Appearance ............................................................................................... 7
ARGUMENT .......................................................................................................................... 9
POINT I ................................................................................................................................... 9
PETITIONER IS ENTITLED TO INTERIM RELIEF ENJOINING
RESPONDENT'S PROSECUTION OF THE DOMINICAN LAWSUIT ................... 9
    A.    Irreparable Harm ........................................................................................... 9
    B.    Likelihood Of Success On The Merits, Or Sufficiently Serious Questions
Going To The Merits And Balance Of Hardships Tipping In Petitioner's
Favor ............................................................................................................... 10
        1.    ITABO is Entitled to Arbitration in New York under New York
Law of the Disputes in the Dominican Actions, including Disputes
concerning Arbitrability ....................................................................... 10
        2.    This Court Has The Power To Enjoin CDEEE From Prosecuting
The Dominican Actions ....................................................................... 12
        3.    There Are Sufficiently Serious Questions Going To The Merits Of
The Case To Make Them A Fair Ground For Litigation And A
Balancing Of Hardships Tips Decidedly In ITABO's Favor ................ 15
CONCLUSION ..................................................................................................................... 16

NYCDMS/440763.4

## PRELIMINARY STATEMENT

Plaintiff Empresa Generadora de Electricidad ITABO, S.A. ("ITABO") submits this memorandum of law in support of its application for an order in aid of an ongoing arbitration in New York.

ITABO seeks to enjoin one of its alleged shareholders, Corporación Dominicana de Empresas Eléctricas Estatales ("CDEEE"), from pursuing litigation against ITABO in the Dominican Republic. In the Dominican litigation CDEEE seeks to divest ITABO of all of its assets. Desptie local attempts by ITABO to halt the Dominican litigation, the matter is scheduled to proceed to trial on the merits on May 27, 2005.

Pursuant to certain arbitration agreements, all disputes between ITABO and CDEEE – including the disputes that are subject of the Dominican litigation — are subject to arbitration under New York law and the Arbitration Rules of the International Chamber of Commerce ("ICC"). If CDEEE is successful in the Dominican litigation, ITABO will be unable to continue its business, rendering the parties' agreement to arbitrate a nullity.

CDEEE began its litigation against ITABO in Dominican courts in July 2004. ITABO has repeatedly sought to stay the litigation in Dominican courts in favor of arbitration, as provided in the parties' agreements. On May 12, 2005, ITABO was ordered to proceed to trial in the Dominican court on the merits of the dispute on May 27, 2005.

In February 2005, ITABO commenced an arbitration before the ICC — ICC Case No. 13708/CCO (the "New York Arbitration"). On May 18, 2005, the ICC established New York, New York as the seat of arbitration. The arbitration panel has not yet been fully constituted.

ITABO respectfully requests that this Court enjoin CDEEE from proceeding to trial on the merits of this dispute in the Dominican Republic pending a determination by the arbitrators

in the New York Arbitration as to whether the parties' disputes are within the scope of their arbitration agreements. This relief is necessary to preserve the *status quo* and to give effect to the strong public policy in the United States in favor of the enforcement of international arbitration agreements.

## FACTS

The facts relevant to this matter are set out in detail in the accompanying declarations of Giselle Marie Leger dated May 25, 2005, Carlos Radhamés Cornielle dated May 25, 2005 ("Cornielle Decl.") and Javier L. Navarro- Velasco dated May 25, 2005 ("Navarro-Velasco Decl."). Messrs. Cornielle and Navaro-Velasco represent ITABO in the Dominican and New York ICC proceedings, respectively.

CDEEE is a state-owned company created in 2001 as a successor to Corporación Dominicana de Electricidad ("CDE"), the former Dominican state electricity company. CDEEE coordinates the electrical companies that remained public property after CDE was capitalized, to carry out public projects to electrify rural and suburban areas, and to administer contracts with independent electricity providers.

ITABO is in the business of generating and providing electrical power. ITABO was incorporated in the Dominican Republic on September 8, 1999. It was one of several private companies created pursuant to Law 141-97 (the General Law of Reform of Public Companies) to take on certain activities that had formerly been performed by CDE. ITABO was capitalized partly by the issue of Series A shares to CDE in exchange for certain CDE's assets relating to power generation, and partly by the issue of Series B shares to private foreign companies. A total of 28,177,778 Series B shares were issued in exchange for a total initial private investment of some $178 million.

ITABO's Series A and Series B shares are almost equal in number – with the result that the Dominican Government holds a 49.9% interest in ITABO and the foreign investors collectively hold a 50.1% interest. However, pursuant to its Bylaws, ITABO's board of directors consists of four representatives of the private shareholders and one representative of the Dominican state (initially CDE).

Pursuant to a series of contracts dated 1999 (collectively, the "Basic Contracts"), ITABO agreed to generate and supply electrical power to CDE and other electrical distribution companies that were created at the same time and by the same process as ITABO. Also pursuant to the Basic Contracts, and as a result of the capitalization process, ITABO acquired a predetermined number of former state power plants. ITABO commenced operations after September 8, 1999.

In 2003, differences arose between CDEEE and ITABO, principally concerning a rehabilitation project involving two units at ITABO's main power plant (the "Rehabilitation Project"). CDEEE, despite being kept fully apprised of the efforts related to the Rehabilitation Project, subsequently claimed that ITABO, which had carried out the project during the period from January of 2000 through September of 2003, had spent approximately $15.7 million more than necessary on the project, and that these funds had been paid to affiliates and subsidiaries of ITABO's foreign shareholders.

CDEEE has brought two different actions against ITABO in the Dominican Republic. The first action (the "First Chamber Action") is an action for an accounting of the expenses incurred in connection with the Rehabilitation Project, in the First Chamber of the Civil and Commercial Court of First Instance for the National District, initiated on July 21, 2004. The second action (the "Fifth Chamber Action") is an action for an accounting of the expenses

incurred in connection other aspects of ITABO's operations and administration, seeking certain fines and damages for breach of contract, among other causes of action, in the Fifth Chamber of the Civil and Commercial Chamber of the Court of First Instance of the National District, also initiated on July 21, 2004. The actions are described in more detail below.

### The New York Arbitration

Arbitration clauses in the Basic Contracts and ITABO bylaws provide for arbitration of all disputes between the parties under New York law before the ICC. Although the clauses differ slightly in various respects, all clauses contain the following provision:

> Should the Dominican Republic ratify the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards adopted by the United Nations Conference on International Commercial Arbitration dated June 10, 1958 and/or the Panama Convention on Commercial Arbitration, then the parties agree to settle their disputes through international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988 and under the laws of New York . . .

Navarro-Velasco Decl., Exhibits 1 and exhibits A, C and D thereto. The Dominican Republic became a state party to the New York Convention in 2001.

Pursuant to these clauses, ITABO commenced an arbitration against CDEEE and the Fondo Patrimonial de las Empresas Reformadas / Fondo Patrimonial para el Desarollo ("FONPER"), another successor to CDE, on February 8, 2005 under the ICC Rules. In the arbitration, ITABO seeks (i) a declaration that (a) the Basic Contracts are valid and effective and (b) CDEEE violated the Basic Contracts by initiating and proceeding with judicial and extrajudicial proceedings before the courts of the Dominican Republic; (ii) an order enjoining CDEEE and FONPER from initiating or proceeding with any judicial or extrajudicial action in the Dominican Republic against ITABO inconsistent with the Basic Contracts; (iii) a declaration that all ITABO shareholders must comply with the bylaws of ITABO and with the Basic

Contracts in raising any questions concerning the management or administration of ITABO; (iv) damages, including costs and attorneys' fees, for the failure of CDEEE and FONPER to comply with the dispute resolution procedures set forth in the Basic Contracts; and (v) costs and attorneys' fees relating to the ICC Arbitration. *See* Request for Arbitration, Exhibit 1 to Navarro-Velasco Decl., pp. 4-6.

In its Answer, CDEEE asserts, *inter alia*, that the dispute concerning the Rehabiliation Project is not encompassed in the relevant arbitration clauses in the Basic Contracts and that CDEEE has a right to seek the relief it seeks in the Dominican courts.

On May 18, 2005, the ICC selected New York as the situs of the arbitration. The parties have appointed arbitrators, and are awaiting appointment of a third arbitrator, after which time the panel will be constituted. ITABO, CDEEE and FONPER are all actively participating in the arbitration.

### The First Chamber Dominican Action

The First Chamber Action was initiated by means of Bailiff's Act No. 1798/2004, filed on behalf of CDEEE by its attorney Dr. Angel Monero Cordero in the First Chamber of the Civil and Commercial Court of First Instance for the National District on July 21, 2004. A copy of Bailiff's Act No. 1798/2004 is annexed to the Cornielle Declaration as Exhibit A.

In this action, CDEEE sought an order that ITABO provide an accounting, that ITABO's assets be seized if it failed to comply, and that the administrators of ITABO be held personally liable if the court order were not satisfied. CDEEE also sought an award of its attorney's fees, and sought to have the entire court order be enforceable immediately, regardless of any right of ITABO to appeal.

ITABO refused to participate in the litigation, maintaining that the dispute should be arbitrated under the arbitration agreement contained in ITABO's bylaws and the Basic Contracts. The First Chamber of the Civil and Commercial Court of First Instance dismissed CDEEE's case on November 29, 2004, on the grounds that (a) CDEEE had not submitted to the court the proofs necessary to substantiate its allegations, (b) the audit reports provided by Stone & Webster Management Consultants Inc. (dated August 1, 2004 and August 12, 2004), and the other proofs offered by CDEEE, failed to show any neglect on the part of ITABO's management, and (c) CDEEE had offered no evidence that ITABO had failed to provide an accounting.

CDEEE appealed the dismissal to the Civil and Commercial Chamber of the Court of Appeal of Santo Domingo. ITABO appeared at oral argument of the appeal on May 12, 2005, to argue to the Court of Appeal that the Dominican courts are without jurisdiction or are divested of jurisdiction because of the arbitration clause in the Basic Contracts and ITABO's bylaws. Notwithstanding that the Court of Appeal has a legal procedural obligation – pursuant to Article II of the New York Convention, together with the Arbitration Agreement contained ITABO's bylaws and the Basic Contracts – to determine before reaching the merits whether it has jurisdiction to hear a case, the Court reserved judgment on ITABO's argument that the matter should be resolved in arbitration, and ordered that the parties be heard on the merits at the hearing scheduled to begin on May 27, 2005.

## The Fifth Chamber Dominican Action

CDEEE initiated the Fifth Chamber Action by means of Bailiff's Act No. 422/2004, filed on behalf of CDEEE by its attorney Dr. Carlos Manuel Padilla Cruz in the Fifth Chamber of the Civil and Commercial Court of First Instance for the National District on July 21, 2004. A copy of this complaint is annexed to the Cornielle Declaration as Exhibit B.

Filing No. 422/2004 is significantly longer and more detailed than Filing No. 1798/2004, and seeks not only an accounting, but the imposition of sanctions on ITABO and certain officers of ITABO for noncompliance, the payment of money damages including punitive damages, and the payment of interest and attorneys' fees. The allegations contained in Filing 422/2004 are based in part on the preliminary findings of an audit ordered by FONPER and performed by Grant Thornton, the international accounting firm. The Grant Thornton audit did not relate to the Rehabilitation Project.

On March 30, 2005 a hearing took place at which ITABO's counsel asked the Fifth Chamber Court to refer the parties to arbitration. As it had done in the First Chamber, ITABO argued that the Dominican courts are without jurisdiction or are divested of jurisdiction because of the arbitration clause in the Basic Contracts, local law, and the ongoing New York Arbitration. ITABO also argued that respecting the agreement to arbitrate was particularly important in light of the grave harm that a lack of respect for agreements entered into by the Dominican State with individuals and foreign private investors who have relied on the country's adherence to the rule of law would have on the foreign investment climate in the Dominican Republic and its prestige. ITABO further argued that it is improper and unlawful for the court to reserve the question of arbitrability and compel ITABO to address the merits – thus effectively eviscerating its threshold defense that the court lacks jurisdiction to hear the matter – and for that privilege incur substantial costs in putting on its defense on the merits, which then creates a precedent for all future disputes regarding the applicabiilty of the arbitration provisions found in the Basic Contracts and ITABO bylaws.

The judge gave the parties 15 days to produce written arguments in support of their respective positions on the question of whether the matter should be referred to arbitration. In

its written presentation, which it submitted on April 14, 2004, ITABO reiterated and expanded on its arguments supporting dismissal in favor of arbitration. A copy of ITABO's written presentation is annexed to the Cornielle Declaration as Exhibit D. The matter is currently pending before the Fifth Chamber.

### The May 27, 2005 Appearance

As discussed above, ITABO has been ordered to submit its arguments concerning the merits of CDEEE's claims this Friday, May 27, 2005. The Court of Appeal has reserved its decision with respect to arbitrability, and will decide that issue after the parties make their presentations to the court on the merits of the case.

ITABO is truly between the proverbial "rock and a hard place." If ITABO were to make a presentation on the merits on May 27, 2005, it would be in breach of the Basic Contracts which provide for its right to have its arguments heard, in the first and only instance, by the arbitrators in the New York Arbitration, and it would likely waive its right to have the dispute arbitrated.

If ITABO were intentionally to fail or decline to make its presentation on the merits on May 27, 2005, the Court of Appeal might enter a default judgment on the merits against ITABO. This could happen as soon as May 27, 2005. If a default judgment on the merits were entered against ITABO, the Dominican Court could order that CDEEE take control of ITABO's assets, pursuant to an automatic embargo provision sought by CDEEE. If this were to happen, ITABO would suffer the loss of its business. The fact that CDEEE is petitioning the Court of Appeal to enter an order that is immediately enforceable adds to the risks faced by ITABO.

If CDEEE were to prevail, and the Court of Appeal were to convert its decision to an immediately enforceable order attaching ITABO's assets, CDEEE could execute on tangible and intangible, real and personal property of ITABO, including power generation facilities and other

assets belonging to ITABO's private investors. Moreover, if this were to happen, CDEEE could, in accordance with Articles 583 et seq. of the Dominican Code of Civil Procedure, without further authorization appoint a guardian to take custody and control of the seized assets until a public sale could take place.

Even if the New York Arbitration were to continue, and the arbitrators were to issue an award in favor of ITABO, it is extremely unlikely that ITABO would be able to enforce the award in the Dominican Republic — and therefore to enforce its contractual rights to arbitrate disputes before the ICC under New York law, and not to litigate disputes in a Dominican court under Dominican law — if a Dominican court had already issued and enforced a judgment on the issues in dispute. ITABO knows of no assets of CDEEE or FONPER existing outside of the Dominican Republic that could be attached or otherwise restrained in order to compensate ITABO and its shareholders for the loss of ITABO's business and the investments of the foreign shareholders pursuant to a judgment of a Dominican court.

## ARGUMENT

### POINT I

### PETITIONER IS ENTITLED TO INTERIM RELIEF ENJOINING RESPONDENT'S PROSECUTION OF THE DOMINICAN LAWSUIT

In order to obtain injunctive relief in this Circuit, a party must demonstrate the following three elements: (i) irreparable harm, and (ii) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation and that a balancing of hardships tips decidedly in its favor. *Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 424 (2d Cir. 2004); *Pacific Elec. Wire & Cable Co., Ltd. v. Set Top Int'l, Inc.*, No. 03 Civ. 9623, 2004 U.S. Dist. LEXIS 3400, at *4 (S.D.N.Y. Jan. 20, 2004)

(standard for issuing temporary restraining order identical to standard for issuing preliminary injunction).

As demonstrated below, ITABO has clearly demonstrated both elements.

A.   **Irreparable Harm**

As described above, one of the primary remedies that CDEEE seeks in the First Chamber Action and the Fifth Chamber Action is an order authorizing CDEEE to seize ITABO's assets, *i.e.*, its power generating plants and cash/credit accounts. As demonstrated by the Cornielle Declaration, that result will likely occur as early as the first day of trial of the Dominican Lawsuit on May 27, 2005. Cornielle Declaration., ¶ 7. In fact, this result is virtually inevitable because ITABO cannot defend the case on the merits. Doing so would constitute a breach by ITABO of the Basic Contracts. Doing so may also be construed as a waiver of its right to have its dispute with CDEEE arbitrated. *See Cotton v. Slone*, 4 F.3d 176,179-180 (2d Cir. 1993) (litigation following denial of a motion to compel constitutes waive of right to arbitrate);. *See also PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103 (2d Cir. 1997).

Should CDEEE succeed, there is no question but that ITABO will sustain irreparable harm. ITABO will be deprived of its primary assets and, as a consequence, be deprived of its ability to generate electric power – its primary business activity. As a consequence, ITABO will lose its entire business and goodwill. As a matter of law, such a result would constitute irreparable harm sufficient to satisfy the test for issuing temporary and preliminary injunctive relief. *See Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990) (loss of customer and good will from termination of product may constitute irreparable harm for preliminary injunction purposes); *Roso-Lino Beverage Distributors, Inc. v. The Coca-Cola Bottling Co. of New York*, 749 F.2d 124 (2d Cir. 1984) (loss of distributorship, representing an ongoing

business, constituted irreparable harm justifying preliminary injunction); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970) (loss of automobile dealership resulting in inability to continue doing business constituted irreparable harm justifying preliminary injunction).

B.  **Likelihood Of Success On The Merits, Or Sufficiently Serious Questions Going To The Merits And Balance Of Hardships Tipping In Petitioner's Favor**

   1.  **ITABO is Entitled to Arbitration in New York under New York Law of the Disputes in the Dominican Actions, including Disputes concerning Arbitrability**

ITABO clearly has the right to have the claims asserted by CDEEE in the Dominican litigation, ***including the issue of whether those claims are arbitrable,*** determined by the arbitrators under New York law, not Dominican law.

In the Basic Contracts, the parties agree "to settle their disputes through international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988 and under the laws of New York." The U.S. Supreme Court has held that "The question whether the parties have submitted a particular question to arbitration, i.e., the 'question of arbitrability,' is " 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (citing *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 89 L.Ed.2d 648, 106 S.Ct. 1415 (1986)(*emphasis added*), and *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 131 L.Ed.2d 985, 115 S.Ct. 1920 (1995)). "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam*, 537 U.S. at 84 (citing *First Options*, 514 U.S. at 943-946).

The Second Circuit has held that where the "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 209 (2d Cir. 2005). In this case, the ICC Rules provide that decisions regarding the "existence, validity or scope of the arbitration agreement . . . shall be taken by the Arbitral Tribunal itself." ICC Rules, Art. 6 (2). Thus, there is no question that the parties agreed that decisions as to the arbitrability of their disputes should be decided in the New York Arbitration under New York law.

The ICC Rules clearly authorize the relief requested by ITABO. Article 23(2) of the ICC Rules permit application to any competent judicial authority for interim or conservatory measures, and provide that such application shall not be deemed to be an infringement or a waiver of the arbitration agreement.

2. **This Court Has The Power To Enjoin CDEEE From Prosecuting The Dominican Actions**

It is also clear that a federal district court has the power to enjoin a party before it from pursuing litigation in a foreign forum where that party has agreed to arbitrate the claims asserted in that litigation. *See Paramedics Electromedicina Comercial, Ltda. v. GE Medical Sys. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004). *See also Borden Inc. v. Meiji Milk Products Co.*, 919 F.2d 822, 826 (2d Cir. 1990), *cert. denied*, 500 U.S. 953 (1991) (entertaining an application for preliminary injunction in aid of arbitration is consistent with the court's power under the New York Convention).

In *Paramedics Electromedicina*, the Second Circuit held that an injunction in this situation is appropriate where the parties are the same in both matters, and resolution of the case

before the enjoining court is dispositive of the action to be enjoined. *Paramedics Electromedicina*, 369 F.3d at 652.

Here, the first prong of the test is satisfied because the parties in both actions – ITABO and CDEEE — are the same: ITABO is a defendant in both the First Chamber Action and the Fifth Chamber Action and is the petitioner in this action (as well as in the underlying ICC arbitration). CDEEE is the plaintiff in the First Chamber Action and the Fifth Chamber Action and is the respondent in this action (as well as in the underling ICC arbitration).[1]

The second prong is also met because entry of an injunction by this Court would be dispositive of the Dominican actions. In *Paramedics Electromedicina*, the court found that, where the case before it concerned the arbitrability of the parties' claims, a finding that the issues were reserved to arbitration was dispositive of the foreign litigation. *See Paramedics Electromedicina*, 369 F.3d at 653. In the instant case, as demonstrated above, should this Court grant ITABO's application for an injunction, the claims that CDEEE has asserted in the Dominican lawsuits (including the issue of whether such claims are arbitrable and the issues

---

[1] The fact that FONPER is a named respondent in the arbitration and not a party to this action or the Dominican lawsuits is not relevant. FONPER was named in the arbitration because, under Dominican law, FONPER, and not CDEEE, has the legal right to representation on ITABO's board of directors and to ownership of a 49.9% interest in ITABO, notwithstanding the fact that CDEEE has acted as the holder of those rights and interests. *See* Navarro-Velasco Decl., ¶ 6. *Paramedics Electromedicina* is directly on point. In that case, one of the respondents named in the foreign litigation, GE Brasil, was not named as a party to the federal court action in New York seeking to enjoin the foreign litigation. The Second Circuit upheld the district court's holding that an injunction was nonetheless appropriate because of substantial similarity and affiliation between another defendant, GEMS-IT, and GE Brasil, inasmuch as the claims against GE Brasil arose out of the same facts, circumstances and relationships alleged in the dispute that was the subject of the arbitration and the foreign litigation. The court noted that the claim against GE Brasil thus rested chiefly (if not completely) on its affiliation with GEMS-IT. *Paramedics Electromedicina*, 369 F.3d at 652. Similarly, in the instant case, ITABO's claims against FONPER in the ICC arbitration rest chief (if not completely) on its potential status under Dominican law as holder of ITABO's rights and interests. *See Motorola Credit Corp. v. Uzan*, 2003 U.S. Dist. LEXIS 111 (S.D.N.Y. Jan. 7, 2003) (finding sufficient similarity between the parties, even though not all parties to the two actions were identical, because the real parties in interest were the same in both matters).

arising from the Rehabilitation Project) will be submitted to, heard by and decided by the ICC arbitrators.

This conclusion is underscored by the federal policy that strongly favors enforcement of arbitration agreements, and creates a presumption of arbitrability with respect to broad agreements to arbitrate which is only overcome "if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute; doubts should be resolved in favor of coverage." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 99 (2d Cir. 1999) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

Under the *Paramedics Electromedicina* test, beyond the aforementioned threshold criteria, a court is directed to consider whether the foreign lawsuit threatens the jurisdiction or strong public policy of the domestic forum. *See Paramedics Electromedicina*, 369 F.3d at 654. Clearly CDEEE's Dominican litigation threatens the federal policy favoring the liberal enforcement of arbitration clauses, which applies with particular force in international disputes. *See Paramedics Electromedicina*, 369 F.3d at 654, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40 (1985). see also *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d at 99 (2d Cir. 1999).

Moreover, continued prosecution of the Dominican actions will likely prejudice ITABO. As noted above, a hearing on the merits is scheduled for May 27, 2005. Because ITABO cannot defend on the merits because doing so will constitute a breach of the Basic Contracts and a waiver of its right to arbitrate the dispute, it is probable that the Dominican court will enter a default judgment on the merits against ITABO which might very well result in an order by the Dominican court authorizing CDEEE take control of ITABO's assets.

In addition, adjudication of the same issues in separate actions would result in delay, inconvenience and expense, as well as possible inconsistent judgments. CDEEE's resort to its home forum, in direct contravention of the arbitration agreement, has already created a vexatious and expensive second front on which ITABO must defend itself. This Court is therefore justified, under the principles of international comity, in enjoining CDEEE from proceeding in the Dominican action at least until the issue of arbitrability is determined by a properly constituted arbitration panel.

2.  **There Are Sufficiently Serious Questions Going To The Merits Of The Case To Make Them A Fair Ground For Litigation And A Balancing Of Hardships Tips Decidedly In ITABO's Favor**

Whether or not ITABO has demonstrated a likelihood of success on the merits, ITABO has clearly demonstrated sufficiently serious questions going to the merits of the case to make them a fair ground for litigation and that a balancing of hardships tips decidedly in its favor.

The issue of whether a federal district court can and should enjoin a party's prosecution of a foreign litigation pending arbitration, and whether this Court can and should do so in the instant case, under the principles of international comity, clearly presents serious questions going to the merits of ITABO's petition. *Compare*, *Paramedics Electromedicina*, 369 F.3d at 654 (court issued injunction), with *Laif X Sprl v. Axtel, S.A. de C.V.*, 390 F.3d 194 (2d Cir. 2004) (court declined to issue injunction).

Moreover, the balance of hardships clearly tips in ITABO's favor. If CDEEE is permitted to continue prosecuting the Dominican actions, the May 27, 2005 hearing will go forward and ITABO faces a genuine risk of losing its power plants and its ability to conduct any business operations. The hardship that ITABO would suffer from such an outcome is self-evident. By contrast, if this Court were to issue the injunctive relief that ITABO seeks, ITABO

will be able to continue conducting its business and serving its customers in the Dominican Republic, a coutnry that suffers from widely reported electricity shortages. CDEEE will suffer no hardship at all: CDEEE would simply have to submit the issue concerning arbitrability of its claims against ITABO to an arbitration panel in New York rather than to a judge(s) in the Dominican Republic. CDEEE will not be deprived of its day in court; it will simply be compelled to submit those claims to a different court.

## CONCLUSION

Based on the foregoing, plaintiff Empresa Generadora de Electricidad ITABO, S.A. respectfully requests that the Court grant its application for an order restraining Corporación Dominicana de Empresas Eléctricas Estatales from pursuing litigation against ITABO in the Dominican Republic, pursuant to F.R.C.P. 65, and issue all other and further relief as the Court deems just and appropriate.

Dated: New York, New York
       May 25, 2005

                                        BAKER & McKENZIE LLP

                                        By: _____Grant Hanessian /srk____
                                            Grant Hanessian (GH-6582)
                                            Susan R. Knox (SK-4110)
                                            805 Third Avenue
                                            New York, New York 10022
                                            Tel. (212) 751-5700
                                            Fax (212) 751-9133