**BAKER & McKENZIE**

Baker & McKenzie LLP
805 Third Avenue
New York, New York 10022, USA

Tel: +1 212 751 5700
Fax: +1 212 759 9133
www.bakernet.com

Asia
Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe &
Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South
America
Bogota
Brasilia
Buenos Aires
Calgary
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

June 14, 2005

Grant Hanessian
Tel: +1 212 891 3986
Fax: +1 212 310 1686
Grant.Hanessian@bakernet.com

**VIA HAND DELIVERY**

Hon. Richard M. Berman
United States District Judge
United States Courthouse
40 Centre Street, Room 201
New York, New York 10007-1581

RE:    *Empresa Generadora de Electricidad ITABO, S.A. ("ITABO") v. Corporación Dominicana de Empresas Eléctricas Estatales ("CDEEE"),*
No. 05 CV 5004 (HMB)

Dear Judge Berman:

We represent plaintiff ITABO in the above matter.

Enclosed, as requested by the Court during our conference on June 1, 2005, are certified translations of documents ITABO has previously submitted to the Court.   The annexed table describes the translated documents.

Respectfully submitted,

Grant Hanessian

Enclosures

cc:    Steven Gerber, Esq. (by FedEx and email)
Hugo Chaviano, Esq. (by FedEx and email)

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

# ITABO – Certified Translations of Documents

| Location in ITABO's Papers | Document |
|---|---|
| **1. Documents from the ICC Arbitration** | |
| a. Navarro-Velasco Decl. (May 25, 2005) Exhibit 1 | Request for Arbitration (without exhibits) |
| b. Second Leger Decl. (June 1, 2005) Exhibit 5 | May 18, 2005 fax from ICC Secretariat |
| **2. Arbitration Clauses** | |
| a. Navarro-Velasco Decl. Exhibit 1A | Section 12.3 of the Stock Subscription Ag. |
| b. Navarro-Velasco Decl. Exhibit 1A | Chapter VIII of ITABO Bylaws |
| **3. Documents from the First Chamber Action** | |
| a. Cornielle Decl. (May 25, 2005) Exhibit 1 | Bailiff's Act No. 1798/2004 |
| b. Cornielle Decl. Exhibit 2 | Written arguments to the Court of Appeal |
| c. Second Cornielle Decl. (June 2, 2005) Exhibit 1 | May 27, 2005 Order |
| **4. Documents from the Fifth Chamber Action** | |
| a. Cornielle Decl. Exhibit 3 | Bailiff's Act No. 422/2004 |
| b. Cornielle Decl. Exhibit 4 | Written arguments to the Fifth Chamber |
| **5. Documents Concerning Service on CDEEE** | |
| a. Second Leger Decl. Exhibit 2 | Act No. 147/2005 |
| b. Second Leger Decl. Exhibit 4 | Act No. 149/2005 |



Certified by Mark Freehill

**MARK FREEHILL COMMUNICATION SERVICES**

US Certified Federal Court Interpreter No. 20293

Calle 5, No. 12, Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA

RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo*, in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

**CCI Arbitration** ___

**COMPLAINT**


**Empresa Generadora de Electricidad Itabo, S.A.**

**(Dominican Republic)**


**Plaintiff**


**Vs.**


***Corporación Dominicana de Empresas Eléctricas Estatales***

**(Dominican Republic)**

***Fondo Patrimonial de las Empresas Reformadas /***

***Fondo Patrimonial para el Desarrollo***

**(Dominican Republic)**


**Defendants**


**Before the International Chamber of Commerce Arbitration Court**

38, Cours Albert 1er, 75008 Paris France



Secretary of the International Arbitration Court
International Chamber of Commerce

38, Cours Albert 1er, 75008 Paris France

The undersigned Javier L. Navarro Velasco in my capacity as attorney for Empresa Generadora de Electricidad Itabo (**ITABO**), I hereby appear to file a request for arbitration against Corporación Dominicana de Empresas Eléctricas Estatales (**CDEEE**) and Fondo Patrimonial de las Empresas Reformadas (**FONPER**) (also referred to as Fondo Patrimonial para el Desarrollo), in accordance with article 3 of the Arbitration Regulations of the International Chamber of Commerce in force as of January 1, 1988.

## a) Complete name, description and address of the parties

Plaintiff:

### *Empresa Generadora de Electricidad Itabo, S.A. ITABO* (hereinafter **ITABO**)

ITABO is a company duly incorporated and organized in accordance with the laws of the Dominican Republic, with its corporate address located at Avenida Rómulo Betancourt No. 1108, Sector La Julio in Santo Domingo de Guzmán, Dominican Republic and dedicated to the generation and sale of electrical energy.

In this procedure, ITABO (hereinafter also referred to as **The Defendant**) shall be represented and assisted by Messrs. Brian Casey and/or Javier Navarro Velasco and/or Juan Ygnacio Reyes Retana and/or Hugo González Peña from the law firm Baker & McKenzie, and its states as its address to receive notices and all types of communications Oficinas en el Parque, Torre I Piso 10, Blvd. Antonio Rodríguez 1884 Pte. Colonia Santa María, 64650 Monterrey, Nuevo León, México, telephone

2



(52-81) 83 99 13 00, telefax (52-81) 83 99 13 99 or 00 and email address javier.navarro-velasco@bakernet.com. I hereby request that this Court address all communications, in the case of ITABO, to the attention of Giselle Marie Leger at telefax number (809) 535 8215 and email address giselle.leger@ITABO.COM, as well as to attorney Javier L. Navarro Velasco whose information has been specified.

<u>Defendants:</u>

*Corporación Dominicana de Empresas Eléctricas Estatales* (hereinafter **CDEEE**).

CDEEE is an autonomous public service entity of the Dominican Republic, organized and existing in accordance with General Electricity Law No. 125 dated July 26, 2001, and it is being sued in its capacity as shareholder of ITABO. CDEEE's address is the intersection of Avenida Independencia and Calle Fray Cipriano de Utera del Centro de los Héroes de Constanza, Maimón y Estero Hondo (La Feria) in Santo Domingo de Guzmán, Dominican Republic.

*Fondo Patrimonial de las Empresas Reformadas / Fondo Patrimonial para el Desarrollo* (hereinafter **FONPER**).

FONPER is a Fund resulting from the placing of resources generated by the Capitalization of power-generating companies. FONPER was created in accordance with the General Law for the Amendment of the Public Company, No. 141-197 dated June 24, 1997 and as a result of Law No. 124-01 dated July 24, 2001, and which has as its main purpose, aside from the conservation and custody of shares of the State in capitalized companies, the management of the State's participation in these companies and ensuring compliance with the commitments and obligations resulting from the amended process and it is therefore a legal successor of **CDE** in capitalized companies of the electricity sector. FONPER's address is Gustavo Mejía Ricart No.

3



73 on the corner of Agustín Lara, Edificio La Moneda, seventh floor, Santo Domingo, Dominican Republic.

**b) Claims made by the Plaintiff**

The Plaintiff claims:

I. A declarative and condemning award, as follows:

1. Declaring the Basic Contracts (as such term is defined below) between the parties is in full force and effect.

2. Declaring CDEE and FONPER (hereinafter, called jointly **The Defendants**) have incurred in non-compliance with the contractual provisions contained in the Basic Contracts (as such term is defined below), regarding the resolution of controversies and the non-interference in the management and administration of ITABO, by initiating and continuing extra-judicial and judicial procedures before the courts of the Dominican Republic, to claim from ITABO and its President, Mr. Juan Nebreda:

    (i) The rendering an accounting with respect to ITABO and the tenure of the President of its Management Board;

    (ii) The delivery of financial information regarding ITABO's operations;

    (iii) The payment of damages and losses with regards to the Project to Rehabilitate the ITABO Steam I and Steam II Thermoelectric Units (as defined below), and

4



(iv)  The immediate delivery of all assets, equipment and real property belonging to ITABO (hereinafter the "Assets").

II.- A precautionary and definitive order to The Plaintiffs to abstain from initiating and/or continuing any extrajudicial or judicial action against ITABO, outside of the mechanism for the solution of controversies foreseen in the Basic Contracts.

III.- A declaration having the nature of judgment, in the sense that the persons accredited as ITABO shareholders, must comply with the provisions contained under the ITABO Bylaws and the contractual provisions of the Basic Contracts to settle any question related to the representation and  management of ITABO, including any question that may arise from the technical-financial audit to the Project to Rehabilitate the ITABO Steam I  and ITABO Steam II Thermoelectric Units and the FONPER technical-economic and compliance audit.

IV.- Material and moral damages and losses incurred and/or suffered by ITABO as a result of The Defendants acts and their failure to comply with the controversy-resolution provisions contained in the Basic Contracts and with respect to all other provisions related to the handling of the internal order of the company among shareholders and the company or vice-versa, including reasonable attorney and expert fees etc.

V.- Costs and expenses incurred as a result of this arbitration, including without limitation, expenses incurred by ITABO for the payment of attorney fees derived from the arbitration procedure, as well as from any other legal procedure necessary to conclude this arbitration.

FACTS

The relevant facts are the following:

5



1.- In the years 1998 and 1999, the Dominican Republic carried out a capitalization program with respect to the power industry belonging to the Dominican state or of the activities that were carried out as a monopoly by *Corporación Dominicana de Electricidad* (**CDE**). As a result of such program, several companies were created which, through capitalization by private investors, obtained financial resources and technical assistance necessary to improve and expand power generation within the country and invest in the power sector.

2.- On June 24, 1997, the Executive branch promulgated in the Dominican Republic the General Law for the Amendment of Public Enterprises No. 141-97. Such law (hereinafter "Law 141-97") created the legal framework allowing CDE's capitalization. CDE was initially a public company through which the Dominical Republic maintained its participation and agreements with the private sector in the area of electrical power.

3.- Pursuant to Law 141-97, five business companies were created. ITABO and *Empresa Generadora de Electricidad Haina, S.A.*, dedicated to power generation and *Empresa Distribuidora de Electricidad del Norte S.A.*, *Empresa Distribuidora de Electricidad del Sur, S.A.* and *Empresa Distribuidora de Electricidad del Este S.A.* all dedicated to power distribution.

4.- Pursuant to Law 141-97, ITABO World be capitalized through (i) the contribution made by CDE to said companies of certain equipment and infrastructure for power generation, for which CDE would receive Series "A" common stock; and (ii) for the contribution by private companies being awarded through an international public bidding process organized by the Commission for the Amendment of the Public Company. Private companies capitalizing power generating companies, would receive for their contribution the equivalent to 50% of the shares representing the capital stock of the capitalized companies in Series "B" shares.

6

5.- As a result of the corresponding international bidding process, the following agreements were executed:

    i)      Share Subscription Contract, including the Bylaws of ITABO;

    ii)     Administration Agreement;

    iii)    Contract Granting Rights for the Exploitation of Electric Works relating to power generation;

    iv)    Power Sale Contract;

    v)     Agreement for the Assignment of a Power Sale Contract

The foregoing agreements have been referred to and will hereinafter be referred to as the "Basic Contracts" and a copy of them is hereby attached to this complaint as Exhibits "A" to "E" respectively.

6.- The Basic Contracts[1] stipulate that the parties shall attempt to resolve their differences amicably and only if such efforts turn out to be useless, the relevant part of the Basic Contracts state the following:

> "If the Dominican Republic ratifies the New York Convention on the recognition and execution of foreign arbitration rulings, adopted by the United Nations Conference on International Commercial Arbitration of June 10, 1958, and/or the Panama Convention on Commercial Arbitration, the parties accept to resolve their disputes through international arbitration, in accordance with the Arbitration Rules of the International Chamber of Commerce (ICC Rules of Conciliation) of January 1, 1958 and under the laws of New York. No arbitrator appointed pursuant to this article may be a citizen of any of the jurisdictions of the parties or of the jurisdiction of any of the initial shareholders, nor may such arbitrator be an employee, agent or former employee or agent of any of such persons".

---

[1] Article 58 of the ITABO Bylaws, article 12.3 of the Share Subscription Agreement of August 13, 1999, article 9 of the Agreement that grants Rights for the exploitation of Electrical Works relating to power generation service in the Dominican Republic dated December 8, 19999, article 7.1 of the Assignment of the Power Sale Agreement dated September 8, 1999 and article 6 of the Management Agreement.

7



7.- The Dominican Republic ratified the New York Convention through resolution 178-01 from the national Congress, duly promulgated by the Executive branch on November 8, 2001. A copy of the corresponding certification is attached as Exhibit "F".

8.- For the purpose of recuperating the coal-operated design conditions of the ITABO Steam I and II Thermoelectric Units consisting of power generating units with a nominal or rated capacity of 128 and 132 MW respectively, ITABO resolved to carry out the execution of the ITABO Steam I and II Rehabilitation Project (hereafter the "**Rehabilitation Project**").

9.- The Rehabilitation Project was carried out within the period of January 2000 and September 2003. Even though CDEEE was kept informed and was duly notified, and in certain cases approved the execution and expenses incurred in the Rehabilitation Project, via votes in the Board of Directors of ITABO, after the execution of the Rehabilitation Project, it objected to same and requested that the independent company of Stone & Webster Management Consultants Inc. (hereinafter "**S&W**") carry out an independent technical-financial audit of the Rehabilitation Project.

10.- S&W delivered to CDEEE a preliminary draft report (the "**Preliminary Report**") on the basis of available information, to which ITABO responded in a timely and precise manner through a Response Report (the "**Response Report**"). From said Response Report it follows that the cost and time of the Rehabilitation Project fundamentally correspond to the deteriorated conditions of the Steam I and II Thermoelectric Units at the moment these were received in the capitalization, and on the other, market conditions of the time, and they conform to reasonable commercial criteria and moreover to the fact that the Rehabilitation Project added value to ITABO.

11.- Also, FONPER hired the services of an international firm for the execution of a

technical, financial and compliance audit of all of the companies that were capitalized, which in the case of ITABO began on January 17, 2003, and which was required to conclude within ninety days. ITABO accepted to have this audit done earlier taking into account that FONPER would soon replace CDE as formal holder of the shares of the Dominican State over ITABO.

12.- On the date October 22, 2003, CDEEE sent to ITABO for its opinion a copy of the results of the technical, financial and compliance audit carried out to ITABO by Grant Thornton, at the request of and through an agreement with FONPER. On November 21, 2003 and within the term of thirty days that was granted, ITABO provided comments and responded to the items included in the Executive Summary and the Audit Conclusions. Since that date, ITABO has not received any type of comment or additional request on the part of CDEEE or FONPER.

13.- Notwithstanding the foregoing, and despite any disagreement among the shareholders or between them and ITABO must be resolved within the contractual framework established under the Basic Contracts, as a result of the differences that CDE identifies as part of the audits, and without additional consultations with ITABO's management nor with its Board of Directors regarding the FONPER audit and the Rehabilitation Project audit, CDEEE unilaterally and without exercising the statutory and contractual instruments provided by the Basic Contracts, initiated two judicial actions before courts of the Dominican Republic, demanding from ITABO the rendering an accounting, the obtainment of information, the payment of damages and losses and the delivery of assets to ITABO.

Concretely, CDEEE initiated the following legal actions:

A). On July 16, 2004, through Bailiff Act No. 1781/2004, processed on the date July 16, 2004 by Williams Radhamés Ortíz Pujols, Ordinary Bailiff of the Civil Chamber of

9



the Appeals Court of the National District, CDEEE formulated a requirement against ITABO in the following terms:

> "through the present act, a formal and express INTIMATION is made so that within the term of forty eight (48) hours you deliver to my petitioner through its counsel and special attorney of record, the complete documentation of the bid carried out for the rehabilitation of generation units 1 and 2, specially those that support the changes made in the different offers, which result in a difference of US$15.7 million dollars, aside from the resolution from the Shareholders Meeting that approve such changes. YOU ARE HEREBY WARNED that failure to comply with this requirement shall result in you being sued before the corresponding courts, so that the purposes **established in the Bylaws and laws regulating this matter** may be met (emphasis added)".

This intimation was rejected by ITABO through Act No. 578/2004 dated July 19, 2004 from Domingo Aquino Rosario García, ordinary deputy of the Penal Chamber of the Court of Appeals of Santo Domingo, in the following terms among others:

> "FOURTH: That with regard to the threat or warning formulated in the *in fine* part of its indicated intimation act, in the sense that if the party served notice "failed to abide by said requirement, it would be sued before the corresponding courts", for the purposes established in the Bylaws and laws regulating this matter may be met, the party serving notice invokes the provisions contained under Chapter VIII, "Arbitration" established by Article 58 of the bylaws, which binds the shareholders and members of the Board of Directors of EGE-ITABO to resolve through this means any difference or dispute that may arise among the shareholders and between one or more of them and the company or within the Board of Directors, that is not resolved through a mutual agreement and which must be submitted to arbitration which will take place.... In accordance with the last paragraph of article 58 of the Bylaws, through international arbitration, in accordance with the arbitration rules of the International Chamber of Commerce ("ICC Rules of Conciliation") of January 1st, 1988 and under the laws of New York; also, article 6 of the management agreement states that "Any dispute, controversy or claim stemming from this Agreement or from a breach, termination or validity of the same, shall be resolved in accordance with the Bylaws".

10

"FIFTH: That consequently, the party serving notice *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* hereby intimates *CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES* (CDEEE) to ( i ) become aware of the determination and position of my party serving notice to make available all financial and commercial information, including any and all related documents that may be needed, in accordance with article 49 of the Bylaws, as established by clause 3.5 of the Management Agreement dated September 8, 1999, which is well known by the party serving notice; ( ii ) desist from the terms of your intimation that reserved commercial and financial documentation be delivered to your counsel and special attorney in-fact  Dr. Angel Monero Cordero, due to being contrary to statutory provisions in force and applicable provisions of the Commerce Code, since no special power of attorney has been awarded to such third party not any legal provision or agreement requires the delivery of the documents in such manner, and ( iii ) abstain from materializing the threat of taking this matter to the courts if such were your intention, to initiate an action to compel the party serving notice to deliver the information against statutory provisions and agreements in force, because this would constitute a violation of the Social Pact and the Management Agreement that regulate the activities of EGE-ITABO".

B). The suit for rendering an accounting, notified to ITABO through Act No. 1798/2004 of July 16, 2004, through Ministerial Williams Radhamés Ortiz Pujols, was resolved through civil sentence 2507 under file 034-2004-1391 dated December 2004 by the First Civil and Commercial Chamber of the Court of First Instance of the National District in Santo Domingo, Dominican Republic. In such sentence the pretension of CDEEE is rejected. It is worth noting that this sentence has been appealed by CDEEE in an on-going disobedience of the commitment clause.

C) Demand for rendering an accounting and payment of damages and losses against ITABO and the President of its Board of Directors Julián Nebreda, notified ITABO through Act No. 422/2004, dated July 21, 2004 by Official Carla Morcillo, to appear before the Fifth Chamber of the First Civil and Commercial Chamber of the Court of First Instance of the National District, claiming the following:

"FIRST: That you hereby ORDER *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) through his President or

11

General Manager, as well as through any other person that may be involved and be responsible and in the capacity that they may have, TO PROCEED TO RENDER AN ACCOUNTING to *CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES* (CDE) of its financial and commercial operations before the companies CARIBBEAN INVESTMENT S.A. COASTAL ITABO LTD. COASTAL TECHNOLOGY DOMINICANA (CTD), *SERVICIOS DE ASISTENCIA TÉCNICA S.A. (*SAT) COASTAL PETROLEUM DOMINICANA LTD., COASTAL MANAGER LTD. COASTAL POWER DOMINICANA, COASTAL REFINING & MARKETING INC. *DISTRIBUIDORES INTERNACIONALES DE PETROLEO S.A.,* GENER S.A. among others, as well as other commercial and financial operations described in this complaint, from September 8, 1999 up until this date in 2004.

SECOND: That you APPOINT or that an Examiner Judge be appointed to whom accounts should be rendered and who will supervise the corresponding procedure.

THIRD: that you ORDER the filing with the Secretary of this Court of the commercial ledgers established by Law, corresponding to EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A. (EGE-ITABO) during fiscal years that ran from September 8, 1999 to July 1st 2004.

FOURTH: That you CONDEMN EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A. (EGE-ITABO) and its President Mr. Julián Nebrada to the payment of a penalty for the amount of TWO HUNDRED THOUSAND PESOS ORO (RD $200,000.00) national currency, for each day of delay in depositing the commercial ledgers, in the form and in the terms indicated above.

FIFTH: That you ORDER the appointment of the necessary experts to determine the reality of the economic and financial evolution of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO).

SIXTH: That you ESTABLISH the term for the rendering an accounting to be effected.

SEVENTH: that you CONDEMN *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) and its President Mr. Julián Nebrada to the payment of a penalty of TWO HUNDRED THOUSAND PESOS ORO (RD $200,000.00) national currency, for each day of delay in the rendering an accounting.

EIGHTH: That if accounts are rendered and if there is an unjustified absence of a specific amount or quantity, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) and its President Mr. Julián Nebrada be condemned to the payment of the missing amount or quantity.

NINTH: That should *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) and its President Mr. Julián Nebrada fail to render accounts in the terms and manner précised in this complaint, that you ORDER that they be compelled to do so through an Executive Attachment and sale of its goods up to the amount this Court may set to totally satisfy capital, interest, delays, benefits and damages and losses owed to *CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES* (CDEEE), as the result of the financial operations adopted in violation of the Company Bylaws.

TENTH: That upon executing the foregoing clauses, you ORDER *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) and its President Mr. Julián Nebrada to DELIVER all movables (Certificates of Investment, Stock Certificates of the company and of all related companies of which it is a shareholder) with the corresponding documentation.

ELEVENTH: That you CONDEMN *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) and its President Mr. Julián Nebrada to the payment of TWO HUNDRED THOUSAND GOLD PESOS (RD $200,000.00) national currency, for each day of delay in compliance.

TWELFTH: That you ORDER the appointment of the necessary experts to examine the originality, origin and equity of the documentation and goods delivered, corresponding to the Defendant Company and its President.

THIRTEENTH: That you ORDER *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) and its President Mr. Julián Nebrada to pay ONE HUNDRED THOUSAND GOLD PESOS (RD $100,000.00) national currency, if after depositing the documentation of reference, the same is not complete, for each day of delay in completing the deposit that has been ordered.

FOURTEENTH: That should the absence of a specific amount be unjustified, that you CONDEMN *EMPRESA GENERADORA DE ELECTRICIDAD ITABO S.A.* (EGE-ITABO) and its President Mr. Julián

13

Nebrada to the payment of FIVE HUNDRED THOUSAND PESOS ORO (RD $500,000.00) national currency in favor of *CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES* (CDEEE), legal successor of CDE, as a just and fair repair for economic and material harm caused to the Corporation.

FIFTEENTH: That you ORDER that the SENTENCE to be intervened be declared final notwithstanding any recourse that may be filed against the same and without the need of a bond.

SIXTEENTH: That you CONDEMN the defendant to the payment of legal interest over the sums for which it is condemned for the payment of damages and losses, as well as for any other accessory condemnation.

SEVENTEENTH: That you CONDEMN the defendant to the payment of costs related to this procedure to Dr. Carlos Manuel Padilla Cruz, attorney which is advancing it in its entirety.

14.- Through a notice addressed to CDEEE contained in Act No. 659/2004 of August 13, 2004, from Deputy Domingo Aquino Rosario García entitled "DISPUTE COMPLAINT TO BE SUBMITTED TO THE ADMINISTRATON AGENCIES OF EGE-ITABO AND RESERVES OF EMPOWEREMENT OF THE ARBITRATION TRIBUNAL" ITABO intimated CDEEE to abandon judicial and extra-judicial actions attempted and that it submit to statutory and contractual procedures contained under the Basic Contracts, warning it that failure to comply with the Basic Contracts would result in ITABO resorting to arbitration.

15.- Given the resistance on the part of CDEEE to abide by the Basic Contracts, on August 18, 2004 ITABO requested from the Conciliation and Arbitration Board of the Chamber of Commerce and Production of Santo Domingo Inc. the instauration of an arbitration procedure, denouncing the lack of compliance on the part of CDEEE, whose purpose was not to recognize the claims made by CDEEE but to compel it to discontinue actions before Dominican justice.

14

16.- Through a writ dated February 5, 2005 submitted before the Conciliation and Arbitration Board of the Chamber of Commerce and Production of Santo Domingo Inc. on February 7, 2005 ITABO withdrew the arbitration procedure initiated pursuant to point 15 above, with express reserve of right and actions.

17.- ITABO has appeared as defendant before the judicial instances of the Dominica Republic for the purpose of exercising the clause contained in the Basic Contracts ands request the Dominican courts to remit the parties to arbitration, in accordance with the arbitration pact and article Ii of the new York Convention, as announced and manifested in its notification referred in point 15 above.

18.- CDEEE's conduct constitutes a flagrant breach of the obligation is undertook of resolving all controversies arising between the parties within the framework of the Basic Contracts, precisely thr9ough the statutory and contractual mechanisms contained in such Basic Contracts, which has caused ITABO to incur in defense costs whose satisfaction is part of the claim made herein.

**c. Pertinent agreements and particularly, the arbitration agreement and documents or reports that the circumstances of the case establish:**

A copy of the Basic Contracts that contain the agreement for arbitration among the parties is attached.

**d. Any useful indications related to the number of arbitrators and their appointment.**

ITABO requests that this International Arbitration Court appoint a three-member tribunal. For such purpose, ITABO proposes for ratification from the CCI International Arbitration Court;

15

Name:       **Claus Von Wobeser**
Address:    G. González Camarena No. 1100, piso 7
            Santa Fe Centro de la Ciudad
            Del. Alvaro Obregón
            01210 México D.F., México
Telephone;  +52 55-52581000, 52581011
Fax:        +52 55-52581098, 52581099

With respect to the arbitration site, and taking into consideration that the parties have made new Cork law applicable, ITABO hereby requests that such city be set as the site of arbitration.

As to the language of the arbitration, this should be Spanish, since it must be taken into account that the documents are in Spanish and the witnesses are Spanish-speakers.

In the city of Monterrey, N.L. on February 8, 2005

---

Empresa Generadora de Electricidad Itabo S.A.

Through Javier Navarro Velasco

MFCS / June.05 / ITABO.Arbitratoin.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this thirteenth (13th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293

16

--- En Monterrey, Nuevo León, a los diez días del mes de junio del año dos mil cinco, la suscrita, licenciada Isabel Cristina Mata Velázquez, hago constar y certifico que esta traducción al inglés de esta carta, con mi sello y firma, es fiel y correcta. El documento total, incluyendo la traducción, consta de cuatro páginas útiles.
Monterrey, N.L. a 10 de junio de 2005.

)
)
)
)
)
)
)
)
)
)    _Isabel Cristina Mata V._
       Isabel Cristina Mata Velázquez
       Perito Oficial en Traducción del
       Idioma Inglés-Español, Español-Inglés
       de conformidad con lo dispuesto en el
       Oficio No. 414/2005 otorgado por el
       Pleno del H. Tribunal Superior de Justicia
       del Estado de Nuevo León con fecha
       31 de enero de 2005.

I, the undersigned, ISABEL CRISTINA MATA VELAZQUEZ, Official Translator appointed by the Superior Court of Justice of the State of Nuevo Leon, as set forth in Official Notice number **414/2005** dated **January 31**, **2005**, do hereby certify that this translation to the English language is, to the best of my knowledge and belief, true, complete and accurate, without additions or omissions. The entire document is comprised of four pages. Each page of the translated document contains the legend "Isabel Cristina Mata.- Perito Traductor" and has been signed by the undersigned. This translation is issued in the City of Monterrey, Nuevo León, on the **10th** day of **June**, 2005.

ICC
International Chamber of Commerce
The world business organization


International Court of Arbitration  -   Cour internationale d'arbitrage


May 18, 2005/JRF

13708/CCO – **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (República Dominicana) vs/ 1. CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES (República Dominicana) 2. FONDO PATRIMONIAL DE LAS EMPRESAS REFORMADAS/FONDO PATRIMONIAL PARA EL DESARROLLO (República Dominicana)**

Mr. Javier L. Navarro Velasco, Mr. Brian Casey,
Mr. Ignacio Reyes Retana, and Mr. Hugo González Peña
Baker & McKenzie Abogados, SC
Oficinas en el Parque, Torre I-Piso 10
Blvd. Antonio L. Rodríguez 1884 Pte.
Col. Santa María
64650 Monterrey, Nuevo León
Mexico

*Via Fax No. 00 52 81 8399 13 99*

Dr. Julio Cury,
Jottin Cury Jr., Esq. and Milvio Coiscou, Esq.
Calle Manuel Rodríguez Objío, No. 12, Gazcue
Santo Domingo, Distrito Nacional
República Dominicana

*Via Fax No. 00 1809 687 4114*

Dr. Gabriel Féliz Méndez, Luis Moquete Pelletier, Esq.
Ave. Independencia No. 201
Edificio Buenaventura, Apartamento 310, Gazcue
Santo Domingo, Distrito Nacional
Santo Domingo

*Via Fax No. 00 189 682 6417*

Dear Sirs:

The Secretary acknowledges receipt of the following communications:

1. Defendant No. 1 letter dated May 12, 2005, a copy of which has been sent directly to the other parties.



2. Defendant No. 2 letter dated May 12, 2005, a copy of which has been sent directly to the plaintiff and is attached hereto for information of defendant No. 1.
3. Plaintiff letter dated May 12, 2005, a copy of which has been sent directly to the defendants.
4. Plaintiff letter of dated May 13, 2005, a copy of which has been sent directly to the defendants.

Article 6(2)

The Secretary acknowledges receipt of the observations filed by the plaintiff in connection with the jurisdictional objections filed by defendant No. 1. Please note that they will be sent to the Court on a timely basis.

Constitution of the Arbitral Tribunal

The Secretary has duly noted that the defendants agree to the plaintiff's proposal in the sense that the President of the Arbitral Tribunal shall be jointly appointed by the arbitrators appointed by the parties.

Power of Representation of the Plaintiff

The Secretary has duly noted that the plaintiff *"is extending the powers of its attorneys-in-fact not only to sue the company Corporacion Dominicana de Empresas Estatales (CDEEE), but also to sue Fondo Patrimonial de las Empresas Reformadas/Fondo Patrimonial de Desarrollo (FONPER)"*. Also, the Secretary acknowledges receipt of the Proxy attached for such purposes.

Place of Arbitration

Please note that, in view of the fact that the defendants agree to the plaintiff's proposal, New York, NY, of the United States of America, will be the place of this arbitration.

The Secretary hereby informs you that this matter will be submitted to the Court in one of its upcoming meetings.

Yours truly,

Cristian Conejero Roos
Advisor
Secretary of the ICC International Court of Arbitration

Attachment: (Defendant No. 1): Defendant No. 2 letter dated May 12, 2005.





Translated by Mark Freehill
# MARK FREEHILL COMMUNICATION SERVICES
US Certified Federal Court Interpreter No. 20293

Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL  33114-9020  USA
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo,* in this city;  HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

[Extract from the **Contact for the Subscription of Shares** between **Empresa Generadora de Electricidad Itabo, S.A.** and **NEW CARIBBEAN INVESTMENT** signed in Santo Domingo, Dominican Republic, 08 September 1999.]

## ARTICLE 12
## RESOLUTION OF DISPUTES

12.1   Notification of Dispute.

In the event that any dispute, controversy or claim should arise among the Parties with respect to this Contract or non-compliance with, termination of or the validity of same, the Party wishing to declare a dispute must first notify the other Party of their intention identifying the question under dispute.

12.2   Resolution by the Parties.

Within the 30 days following the delivery of the advance notification of the dispute, the Parties will make a good faith attempt to resolve such dispute via mutual consultations.  In the event that the dispute should not be resolved via discussions within the thirty (30) days after the advance notification of same, any Party can refer the conflict to the principal executive officers of the Subscriber Corporation and the CDE and the Commission for further consideration.  In the event that said individuals cannot resolve the conflict and the Parties do not reach an agreement within fifteen (15) days, or a greater period to which the parties agree, then the Parties shall be obligated to recur to the arbitration conducted pursuant to that which is subsequently provided for in this Article.

12.3   Arbitration.

(a)   Any dispute that may arise from or be related to this Contract and that is not resolved by mutual agreement of the parties in conflict, must be resolved at the request of any of the parties, via arbitration held pursuant to the Law of Arbitration and under the Regulations of Arbitration.  The parties waive



from now and forever submitting any litigation to any court of the international or judicial order except for that stated below in item (k).

(b)     The arbitration will take place in Santo Domingo, Dominican Republic and, unless the Parties should decide otherwise, the number of arbiters will be three, designated by mutual agreement by the Parties, and in the event of not arriving at an agreement, the arbiters will be designated pursuant to Title II of the Arbitration Regulations, or in the case of substitution, the applicable title.

(c)     Just as established by article 34 of the Arbitration Regulation, upon approval of the Board of Directors, the Parties can set the seat of the Arbitration Tribunal in any place outside Santo Domingo in the Dominican Republic, or abroad, in which case, each one of the Parties will assume their expenses for transportation and lodging, and jointly all the expenses for the moving of the Arbitration Tribunal and the work of the Secretariat of said tribunal.  If one of the Parties should oppose the moving of the Arbitration Tribunal, the expenses incurred for such effect will be on the account of the requesting party.

(d)     The award that is handed down to this effect will be deemed to be the result of a procedure initiated and carried out in Santo Domingo, Dominican Republic.

(e)     Any decision that can be rendered in this regard, will not be appealable before any jurisdiction or court of the Dominican Republic nor abroad, and will be deemed to be definitive and binding on the parties immediately, and will not be subject, for its enforceability, to the requisites of Articles 1020 and 1021 of the Code of Civil Procedure, as established by the arbitration regulation in effect of the Chamber of Commerce and Production of the National District, in its Article 52.  Any monetary sanction will include the legal interest from the date of any non-compliance or other violation of this Contract until the date on which said sanction is paid, at a rate determined by the arbiter(s).

(f)     Any arbitration held by virtue of the above will be conducted in the Spanish language.

(g)     The Parties hereby irrevocably waive their right to recur to the ordinary courts or, to the degree allowed by the Laws of the Dominican Republic, those of exception to request the opinion of any court, with respect to any matter of law that may arise in the course of arbitration or with respect to the decision taken by the arbiters.  In like manner, they irrevocably waive any right to challenge or dispute the validity or enforceability of the arbitration procedure as well as the awards handed down pursuant to that foreseen in this article, including any objection based on incompetence or inappropriate jurisdiction.

(h)     For the purposes of this article, it is agreed, and the CDE agrees, that the CDE or its successors at all times will be governed by the provisions of



the Code of Commerce and common law enshrined by the Laws of the Dominican Republic and therefore it will not enjoy any right as an entity of the Government of the Dominican Republic and will not claim any immunity insofar as the arbitration process to which this Article refers.

(i)     It is expressly agreed that if it should be in order, any of the Parties to the conflict can request the Arbitration Tribunal to merge any arbitration procedure that may arise or be related to this Contract with any arbitration that may arise or be related to the Generator or with one or more of the Basic Contracts.   Such consolidated arbitration must be resolved by the arbitration court designated to consider the procedure that may have been first initiated.

(j)     The Parties irrevocably waive any right to appeal any decision or award that may result from arbitration, whereby any decision or award will be deemed to be definitive and binding on all and must be obeyed without any delay.   Any arbitration decision or award can be enforced by any competent court.

(k)     In the event that the Dominican Republic should ratify the New York Convention and/or the Panama Convention, the parties accept to settle their disputes via international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) of 1 January 1988, and under the laws of New York.  No arbiter designated as per this article shall be a citizen of any of the jurisdictions of the parties nor of the jurisdiction of any of the initial shareholders, nor shall that arbiter be able to be an employee or agent, nor former employee or agent, of any of the said persons.

MFCS / June.05 / ITABO/ShareSubscriptionContract.ARTICLE 12.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this eighth (8th)  day of the month of June of the year two thousand and five (2005).

_____
Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293



Translated by Mark Freehill
## MARK FREEHILL COMMUNICATION SERVICES
US Certified Federal Court Interpreter No. 20293
Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo,* in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

[Excerpt from the **CORPORATE BYLAWS** of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.,* adopted on the date 15 December 1998, as consigned in the minutes of the meeting of the Board of Directors marked as No. 464-98 and dated 9 December 1999.]

## CHAPTER VII

## ARBITRATION

ARTICLE 58.- In the event that in the deliberations of the Ordinary or Extraordinary General Meetings an impasse should arise that cannot be resolved by mutual agreement, the shareholders shall be obliged to recur to arbitration conducted pursuant to that which is subsequently provided for in this article. It will be likewise obligatory to recur to arbitration at all times, when differences or disputes should arise among the shareholders or between one or more of them and the corporation or within the Board of Directors related to the interpretation and application of these bylaws, should it be impossible to resolve it by common agreement among them.

Any dispute which, as per that which is established above, cannot be resolved by mutual agreement among the parties in conflict, must be resolved via arbitration held pursuant to the provisions of Law No. 50-8 of 4 June 1987 of the Dominican Republic and under the arbitration procedures and rules established by the Regulation of the Arbitration Tribunal of the *Cámara de Comercio y Producción del Distrito Nacional, Inc.*, of November 1988.

Said arbitration will take place in Santo Domingo, Dominican Republic and, unless the parties should decide otherwise, the number of arbiters will be three, designated by mutual agreement by the parties, and in the event of not arriving at an agreement, the arbiters will be designated according to the procedure established in Title II of the mentioned Regulation.

Just as established by article 34 of the Arbitration Regulation, upon the approval of the Board of Directors of the Council on Conciliation and Arbitration of the Chamber of Commerce and Production of Santo Domingo *(sic)*, the parties



can set the seat of the Arbitration Tribunal in any other place within the country, or abroad, in which case, each one of the parties will assume their expenses for transportation and lodging, and jointly all the expenses for the moving of the Arbitration Tribunal and the work of the Secretariat of said tribunal. If one of the parties should oppose the moving of the Arbitration Tribunal, the expenses incurred for such effect will be on the account of the requesting party.

The award that is handed down to this effect will be deemed to be the result of a procedure initiated and carried out in Santo Domingo, Dominican Republic.

Any arbitration held by virtue of the above will be conducted in the Spanish language.

The shareholders, upon attaining that capacity, by virtue of these bylaws, irrevocably waive their right to recur to the ordinary courts or those of exception to request the opinion of the Court, insofar as the law allows, with respect to any matter of law that may arise in the course of arbitration or with respect to the decision taken by the arbiters. In like manner, they irrevocably waive any right to challenge or dispute the validity or enforceability of the arbitration procedure as well as the awards handed down pursuant to that foreseen in this article, including any objection based on incompetence or inappropriate jurisdiction.

For the purposes of this article, it is acknowledged that the CDE or its successors at all times will be governed by the provisions of the Code of Commerce of the Dominican Republic and Dominican Common Law, whereby no immunity will be claimed insofar as the arbitration process to which this article refers.

It is expressly agreed that if it should be in order, any of the parties to the conflict can request the Arbitration Tribunal to merge any arbitration procedure that may arise or be related to these bylaws with any arbitration that may arise or be related to other arbitration actions if the principal motive of the disputes are derived from or related to these bylaws. Such merged arbitration must be resolved by the arbitration court designated to consider the procedure that may have been first initiated. Except as the previous paragraphs may provide otherwise, the right of the parties to proceed with the resolution of the disputes via arbitration established in these bylaws will be independent of their right or the right of other entities to proceed with the resolution of disputes as per that which is established in the agreements or contracts signed by them.

The shareholders and the Company[1] waive any right to appeal any decision or award that may result from arbitration, whereby any decision or award will be deemed to be definitive and binding on all and must be obeyed

---

[1] Article 1 of these bylaws identifies "The Company" to be "EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A." – The Translator



without any delay.  Any arbitration decision or award can be enforced by any competent court.

If the Dominican Republic should ratify the New York Convention on the recognition and enforcement of foreign arbitration sentences adopted by the United Nations Conference on International Commercial Arbitration on 10 June 1958, and/or the Panama Convention on Commercial Arbitration, the parties accept to settle their disputes via international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) of 1 January 1988, and under the laws of New York.  No arbiter designated as per this article shall be a citizen of any of the jurisdictions of the parties nor of the jurisdiction of any of the initial shareholders, nor shall that arbiter be able to be an employee or agent, nor former employee or agent, of any of the said persons.

MFCS / June.05 / ITABO.ITABO Bylaws CHAPTER VII.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this eighth (8th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293



**Translated by Mark Freehill**

MARK FREEHILL COMMUNICATION SERVICES
US Certified Federal Court Interpreter No. 20293

**Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA**
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card *(Cédula)* No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo,* in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

## SUIT FOR THE RENDERING OF AN ACCOUNTING

**ACT NO.** *1798 /2004.-* In the City of Santo Domingo, National District, Capital of the Dominican Republic, on the *twenty-first (21st)* day of the month of July of the year two thousand and four (2004).

**ACTING** at the request of ***CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES* (CDEEE)**, an autonomous public utility, organized and existing pursuant to the General Law of Electricity No.125-01, of 26 July 2001, with its domicile at the corner of Av. Independencia and Fray Cipriano de Urtera Street of the *Centro de los Héroes de Constanza, Maimón y Estero Hondo (La Feria)*, of the city of Santo Domingo, duly represented by its Executive VicePresident, **ENGINEER CÉSAR SÁNCHEZ TORRRES**, a Dominican citizen, of legal age, married, bearer of the Electoral and Identification card *(cédula)* No.001-011432102, domiciled and resident in this city, who has especially empowered and constituted attorney of record **DR. ANGEL MONERO CORDERO**, a Dominican citizen, of legal age, married, Attorney of the Courts of the Republic, provided with the Electoral and Identification card No.012-0003924-4, Attorney before the Courts of the Dominican Republic, with his professional office opened at No. 205, Edif. Bollero II, Suite 205, of this city  of Santo Domino, at which place the party serviing notice makes formal and express choice of domicile for all the legal consequences and purposes of this act.-

I, *William [Illegible]* _____,
duly named, received and sworn for the regular exercise of the acts of my own ministry.-

**EXPRESSLY**, and by virtue of the above request, I have presented myself within this same city;
**FIRST:** At No. 1180 *(sic)* Rómulo Betancourt Avenue, *La Julia* sector, which is where Empresa Generadora de Electricidat ITABO, S.A. (EGEITABO) has its corporate domicile and once there,

speaking personally with *Vicente Pimentel* who said he was an *Employee* of the party served notice with capacity from receiving acts of this nature, I have formally served notice the party served notice that the party serving notice, by means of this act SUMMONS it formally as may be by the law, for it to appear within the term of the eighth working day before the Commercial and Civil Chamber of the Court of the First Instance of the National District (First Hall), in its civil attributions, for the following motives and purposes.

**HAVING NOTED:** That the *Corporación Dominicana de Empresas Eléctricas Estatales* (CDEEE), pursuant to Law 41-97 dated 24 June 1997, and the Capitalization Contract, is shareholder of *Empresa Generadora de Electricidad ITABO, S.A.* (EGEITABO), with 49.9 percent of the Class "A" shares, whereby it has the right to know about all the acts and actions produced in same and to receive information in an amicable fashion and otherwise it has the right to recur to before the corresponding courts in order for them to hand down the provisions that guarantee its rights in the expenses and the income pursuant to Article 533 of the Civil Procedural Code.

**HAVING NOTED:** That the Suit for the Rendering of an Accounting is competence of the judge of the domicile of the account custodian *(cuentadante)*, pursuant to that provided by Art.527 of the Code of Judicial Procedure when it establishes: "The account custodians commissioned by justice will be sued before the judges who may have named them; tutors before the judges of the place in which the tutorship is conferred; and the other account custodians before the judges of their domicile.

**HAVING NOTED:** That the administration of *Empresa Generadora de Electricidad ITABO, S.A.* (EGEITABO), has been carried out with a personalistic criterion, without the other shareholders knowing about the real situation of the expenses and income generated by same.

**HAVING NOTED:** That in order to give transparence and the real condition of the situation of the company, the company Stone & Management Consultants, Inc. *(sic)* was contracted, in order for them to carry out an audit of the process for the rehabilitation of the Generation Unites 1 and 2, and the balance of the associated plant.

**HAVING NOTED:** That *Empresa Generadora de Electricidad ITABO, S.A.* (EGEITABO), has refused to deliver the documents backing said investment and that from the result that has been prepared by the auditing firm, an excess of investment by an amount greater than US$15.7 million dollars is evidenced, without any kind of justification.

2



**HAVING NOTED:** That the other aspects of the Rendering of an Accounting are governed by articles 527 ff. of the Code of Civil Procedure of the Dominican Republic.

**HAVING NOTED:** That any party who loses in justice will be sentenced to the payment of the costs of the procedure and the attorney who affirms having advanced them in large part or in full, can ask for the disbursement of same to their benefit pursuant to Articles 130 and 133 of the Civil Code of Procedure.

For the expressed reasons, plus those we will provide in the Writ of Expansion and Foundation, plus what can be added by the most wise and illustrated judgment of this Honorable Court, let the party served notice HEAR the party serving notice ASK the empowered judge TO RULE:

**FIRST:** To declare this Suit for the Rendering of an Accounting filed by *Corporación Dominicana de Empresas Estatales* (CDEEE), against *Generadora de Electricidad ITABO, S.A.* (EGEITABO) to be regular and valid in form as well as by its merits, since it was made pursuant to the law.

**SECOND:** To order *Generadora de Electricidad ITABO, S.A.* (EGEITABO) to render an accounting to the plaintiff *Corporación Dominicana de Empresas Eléctricas Estatales* (CDEEE), by means of the judge commissioned of all the commercial, court, judicial, administrative, financial operations and those of any other nature that have any relationship with the rehabilitation of the Generation Units 1 and 2.

**THIRD:** That via sentence a term of ten (10) days in order for the defendant *Empresa Generadora de Electricidad ITABO, S.A.* (EGEITABO) give or render an accounting to the plaintiff *Corporación Dominicana de Empresas Eléctricas Estatales* (CDEEE), of the exact balances related to said rehabilitation.

**FOURTH:** That the writ designate the *Comisario* Judge to receive the accounts.

**FIFTH:** To order by sentence the corporal exigency (*apremio corporal*) under the charge of the account custodian within the term set by the sentence to be intervened.

3

**SIXTH:** That this suit serve as authorization to attache the assets of the defendant *Empresa Generadora de Electricidad ITABO, S.A.* (EGEITABO), if is should fail to give or render the accounting within the term set by the sentence to be intervened.

**SEVENTH:** To order the provisional execution without bond of the sentence to be intervened notwithstanding any appeal against same that may be intervened.

**EIGHTH:**     To sentence the defendant *Empresa Generadora de Electricidad ITABO, S.A.* (EGEITABO) to the payment of the costs and that you order their disbursement to the benefit and favor of **DR. ANGEL MONERO CORDERO,** Attorney who affirms having advanced them in full.

AND THOU SHALT MAKE JUSTICE.

### UNDER THE MOST ABSOLUTE AND EXPRESS RESERVATIONS OF LAW.

And so that the party served notice, *Empresa Generadora de Electricidad ITABO, S.A.* (EGEITABO) not allege lack of knowledge or ignorance about the contents of this act, I have thus notified and stated, having left a copy faithful to the original of this act with the person with whom I said I had spoken in the place of my presenting myself, which consists of two computer-written pages, on just one side, all duly signed, stamped and initialed by me, the Bailiff I CERTIFY AND BEAR WITNESS. COST RD$ $10.00.

[Signed and stamped]
**THE BAILIFF**

[All pages stamped and initialed]

MFCS / June,05 / ITABO.Act 1798 / 2004.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this thirteenth (13th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
**U.S. Certified Federal Court Interpreter No. 20293**

4



| | Certified by Mark Freehill |
|---|---|

**MARK FREEHILL COMMUNICATION SERVICES**
US Certified Federal Court Interpreter No. 20293
Calle 5, No. 12, Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo,* in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

## TO THE HONORABLE JUDGE MAGISTRATE PRESIDING AND TO THE OTHER HONORABLE JUSTICES WHO MAKE UP THE FIRST CIVIL AND COMMERCIAL CHAMBER OF THE APPEALS COURT OF SANTO DOMINGO. IN HEARING.

### Conclusions of Hearing

**Exception of Incompetence of Power and Declining of Jurisdiction in Favor of the International Arbitration Court of the International Chamber of Commerce of Paris, as Arbitration Jurisdiction Chosen by the Parties.**

### Matter

Suit for Rendering of an Accounting and Damages and Harm brought irregularly by the Dominican Corporation of State-Owned Electrical Enterprises (CDEEE) against the Empresa Generadora de Electricidad ITABO, S.A. (ITABO) in violation of the arbitration clauses agreed to through the contracts celebrated between the parties and ITABO's By-laws by means of act No. 1789/2004 dated July 21, 2004, legalized/formalized at the request of CDEEE by Court Official William Radhamés Ortiz Pujols, Bailiff Ordinary of the Appeals Court of Santo Domingo; and which was passed in "*absentia*" in first-degree and rejected automatically by decision No. 2507 dated Nomveber 29th, 2004, pronounced by the first Hall of the Civil and Commercial Chamber of the Court of the First Instance of the National District.

### Concluding Party:
Empresa Generadora de Electricidad ITABO, S.A. (Co-defendant)

### Lawyers:
Lic. Giselle Leger
Lic. Carlos Radhamés Cornielle M.

Honorable Magistrates:

1

The deponent, the **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (ITABO)**, a business partnership incorporated and organized pursuant to the laws of the Dominican Republic, with its corporate domicile open at Avenida Rómulo Betancourt No. 1108, Sector La Julia, in this city of Santo Domingo, duly represented by its General Manager, Mr. Mark Tracey, of Canadian nationality, of legal age, bearer of the Personal Identification Card No. 001 -1793523 - 9, with domicile and residence in this city of Santo Domingo;

THROUGH its incorporated lawyers, the undersigned Messrs.: (a) **LIC. GISELLE LEGER**, a lawyer of the bar of the courts of the Republic, bearer of the Personal and Electoral Identification Card No. 002-0020730-6; and (b) LIC. CARLOS RADHAMES CORNIELLE M., lawyer of the bar of the courts of the Republic, bearer of the personal and electoral identification card number 001-0068402-6; the former with professional study open at Avenida Rómulo Betancourt No. 1108, Sector La Julia, Santo Domingo, and the second, with professional study open at Avenida Pedro Henríquez Ureña No. 55 corner Máximo Cabral, Sector Gazcue in this city of Santo Domingo, and in the first of whose law offices the deponent makes formal choice of domicile;

ON THE OCCASION of the Demand for Rendering of an Accounting and Damages and Harm brought irregularly by the Dominican Corporation of State-Owned Electrical Enterprises (CDEEE) against the Empresa Generadora de Electricidad ITABO, S.A. (ITABO) in violation of the arbitration clauses agreed to in the contracts celebrated between the parties and the ITABO By-laws by means of act No. 1798 dated July 21, 2004, legalized/formalized at the request of CDEEE by Court Officer William Radhamés Ortiz Pujols, Bailiff Ordinary of the Appeals Court of Santo Domingo; and which was passed in " *absentia*" in first-degree and rejected automatically by decision No. 2507 dated November 29, of the year 2004, pronounced by the First Hall of the Civil and Commercial Chamber of the Court of the First Instance of the National District. It is pleased most respectfully and under the special reservations which of the indicated below, to state to you and the request of you the following:

## I. Facts and Precedents

1. In the years 1998 and 1999 the Dominican Republic carried out a program of capitalization, of the electrical industry owned by the Dominican State, of the activities of monopolistic exploitation held by the Dominican Electrical Corporation (hereinafter "CDE"). As a result of said program, several Enterprises were created, which, by means of capitalization on the part of private investors, obtained the financial resources and technical assistance necessary to improve and expand the generation of electrical energy in the country, and to invest in the electrical sector.

2. On June 24, 1997, the Executive Power promulgated in the Dominican Republic the General Law on Reform of State-Owned Enterprises No. 141-97. Said law (hereinafter Law 141-97) created the legal framework to permit the capitalization of the CDE. The CDE was initially the governmental enterprise through which the Dominican Republic

2



was to maintain its share participation and contracts with the private sector in the area of electrical energy.

3. In conformance with Law 141-97 five business Enterprises were created: ITABO and Empresa Generadora de Electricidad Haina, S.A., dedicated to the **generation** of electricity, and Empresa Distribuidora de Electricidad del Norte, S.A., Empresa Distribuidora de Electricidad del Sur, S.A. y Empresa Distribuidora de Electricidad del Este, S.A., dedicated to the **distribution** of electricity. That is to say that, of the business Enterprises generating electricity, ITABO was one, for which the corresponding act of incorporation (Assemblies, By-laws, Payrolls, Commissars' Reports of Contributions, and the rest of the formalities of the Commercial Code) were signed.

4. In accordance with Law 141-97, ITABO would be capitalized by means of (i) the contribution made by CDE to said Enterprises, of certain equipment and infrastructure for the generation of electrical energy, for which contribution CDE would receive Series A Common shares; and (ii) for the contribution in cash by the private companies to which the bid would be adjudicated in a process of international public bidding under the responsibility of the Commission for Reform of State-Owned Enterprises. The private companies that would capitalize the Enterprises for generation of electrical energy would receive, in exchange for their contribution, the equivalent of 50% of the shares representing the capital stock of the capitalized Enterprises in Series B shares.

5. As a result of the corresponding procedure of international public bidding, the following contracts were celebrated:

    i)      Contracts of Subscription of Shares, including ITABO's By-laws;
    ii)     Administration Contracts;
    iii)    Contracts for Granting of Rights for Exploitation of Electrical Works relating to the generation of electricity;
    iv)     Contract for Sale of Energy;
    v)      Agreements for Transfer of the Contract for Sale of Energy..

Said contracts have been called, and hereinafter shall be called, the "Basic Contracts," which have been deposited by the deponent, in its First Inventory of documents/records dated August 18 of the year 2004.

6. The Basic Contracts[1] stipulate that the parties would attempt to resolve their differences in an amicable manner, and only in the event that said efforts were futile, would the Basic Contracts in their relevant part provide for the following:

---

[1] Article 58 of ITABO's By-Laws, Article 12.3 of the Contract for Subscription of Shares dated August 13, 1999, Article 9 of the Contract Granting Rights for the exploitation of Electrical Works relating to the service of electricity generation in the Dominican Republic, dated December 8, 1999, Article 7.1 of the Agreement of Transfer of Contract for Sale of Energy dated September 8, 1999, and Article 5 of the Administration Contract.



> *"If the Dominican Republic ratifies the New York Convention on acknowledgment and enforcement of foreign arbitration rulings adopted by the United Nations Conference on International Commercial Arbitration, of June 10, 1958, and/or the Panamá Convention on Commercial Arbitration, the parties accept to resolve their disputes by means of international arbitration, in conformance with the Arbitration Rules of the International Chamber of Commerce (ICC Rules of Conciliation) of January 1, 1988, and under the laws of New York. No arbitrator named according to the present article shall be a citizen of any of the jurisdictions of the parties or of the jurisdiction of any of the initial shareholders, nor may that arbitrator be an employee or agent/representative or former employee or former agent/representative of any of said persons"*

7. The Dominican Republic ratified the New York Convention by means of resolution 178-01 of the National Congress duly promulgated by the Executive Power on November 8, 2001. A copy of the corresponding certification was deposited with No. 12 of ITABO´s Inventory, dated March 18 of the year 2005.

8. For the purpose of incorporating the conditions of coal operating design of the ITABO Steam I and ITABO Steam II Thermoelectric Units consisting of generation units with a nominal or rated capacity of 128 and 132 MW, respectively, ITABO (with the participation of the representatives of the shareholder Dominican State), resolved to carry out the execution of a **Project for Rehabilitation of the ITABO Steam I and ITABO Steam II Thermoelectric Units** (hereinafter the **Rehabilitation Project**).

9. The Rehabilitation Project was carried out in the period comprised between January of 2000 and September of 2003. CDEEE, abrogating to itself, in the facts, the condition of presumed legal continuation of the former CDE (despite the fact that Art. 138 of Law No. 125-01 of 21/7/01 does not establish it), despite the fact that it was kept informed and duly notified, and that in certain cases it approved the execution and expenses incurred in the Rehabilitation Project, by means of votes on ITABO´s Board of Administration, subsequent to the execution of the Rehabilitation Project, objected to same and requested that the independent Company of Stone & Webster Management Consultants Inc. (hereinafter **S&W**) carry out an independent technical and financial audit of the Rehabilitation Project. Based on that audit, the CDEEE brought a parallel suit by means of Act No. 422-2004 dated July 21, 2004, legalized/formalized by Court Official Clara Morcelo, Bailiff of the Labor Court of the National District, for the same purposes of rendering accounts as the action in question, which is pending a decision before the Fifth Hall of the Civil and Commercial Chamber of the Court of First Instance of the National District, before which ITABO has brought an exception of incompetence and a relinquishment of competence on terms equal to the present ones.

10. Regarding said lawsuit before the Fifth Chamber, S&W delivered to CDEEE a preliminary draft report (hereinafter the **Preliminary Report**) about the basis of the available information, to which ITABO responded punctually and precisely by means of a Response Report (hereinafter **Response Report**). Said Response Report indicates that the cost and time of the Rehabilitation Project correspond fundamentally to the

4



deteriorated conditions of Itabo Steam I and Itabo Steam II Thermoelectric Units at the moment that they were received in the capitalization, and on the other hand to the market conditions of the moment, and are in accordance with reasonable commercial criteria, and moreover, that the execution of the Rehabilitation Project added value to ITABO.

11.  Independently of the above, with respect to the S&W audit, CDEEE maneuvered during the last governmental administration so that the Development Fund for Reformed Enterprises (FONPER) which is the entity that was supposed to substitute the former CDE in everything that had to do with the capitalized state-owned Enterprises (both electrical and non-electrical), contract the services of an international firm for the performing of a technical, financial, and compliance audit of all of the Enterprises that were capitalized, and which in the case of ITABO was begun on January 17, 2003, and should have been finished in ninety days. ITABO accepted to move up this audit to an earlier date, taking into account the fact that FONPER, in conformance with Article 20 of the General Law on Public Reform No. 141-97 dated 24/6/97 and Articles 1, 2, and following of Law No. 124-01 dated 24/7/01 (that is to say, prior to Law No. 125-01 of 26/7/01 which created the CDEEE) would replace the now non-existent CDE in the formal ownership of the shares of the Dominican State in ITABO.

12.  On October 22, 2003, the CDEEE sent for ITABO´s opinion a copy of the results of the Technical, Financial, and Compliance Audit performed on ITABO by the firm of Grant Thornton, at the request and by means of a contract with FONPER. On November 21, 2003, and within the thirty (30) day time period granted to it, ITABO provided comments and gave a response to the points included in the Executive Summary, and in the Conclusions of the Audit. Since that date ITABO has not received any kind of comments or additional request from the CDEEE or from FONPER.

13.  Despite all of the above, and despite the fact that any difference between the shareholders, or between the latter and ITABO must be resolved within the contractual framework established by the Basic Contracts, because of the differences which the alleged shareholder CDEEE identifies as part of the audit performed, and without additional consultations or with the administration of ITABO, nor with its Board of Administration, in relation to the FONPER audit and to the audit of the Rehabilitation Projects of the ITABO Steam I and ITABO Steam II units, CDEEE unilaterally and without exhausting the statutory and contractual channels provided for in the Basic Contracts, initiated two judicial actions before the courts of the Dominican Republic, demanding from ITABO the rendering of accounts, obtaining of information, payment of damages and harm, and delivery of ITABO´s assets to CDEEE. In other words, the incomplete audits, which were never discussed in the Board or in the ITABO Shareholders´ Meeting, in reality became the basic justification for a disproportional attack, because of what seems to be the individual disagreements of former administrators, who with such actions have attempted to undermine the State of Law, hierarchy of signed agreements which are the basis of the enormous investments made by the private sector in ITABO, implying in addition the dissolution of the process of capitalization by an artificial means and which is contrary to the norms of public order of the very Law No. 141-97 which consecrated such process.



14. Concretely, CDEEE initiated the following actions:

A) On July 16 of the year 2004, by means of Bailiff´s Act No. 1781/2004, formalized/legalized Law and July 16 of the year 2004, by Ministerial Williams Radhamés Ortiz Pujols, Bailiff Ordinary of the Civil Chamber of the Appeals Court of the National District, the CDEEE formulated a request to ITABO in the following terms:

> "by means of the present act formal and express DEMAND is made to so that in the term period of forty-eight (48) hours you deliver to my enjoining party through its incorporated and especially empowered lawyer the complete documentation of the bidding performed for the rehabilitation of the generator units one and two, especially those which support the changes made in the different bids, which gave as the result a difference of US$15.7 million dollars, in addition to the resolution of the Shareholders Meeting which approved said changes, WARNING YOU that if you do not obey such requests, you shall be sued before the corresponding courts, for purposes of compliance with what is established **in the By-laws and in the laws that govern the matter.**" (emphasis added)

Said demand was rejected by ITABO by means of Act No. 578/2004 dated July 19, of the year 2004, of Court Official Domingo Aquino Rosario García, Bailiff Ordinary of the Criminal Chamber of the Appeals Court of Santo Domingo, among others in the following terms:

> "FOURTH: That given the threat or warning made by my enjoined party in the *in fine* part of its said notice of demand, in the sense that in the event that the enjoining party "not obey said request, it shall be sued before the corresponding courts," for the purpose of compliance with what is established in the Corporate By-laws and in the laws which govern the matter, my enjoining party invokes, and opposes/objects to such warning with, the imperative provisions of Chapter VIII, Arbitration, which is the title of article 58 of the Corporate By-laws which institutes the commitment clause which binds the shareholders and members of the Board of Administration of EGE-ITABO, to resolve by this means any differences or disputes which may arise between the shareholders, or between one or more of the shareholders of the partnership, or within the Board of Administration, which are not resolved by mutual agreement, and which must be submitted to arbitration, which shall be held... ... in accordance with the final paragraph of said article 58 of the By-laws, resorting to international arbitration, in conformance with the rules of arbitration of the International Chamber of Commerce ("ICC Rules of Conciliation") of January 1 of 1988, and under the laws of New York; noting however, that on an equal order article 6 of the already cited administration contract establishes that "Any dispute, controversy, or claim which may arise from the present Contract or from the noncompliance, termination, or the validity of same, shall be resolved in accordance with the By-laws";

6



"FIFTH: That consequently my enjoining party, the EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A., demands that my enjoined party, the CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE): (i) be aware of the determination and position of the notifying party to make available all financial and commercial information, including any related documents, which may be needed in conformance with article 49 of the Corporate By-laws, as established by the said clause 3.5. of the Administration Contract dated September 8, 1999, fully known by my notified party; (ii) that it desist from/abandon the terms of its demand that reserved documentation of a commercial and financial nature be delivered to its incorporated and especially empowered lawyer, Dr. Angel Monero Cordero, because it is contrary to the provisions of the by-laws/laws in effect, and to the applicable provisions of the Commercial Code, noting that no special power has been conferred on said third party, nor does any legal provision or agreement obligates the delivery, through that means, of documents of administrative and corporate performance; and (iii) that it refrain from materializing the threats of bringing before the courts of judicial order, if such as its intention, an action intended to compel the enjoining party to deliver information outside of the by-laws/legal provisions and agreements in effect, since this would constitute a violation of the Corporate Agreement and the Administration Contracts, which govern the performance of EGE-ITABO."

B) The demand for rendering of accounts, notified to ITABO by means of Act No. 1798/2004 dated July 16, 2004, through Court Official Williams Radhamés Ortiz Pujols, which was resolved, in ITABO´s absence, by means of Civil ruling No. 2507 issued by the First Hall of the Civil and Commercial Chamber of the Court of First Instance of the National District with Seat in Santo Domingo. Said ruling rejects the requests by CDEEE. It should be clarified that this ruling has been appealed by the CDEEE in continuous defiance of the commitment clause, that is the object of the present hearing and the conclusions which are articulated by the present writ of defense.

C) Suit for rendering of accounts and payment of damages and harm against ITABO and its President of the Board of Administration, Julián Nebreda, notified to ITABO by means of Act No. 422/2004 dated July 21, 2004, through Court Official Clara Morcelo, to appear before the Fifth Hall of the Civil and Commercial Chamber of the Court of First Instance of the National District, in its commercial attributions, claiming the following:

"FIRST: That YOU ORDER the EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) in the person of its President or General Manager, as well as any other person who is involved and responsible, and in the capacities which they hold, TO PROCEED to RENDER ACCOUNTS to the CORPORACIÓN DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDE) of its financial and commercial operations vis-à-vis the related enterprises of NEW CARIBBEAN INVESTMENT, S. A., COASTAL ITABO, LTD., COASTAL

7



TECHNOLOGY DOMINICANA (CTD), SERVICIOS DE ASISTENCIA TÉCNICA, S. A. (SAT), COASTAL PETROLEUM DOMINICANA LTD, COASTAL MANAGER LTD, COASTAL POWER DOMINICANA, COASTAL REFINING & MARKETING INC., DISTRIBUIDORES INTERNACIONALES DE PETROLEO, S. A., GENER, S. A., among others, as well as other commercial and financial operations described in detail in the present lawsuit, from September 8 of the year 1999 to the date of the year 2004.

SECOND: That YOU DESIGNATE or YOU DESIGNATE YOURSELF AS Judge Commissar before whom Accounts must be Rendered, and who shall Supervise the procedure for Rendering of said Accounts.

THIRD: That YOU ORDER EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) by a ruling, in addition, to deposit, through the Office of the Secretary of this court, the commercial/accounting books established by law, corresponding to its fiscal year, from September 8, 1999 to July 1 of the year 2004.

FOURTH: That YOU CONDEMN the EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) and its President, Mr. Julián Nebreda, to the payment of an penalty for the sum of TWO HUNDRED THOUSAND PESOS GOLD (RD$200,000.00) in national currency, for each day of delay in effect in the deposit of the dismissed books, in the form and under the terms indicated above.

FIFTH: That YOU ORDER the designation of the experts necessary to perform the appropriate inspection to determine the reality of the course of the economic and financial evolution of EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO).

SIXTH: That YOU SET the term period within which the accounts must be rendered or given.

SEVENTH: That YOU CONDEMN EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) and its President, Mr. JULIAN NEBREDA, to the payment of an PENALTY for the sum of TWO HUNDRED THOUSAND PESOS GOLD (RD$200,000.00) in national currency, for each day of delay in proceeding to the Rendering of an Accounting.

EIGHTH: That in the event of Rendering Accounts, and an unjustified absence of a specific amount, the EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) and its President, Mr. JULIAN NEBREDA, the condemned to the payment of said amount missing.



NINTH: That in event that EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) and its President, Mr. JULIAN NEBREDA, not Render Accounts in the terms and forms indicated the present lawsuit, YOU ORDER that they be compelled by means of an Executive, Personal Goods, or Real Goods Embargo and the sale of their goods up to the amount that this Court may be pleased to set, in order totally satisfy both the capital, interest, moratory interest, benefits, damages, and harm vote to the CORPORACIÓN DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE), as a consequence of the financial operations taken in violation of the Partnership´s By-laws.

TENTH: That after the above clauses are executed, YOU ORDER, also by the way of the same sentence, that EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. and its President, Mr. JULIAN NEBREDA, DELIVER all of their real properties (Investment Certificates, Certificates of company shares, and of all the related companies of which it is a shareholder), and of the real properties (Deed Certificates and others), with their corresponding documentation.

ELEVENTH: That YOU CONDEMN EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) and its President, Mr. JULIAN NEBREDA, to the payment of an PENALTY for the sum of TWO HUNDRED THOUSAND PESOS (RD$200,000.00) in national currency, for each day of delay in compliance.

TWELFTH: That YOU ORDER the designation of the experts necessary to examine the originality, appropriateness, correctability, and equity of the documentation and goods thus delivered, corresponding to the Defendant Enterprise and to its President.

THIRTEENTH: That YOU ORDER EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) and its President, Mr. JULIAN NEBREDA, to pay an PENALTY for the sum of ONE HUNDRED THOUSAND PESOS (RD$100,000.00) in national currency, in the case that after depositing the documentation in reference, it not be complete, for each day of delay in completing the deposit ordered.

FOURTEENTH: That in the case that there should be an unjustified absence of a specific amount, the EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO) and its President, Mr. JULIAN NEBREDA, be condemned to the payment of the sum of FIVE HUNDRED MILLION PESOS (RD$500,000,000.00) in national currency, in favor of the CORPORACIÓN DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE), the legal continuation of the CDE, as fair and appropriate compensation for economic and material damages caused to the Corporation.

9



FIFTEENTH: That YOU ORDER that the SENTENCE to be pronounced . be declared provisionally enforceable and recorded in minutes, despite any appeals which may be brought against same, and without need of providing of bond.

SIXTEENTH: To condemn the defendants to the payment of legal interest on all of the amounts to which it is condemned as compensation for damages and harm, as well as any other accessory penalty, as of the pronouncing of sentence.

SEVENTEENTH: To condemn the defendant to the payment of the costs of the proceedings, ordering that it be paid in favor of Dr. Carlos Manuel Padilla Cruz, which lawyer states that he has advanced the amount in its entirety."

15. By means of notification addressed to the CDEEE contained in Act No. 659/2004 dated August 13, of the year 2004, of Court Official Domingo Aquino Rosario García, entitled "DENUNCIATION OF DISPUTES TO BE SUBMITTED TO THE ADMINISTRATIVE ENTITIES OF EGE-ITABO AND RESERVATIONS OF EMPOWERMENT OF ARBITRATION COURT", ITABO demanded that CDEEE abandon the judicial and extrajudicial actions brought, and that it submit itself to the legal and contractual procedures contained in a Basic Contract, advising it that if it did not obey the provisions of the Basic Contract, ITABO would resort to arbitration.

16. In view of CDEEE's resistance to abide by the provisions of the Basic Contracts, and without waiving the competence of any other arbitration forum with jurisdiction, on August 18, of 2004, ITABO requested of the Board of Conciliation and Arbitration of the Chamber of Commerce and Reduction of Santo Domingo Inc., the creation of an arbitration proceeding, denouncing the noncompliance by CDEEE, whose purpose was not to hear CDEEE's claims, **but rather to compel it to discontinue such actions before the Dominican justice system.** By means of that empowerment, ITABO formulated the following requests, among others:

"SECOND: Regarding the merits, TO DETERMINE AND DECLARE: (A) That CDEEE, by notifying its demand, and the demands for rendering of accounts and other purposes described in paragraphs 27, 29, and 30 of the present introductory petition of the arbitration suit, has incurred in violation of the commitment clauses provided as a common stipulation in all of the basic contracts which governed the process of capitalization of ITABO, and which order the empowerment of the arbitration jurisdiction, as has been said, for the solution of all types of disagreements, disputes, or controversies between the parties; (B) That CDEEE lacks the right to claim from ITABO the rendering of accounts which it is demanding, outside of the cases established by the basic contracts, and particularly ITABO's by-laws and the administration contract, to which reference has been made; (C) That consequently, both the demand and the above indicated lawsuits are illegal

10



and violate the agreements in effect, that they lack legal effectiveness, because they have not been brought for the consideration of the arbitration jurisdiction instituted by the parties; and (D) That CDEEE must refrain in future from bringing similar actions, under penalty of penalty and being condemned to the payment of damages and harm which the same may cause ITABO."

17. By means of writ dated February 5, 2005, presented to the Board of Conciliation and Arbitration of the Chamber of Commerce and Production of Santo Domingo, Inc., on February 7th, 2005, ITABO abandoned/desisted, with **express reservations of rights and actions**, from the arbitration proceeding brought under the terms of what is consigned in Note 15 above. Through that petition for abandonment/desisting, ITABO made it be noted that same had the following interest:

"**FIRST**: TO ORDER that, pursuant to the present communication for desisting from empowerment of the arbitration petition or process before the CCA/CCPSD made by ITABO, and under express reservations of empowering the International Chamber of Commerce (ICC), there has in effect and in full right been produced the depriving of authority of the CCA/CCPSD and of any panel of arbitrators designated by the latter to hear the arbitration suit brought by ITABO against CDEEE, by means of its indicated petition dated August 18 of the year 2004.

**SECOND**: TO ORDER, administratively, that there be left without effect all decisions adopted by that Honorable Board of Conciliation and Arbitration of the Chamber of Commerce and Production of Santo Domingo, Inc., because of ITABO´s petition that gave rise to the procedures for the hearing of the said arbitration demand.

**THIRD**: TO ORDER, administratively, the return or breakdown of the documents which make up the case file, at the same time taking note of the reservations made by ITABO with reference to the reintroduction of its actions before the International Chamber of Commerce (ICC), in conformance with the arbitration clauses agreed to, which are the law between the parties."

18. On February 9 of the year 2005 (Communication CCA-68/05) the Board of Conciliation and Arbitration of the Chamber of Commerce and Production of Santo Domingo Inc. notified its Resolution accepting the petition and reservations brought by ITABO with respect to the abandonment of the arbitration demand described in Note 15 of the present writ, which reads as follows:

"**FIRST**: To Pronounce and therefore To Order the disempowerment of proceeding No. 040853, Empresa Generadora de Electricidad ITABO, S.A. (EGEITABO) Vs. Corporación Dominicana de Empresas Eléctricas Estatales (CDEEE), by virtue of the abandonment requested by the plaintiffs in the proceeding, Empresa Generadora de Electricidad ITABO, S.A. (EGEITABO)"

11



19. On February 9th of the year 2005, ITABO brought against CDEEE and the Patrimonial Fund of Reformed Enterprises/Patrimonial Development Fund ("FONPER"), before the International Arbitration Court of the International Chamber of Commerce (ICC), the arbitration suit which it had reserved the right to bring, according to the abandonment described in Note No. 16, received by the Secretary of said International Arbitration Court, located at No. 38 Cours Albert 1er., 75008 Paris, France, which it formally acknowledged, and the means of which ITABO claims the following:

"The Plaintiffs demand:

I.- A declaratory and condemnatory arbitration award regarding the following provisions:

1. Declaring that the Basic Contracts (as said term is defined below) between the parties are in effect and have full effectiveness.

2. Declaring that CDEEE and FONPER (hereinafter, jointly **The Defendants**) have incurred in noncompliance of the contractual provisions contained in the Basic Contracts (as said term is defined below), relative to the solution of controversies and non-interference in the performance and administration of ITABO, by initiating and continuing extra-judicial and judicial procedures before the courts of the Dominican Republic in order to claim from ITABO and from its President, Mr. Julián Nebreda, the following:

(i) the rendering of accounts regarding the performance of ITABO and of the President of its Board of Administration,

(ii) the delivery of information of a financial nature related to ITABO´s operation,

(iii) the payment of damages and harm, on the above related to the Project of Rehabilitation of the ITABO Steam I and ITABO Steam II Thermoelectric Units (as said terms are defined below) and

(iv) the immediate delivery of all assets, equipment, and real property owned by ITABO (hereinafter the Assets).

II.- A precautionary order and a definitive order to The Defendants to refrain from initiating and/or continuing any extrajudicial and/or judicial action against ITABO, outside of the mechanism for solution of controversies provided in the Basic Contracts.

III.- The declaration, as a judged matter, in the sense that the persons who are accredited the nature of shareholders of ITABO must comply with the provisions contained in ITABO´s Corporate By-laws and with the contractual provisions



contained in the Basic Contracts to resolve any question related to ITABO's performance and administration, including any question which may arise from the technical/financial audit concerning the Project for Rehabilitation of the ITABO Steam I and ITABO Steam II Thermoelectric Units, and the technical/economic and compliance audit advanced by FONPER.

IV.- Material and moral damages and harm incurred and/or suffered by ITABO as a consequence of the noncompliance of and acts imputed to The Defendants in relation to the provisions for solution of controversies contained in a Basic Contracts, and regarding all those provisions relating to the internal handling of the partnership among the shareholders; between shareholders and the company, or between shareholders and administrators, including reasonable legal expenses, expenses of experts, etc..

V.- The costs and expenses incurred because of the present arbitration, including but not limited to the expenses incurred by ITABO for payment of lawyers' honorariums deriving from the present arbitration proceeding, as well as any other legal proceeding, which may be necessary to obtain the present arbitration.

20. By means of communication dated February 17 of the year 2005, the Secretary of the International Arbitration Court of the International Chamber of Commerce (ICC) notified CDEEE and the Patrimonial Fund of the Reformed Enterprises/Patrimonial Development Fund ("FONPER") of the bringing of said international arbitration process by ITABO, at the same time that it required said co-defendants to designate the corresponding international arbitrator, who in accordance with the applicable regulations will be a member of the arbitration panel, which will hear the case (See Doc. No. 18 of the inventory of parts deposited by ITABO).

21. In said international arbitration suit, action is brought against CDEEE, among other reasons, because it has attempted to abrogate to itself the capacity of legal continuation of the no longer extant Dominican Electrical Corporation (CDE), which participated in the process of capitalization and incorporation of ITABO, as described in Notes 1 to 6 of the present writ, and being the offending party which acts irregularly with regard to the Dominican justice agencies as a alleged related party/member of the ITABO partnership, in detriment of the mandatory arbitration clauses.

22. The Patrimonial Fund of Reformed Enterprises/Patrimonial Development Fund ("FONPER") is a co-defendant party in the said arbitration process opened in the International Arbitration Court of the International Chamber of Commerce (ICC), because the said entity, in accordance with the provisions of said Articles 20 of the General Law on the Reform of State-Owned Enterprises No. 141-97 dated June 24, 1997, and Arts. 1, 2, and following of Law 124-01 dated July 24, the year 2001, is the receiver of the patrimony/net worth of the Patrimonial Fund of Reformed Enterprises ("FONPER"), which is made up of all of the shares owned by the Dominican State in the capitalized enterprises (Art. 1), and is responsible for the preservation and custody of said shares in the capitalized Enterprises, the handling of the State's participation in the

13



reformed Enterprises, and the in inspection of compliance with the commitments and obligations established in the contracts resulting from the process of Reform of said enterprises (Art. 2).

23. FONPER, as has been said, was created by Art. 1 and following of Law No. 124-01 dated July 24, 2001, and the CDEEE by Art. 138 of the General Electricity Law No. 125-01 dated July 25, 2001, with separate objectives and legal identity. One perceives the obvious chronological separation that FONPER was created by a Law, which was prior to the one that created the CDEEE, and that Law No. 124 does not recognize CDEEE's capacity as shareholder of ITABO, nor representative of the State in the capitalized enterprises; neither does Law No. 125-01 attribute those functions to CDEEE.

24. ITABO has appeared as defendant party before the judicial authorities of the Dominican Republic for the sole purpose of enforcing the commitment clause contained in the Basic Contracts and requesting that Dominican courts, which act as irregularly empowered by CDEEE, to remit the parties to arbitration in conformance with the arbitration agreement and article II of the New York Convention, as it announced and stated in its notification referred to in point 15 of the present writ, and as it had warned in the demand which ITABO made to CDEEE and which is described in Note 14 of the present writ of conclusions.

25. CDEEE's conduct constitutes a flagrant noncompliance of the obligation, which is assumed, to resolve all controversies, which might arise between the parties, in the framework of the Basic Contracts, precisely by means of the legal and contractual mechanisms contained in a Basic Contracts and ITABO's By-laws, which means it is appropriate, in conformance with the legal principles and international agreements in effect, that this honorable jurisdiction issue a pronouncement, according to the bases which we present, by declaring its incompetence of power or declining jurisdiction, given the arbitration to the jurisdiction chosen by the parties, as permitted by law.

## II. Examination of the Law

26. From the analysis of the facts of the lawsuit alluded to, one clearly perceives that the claims made to you by CDEEE consist technically of differences and/or disputes which, even given the fact that CDEEE has not clearly defined its capacity, should be understood to be disagreements between shareholders, or between shareholders and the partnership itself, or within the Board of Administration, related to the interpretation and application of ITABO's Corporate By-Laws.

27. In that sense it is unavoidably necessary to cite the fact that ITABO's Corporate By-laws contain an arbitration clause which, as we have already said, is common to the Basic Contracts, fully valid and binding on the parties, to submit any disagreement which may arise between them, according to the text of the following article:

14



"Art. 58.   In the event that in the deliberations of the Ordinary or Extraordinary General Meeting, a tie should occur which cannot be resolved by mutual agreement, the shareholders shall be obligated to resort to arbitration performed in accordance with what is subsequently provided in this present article. It shall be equally binding to resort to arbitration whenever, upon the occasion of differences or disputes between the shareholders or between one or more shareholders and the partnership, or within the Order Administration related to the interpretation and application of the present bylaws, it is impossible to resolve them by common agreement between them..."

28.  The last paragraph of article 58 refers textually and mandatorily that:

"... If the Dominican Republic should ratify the New York Convention about the acknowledgment and enforcement of foreign arbitration rulings adopted by the United Nations Conference on International Commercial Arbitration, dated June 10, 1950, and/or the Panamá Convention on Commercial Arbitration, the parties accept to resolve their disputes by means of international arbitration, in conformance with the Arbitration Rules on the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988, and the laws of New York.   No arbitrator designated according to the present article shall be a citizen of any of the jurisdictions of the parties or of the jurisdiction of any of the initial shareholders, nor may said arbitrator be an employee or agent or former employee or former agent of any of the parties."

29.   CDEEE, departing from its contractual obligation to submit its disputes, and disagreements to arbitration before the International Chamber of Commerce ("ICC") under the procedural rules of that Arbitration Court and making application of the laws of the State of New York, United States of America, initiated a judicial action against ITABO, deriving from its **alleged** partnership relationship within the company.

30.  The Dominican Republic signed, without any reservation whatsoever, both the New York Convention and the Panamá Convention; nevertheless, the Panamá Convention has not been ratified to date.   In this case, the Dominican Republic signed the New York Convention on June 10, 1958, adhered to same on April 11, 2010, and the Convention took effect as of July 10, the year 2002.

31.   ITABO appears before this honorable First Hall of the Civil and Commercial Chamber of the Appeals Court of Santo Domingo so that immediately and without any additional procedures, based on the provisions of articles I and II, 3 of the Convention of Acknowledgment and Execution of Foreign Arbitration Rulings signed in the city of New

15



York on January 10, 1958, it remit the parties involved in the litigation, which is the subject of the present writ of defense, to arbitration, under the terms contained in the last paragraph of Article 58 of ITABO´s Corporate By-laws and articles 12.3 of the Contract for Subscription of Shares dated August 13, 1999, art. 9 of the Contract for Granting of Rights for Exploitation of Electrical Works relating to the Service of Electrical Generation in the Dominican Republic, dated December 8, 1999, art. 7.1 of the Agreement for Transfer of Energy Sale Contract dated September 8, 1999, and art. 6 of the Administration Contracts; all named jointly as Basic Contracts of the capitalization.

32. Art. 2 of the New York Convention on Acknowledgment and Execution of Foreign Arbitration Rulings Establishes the Following:

> "Art. II
> 1. Each one of the Contracting States shall acknowledge the agreement in writing according to which the parties promised to submit themselves to arbitration for all differences or for particular differences which may have arisen or may arise among them regarding a particular legal, contractual, or non-contractual relationship, concerning a matter which can be resolved by arbitration.
> 2. The court of one of the Contracting States to which litigation is submitted regarding which the parties have concluded an agreement in a sense of the present article, shall remit the parties to arbitration, at the request of one of them, unless it determines that said an agreement is null and void, ineffective, or inapplicable."

33 The Basic Contracts for capitalization and ITABO´s Corporate By-laws are valid and binding instruments, about which nothing has been decreed or attempted in order to request their voiding, ineffectiveness, or inapplicability.

34. It is necessary to inform this Honorable Court that the New York Convention, as it is known in the international world, is duly upheld by the Constitution of the Dominican Republic on July 25, 2002, according to articles 3, 37, and 55 of the Constitution, as said precepts establish that the Dominican Republic **acknowledges and applies the norms of general and American and international law in so far as its public powers have adopted them."**

35. Said Convention on the Acknowledgment and Execution of Foreign Arbitration Rulings, which is now in effect the Dominican Republic, is a legal statute, which can be imposed on the parties intervening in the capitalization process of the former Dominican Electrical Corporation ("CDE"), or on any successor with an interest in said process, whether it is the CDEEE in its alleged capacity or FONPER as the true continuation of the rights of the CDE.

16



36. In that regard, the now plaintiffs in the action before us, should have respected the fact that in accordance with art. 1134 of the Civil Code, whatever was agreed by it had the force of law ("*Pacta sunt servanda*"), and that the arbitration agreement contained in the said clauses of the Basic Contracts constitutes stipulations which are perfectly valid in the light of the provisions of art. 631 of the Commercial Code, which admits arbitration as a channel of solution for controversies in substitution of the competence of the courts of justice, and to which the parties may appeal as an alternative in order to submit to arbitrators the disputes which may arise between them, whether as merchants, associates, because of commercial partnership, or disputes relating to act of commerce between any persons.

37. Through the Basic Capitalization Contracts, the CDE stipulated (which is applicable to any of its successors) that it was acting as a business partnership, without any immunity or privilege of jurisdiction, this being a basic condition to promoting the interests of the foreign investors who participated in said process.

38. The request that this Honorable ordinary jurisdiction continue to assume competency to hear the present judicial action would dishonor the government of the Dominican Republic, by violating, in front of the international community, the agreements that it has signed in order to make them part of its private international law, independently of the fact that it would violate the elementary principles of international public law, because there is no doubt that an act of the national judicial authority will have an impact on the international image of the Dominican Republic, by pointing out that its judicial authorities would be ignoring international agreements signed by the Republic, causing uncertainty and lack of legal security for both co-national and foreign investors

38. *(sic)* By virtue of the above, one does not incurr in an excess when one requests this Honorable Court proceed to guarantee the rights consecrated by the Dominican Constitution foreseen in article 8, clause j), which establishes the guarantee of due process of law for citizens of the Dominican Republic and those who are under the protection of this Constitution while in national territory.

39. In addition, there is no room for doubt or argument that "CDE" or any of its successors is obligated to resolve conflicts regarding ITABO, in the Arbitration Courts which the International Chamber of Commerce may create at the request of either of the parties involved in the conflict, which is applicable based on the principles and conventions already indicated.

40. ITABO invokes the abovegoing considerations and developments as bases on which to support the incompetence of power of this Honorable Appeals Courts, because it has been empowered by CDEEE in violation of the arbitration clauses contained in the basic contract, which establish the express competency of the International Arbitration Court of the ICC.



41. Art. 3 of Law No. 834 dated July 15, 1978, establishes the rights of any defendant to object to the empowerment of a court when in accordance with the applicable rules, it is not the competent one to hear the case, either because of the subject matter or because of the territory. The said text transcribed reads as follows:

> "Art. 3.- If it is alleged that the empowered jurisdiction is incompetent, the party that promotes the said exception/objection must, under penalty of inadmissibility, state the reason for its basis, and must make known, in all cases, which jurisdiction it demands that the case be brought before."

42. From the technical point of view and the exact legal readings, the territorial and empowerment incompetence in the case in question is a matter of public order, and therefore can be declared automatically by means of a *"declining of competency"* pronounced by the court (Sollus & Perrot, La Compétence, Volume II, Sirey, Paris, Page 675.).

43. Because of the fact that the competency of the said International Arbitration Court and the Panel which it creates to such effect is regulated by an international convention, it is obvious that that jurisdiction, when the parties have signed an arbitration commitment clause, requires substantive hierarchy, which prevails over the ordinary local laws of competence, by virtue of the fact that such jurisdiction, and the decisional procedures implemented, form part of the body of constitutionality proclaimed by art. 3 of the present Constitution of the Republic.

44. Our Supreme Court of Justice, providing the guarantees owed to any accused person, in any matter and before any judicial jurisdiction, has proclaimed the permanent duty of judges to acknowledge those principles of constitutionality of due process, which are established in its Resolution No. 1920 dated November 19th of the year 2003, applicable in its entirety in the case in question.

45. Going into greater detail, we refer you to the criteria existing within the Dominican Judicial System, where competence has been granted to the ICC in cases which are similar to the one proposed here.

46. In this regard, we should state that even the arbitration jurisdiction of the Council of Conciliation and Arbitration of the Chamber of Commerce and Production of Santo Domingo, Inc., has set the criteria, in a case which arose between Empresa Generadora de Electricidad Haina (EGEHAINA) as plaintiff against Empersa Distribuidora de Electricidad del Sur (EDESUR) for the collection of invoices originating from the sale of energy with the framework of the basic contracts of capitalization, by means of an arbitration award dated December 9th of the year 2003, declaring its incompetence and acknowledging the competency of the ICC as follows: "IT RESOLVES: FIRST: TO ACCEPT the conclusions of motions presented by EMPRESA DISTRIBUIDORA DE



ELECTRICIDAD DEL NORTE, S.A. (EDENORTE), *declaring as in effect it declares . the incompetence of the Arbitration Court, (sic) because it is an International Arbitration court, to be created in conformance with the rules of the International Chamber of Commerce (ICC Rules of Conciliation) of the first (1ˢᵗ) day of the month of August of the year 1998, the competent jurisdiction to pronounce a ruling regarding same, pursuant to the provisions of the last Paragraph of ordinal 9.3 . of Article IX of the Energy Sale Contract, dated August thirteenth (13ᵗʰ) of the year 1999, and its subsequent amendments. "*

47. For all of those reasons, and those which will be provided by your high sense of Justice, the deponent is pleased to conclude by respectfully requesting of you the following:

## CONCLUSIONS

**FIRST:-** TO DETERMINE and TO DECLARE by the decision to be pronounced: ( **a** ) that the CDEEE by attempting to derive a partnership relationship with ITABO, has brought a lawsuit for rendering of accounts and other purposes in question before this honorable court, as ordinary jurisdiction; ( **b** ) that the former Dominican Electrical Corporation (CDE) as participant in the capitalization process, which gave rise to the birth of ITABO as a business partnership, throughout the capitalization process, and in articles 58 of ITABO´s Corporate By-laws, art. 12.3 of the Contract for Signing of Shares dated August 13, 1999, art. 9 of the Contract for Granting of Rights for the Exploitation of Electrical Works relating to the Service of Generation of Electricity in the Dominican Republic, dated December 8, 1999, art. 7.1 of the Agreement of Transfer of Energy Sale Contract dated September 8, 1999, and art. 6 of the Administration Contract, stipulated the binding clauses on arbitration, to resolve conflicts between shareholders, or between shareholders and the company itself or within the Board of Administration related to the interpretation and application of ITABO´s Corporate By-laws; ( **c** ) that said, arbitration clauses attributed express competency to the International Arbitration Court of the International Chamber of Commerce, with seat in Paris, if after signing the Basic Contracts of Capitalization, the Dominican Republic ratified the Convention on Acknowledgment and Execution of Foreign Arbitration Rulings signed in the city of New York on January 10, 1958, which, as indicated, we joined same on April 11, 2002, and it took effect as of July 10, of the year 2002; ( **d** ) that art. 2 of the New York Convention establishes that: "*1. Each one of the Contracting States shall recognize the agreements in writing in accordance to which the parties promised to submit themselves to arbitration for all differences or particular differences that have arisen or may arise between or among them regarding a particular, contractual, or non-contractual relationship concerning a matter that can be resolved by arbitration.*"; "*2... *"; "*3. The court of one of the Contracting States to which a litigation is submitted regarding which the parties have concluded an agreement in the sense of the present article, shall remit the parties to arbitration, at the request of one of them, unless. it determines that said agreement is*

19



*void, ineffective, or inapplicable";* ( **e** ) that the Basic Contracts for capitalization, and the ITABO Corporate By-laws which contained the arbitration clauses are valid and binding instruments, which have not been voided or annulled, nor have they been declared ineffective or inapplicable, and even further, that they continue to govern in accordance with arts. 1134 of the Civil Code and 631 of the Commercial Code; ( **f** ) that the arbitration jurisdiction instituted by the New York Convention is based on an international agreement, which has the category of substantive provision, in accordance with art. 3 of the Constitution of the Republic, with hierarchy over local laws of attribution of competence, because the parties in such contracts and statutes had submitted themselves to the jurisdiction of said international arbitration court, which makes the exception to decline in order.

**SECOND:-** TO DECLARE, consequently, the incompetence of power of this honorable jurisdiction Hall of the Appeals Court of Santo Domingo, in terms of the subject matter (*ratione materiae*), to hear and rule on the demand for a rendering of accounts and other purposes, before us, which according to the arbitration clauses contained in the Basic Capitalization Contracts, should be heard by the International Arbitration Court of the International Chamber of Commerce of Paris, and which we request of you, based on the provisions of Art. 3 of Law No.  834 dated July 15, 1978; all, with all of their consequences of law/right.

**THIRD:-** TO DECLARE, because of that fact, the disempowerment of this honorable jurisdiction in judicial matters, and by the same ruling that you order to decline to hear the present matter, so that the parties resolve their disputes, objection, or claim before the arbitration court which will be created in conformance with the Regulations of the said International Arbitration Court of the International Chamber of Commerce, with seat in the city of Paris (No. 38 Cours Albert 1er., 75008 Paris, France) as competent jurisdiction and before which the parties agreed to submit their disagreements and litigations.

**FOURTH:-** TO STATE ON RECORD to the concluding party that the exception of incompetence presented is made under express and special reservations of making, if necessary, any other petition in an attempt to guarantee the competency of the arbitration jurisdiction chosen by the agreements in question, which will guarantee the solution of the dispute within the framework of its stipulations.

**FIFTH:** TO STATE ON THE RECORD to the concluding party that it has conferred mandate to the leaders Carlos Radhamés Cornielle M., Lic. Giselle Leger, solely and exclusively to propose the abovegoing exception of incompetence without being able to articulate any other kind of conclusions, because that would imply the abandonment of the submission to the forum chosen by the parties for the resolution of their differences;

**SIXTH:** TO COMPENSATE the costs, in the event there is no opposition by the counterparts, imposing them obligatorily otherwise.

20



**SEVENTH:**- TO ORDER, in order to avoid the damage and danger that may be caused by delay, the decision *"sur le champ"*, with regard to the exception of incompetence presented, before ruling on any other aspects informed or merits of the present suit.

We request and hope to deserve from you justice, in the city of Santo Domingo, National District, this thirtieth (30th) day of the month of March of the year 2005 (two thousand five).

Respectfully,


Lic. Giselle Leger                    Lic. Carlos Radhamés Cornielle



MFCS / June.05 / Itabo.Itabo05-004b.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this thirteenth (13th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293

21



Translated by Mark Freehill
# MARK FREEHILL COMMUNICATION SERVICES
US Certified Federal Court Interpreter No. 20293

Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo*, in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

[Coat-of-arms of the Dominican Republic

DOMINICAN REPUBLIC
# SUPREME COURT OF JUSTICE

Sole File 003-2005-00678
File No. 2005-1-1460

-----WE, DR. JORGE A. SUBERO ISA, President of the Supreme Court of Justice, assisted by the Secretary General, --------------------------------------------------------------------------
-----Having seen the cassation memorial filed in the Secretariat General, on today's date, signed by Carlos Radhames Cornielle M., Esq. and Giselle Leger, Esq., who act in the name and representation of the *Empresa Gneradora de Electricicidad ITABO, S.A.* (ITABO) whereby they file this cassation appeal against the sentence handed down by the Second Hall of the Commercial and Civil Chamber of the Court of Appeal of the National District, dated 12 may 2005; --------------------------------------------------------------------------------------
-----Having seen article 6 of the Law on Cassation Procedure; --------------------------------
-----Having responded, as soon as it was filed in the Supreme Court of Justice a cassation memorial which is provided with a writ whereby the corresponding summons is ordered; ----
-----WE AUTHORIZE, the appellant, *Empresa Gneradora de Electricicidad ITABO, S.A.* (ITABO) to summon the appealed party *Corporación Dominicana de Empresas Eléctricas Estatales* (CDEEE), against whom the appeal is directed. -------------------------------------------------------
-----Given in Santo Domingo, National District, this 25th day of May of 2005, 162nd year of independence and 142nd of the Restoration (Sgnd). Jorge A. Subero Isa, Grimilda Acosta de Subero.-This copy is issued in Santo Domingo, National District, this 25th day of May 2005, at the request of the interested party,

Fiscal Duties:

43 pages ------------RD$10.75
Search-----------         1.00
Certification----        1.00
TOTAL------------      12.75

[Signed and Stamped]
Secretary General



[Coat-of-arms of the Dominican Republic                              1

## Dominican Republic
## JUDICIAL BRANCH

I, JOHANNA VIRGINIA PÉREZ V., Secretary of the Second Hall of the Commercial and Civil Chamber of the Court of Appeal of the national District, CERTIFY: that in the files under my charge there is a civil file marked as No. 025-2005-00146, which contains minutes of a hearing in the following tone:

At three past ten in the morning (10:03 a.m.) on the twenty-seventh (27th) day of the month of May of the year two thousand and five (2005), THE SECOND HALL OF THE COMMERCIAL AND CIVIL CHAMBER OF THE COURT OF APPEAL OF THE NATIONAL DISTRICT, in the functions of a Court at the second level, composed of the Honorable judges HERMOGENES ACOSTA DE LOS SANTOS, President, SAMUEL ARIAS ARZENO AND ROBERT PLACENCIA ALVAREZ, Member Judges, assisted by the *ad-hoc* secretary and the bailiff of the bench on duty, was constituted in public hearing to consider an appeal action filed by *CORPORACIÓN DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)*;

The Honorable Presiding Judge, HERMOGENES ACOSTA DE LOS SANTOS declared the hearing to be initiated and the official on duty read the roll of the corresponding hearing;

HAVING HEARD: DR. ANGEL MORENO CORDERO in representation of the appellant party, conclude *in voce* in the following manner: First: To declare the appeal action to be good and valid insofar as the form; Second: Insofar as the merits, to revoke the appealed sentence; Third: To order the company ITABO to render an accounting to CDEEE; Fourth: Term of 10 days in order for ITABO to render an accounting; Fifth: To hand down as a compulsory measure the provisions of article 34; Seventh: To sentence the appealed party to the costs; Eighth: Term of 15 days to file motivation and justification of conclusions (sic)[*]:

---

[*] The notation "sic" is in the original Spanish - Translator

1  (MP)

[Coat-of-arms of the Dominican Republic                                         2

## Dominican Republic
# JUDICIAL BRANCH

HAVING HEARD: CARLOS CORNIELLE, Esq., in representation of the appealed party conclude *in voce* in the following manner: We ask for a dismissal of the appeal action, by reason of the fact that the sentence handed down by this Court on the 12th of the month and year underway, by reason that same was subject to a cassation appeal and a suit in suspension, this being given by virtue of that established in article 12 of Law No.3726, dated 1953 (sic)*;

HAVING HEARD AGAIN: DR. ANGEL MONERO CORDERO in representation of appellant party, conclude *in voce* in the following manner: reject the request for dismissal since this is a petition lacking legal basis; we ratify the conclusions, given the incident of incompetence in the sense that it be rejected for being out of order, unfounded and lacking in legal basis; we ask that the appealed party be placed in arrears so that it conclude with respect to the merits, and otherwise that you pronounce in default against it due to its failure to conclude. (sic)*.;

HAVING HEARD THE COURT: the court orders a recess for the purpose of deciding on the request for dismissal made by the appealed party and to which the appellant party opposes; The Court re-initiates the hearing and orders the secretary to read from the sentence regarding the dismissal, the content of which is the following:  CONSIDERING: that in the hearing held on the date 12/5/05, the appellant party presented conclusions on the merits of the appeal, while the appealed party presented the exception of incompetence; CONSIDERING: that in the hearing of reference the appellant party requested, by virtue of that established by article 4 of Law 834 of 15 July of the year 1978, the accumulation of the exception of incompetence with the merits of the appeal;  CONSIDERING: that the Court received the petition and consequently accumulated the exception of incompetence with the merits of the appeal;  CONSIDERING: that in application of that provided for by the cited article 4 of the Law 834 also cited, the Court set the hearing for today's date, for the purposes of the parties presenting conclusions on the merits of the appeal; CONSIDERING: that in the hearing of today, the appealed party has requested a dismissal, to which the appellant has opposed;  CONSIDERING: that the request for dismissal is



2

[Coat-of-arms of the Dominican Republic                                              3

## Dominican Republic
# JUDICIAL BRANCH

based on the filing of a new cassation appeal against the sentence of reference on the date 12/05/05, as ell as in the corresponding suit in suspension; CONSIDERING: that by virtue of article 12 of the Law on cassation procedure No.3726, the suit in suspension of the sentence appealed in cassation produces the immediate suspension; CONSIDERING: that, however, given that the sentence handed down by this Court is limited to ordering a measure of instruction of justice, article 12 of the cited law on procedure does not apply, since material harm cannot be derived from the execution referred to in the sentence; CONSIDERING: that the cited article 12 pursues avoiding the damages which the execution of an adverse sentence can cause to one of the parties, which situation is not the one at hand; For such motives and by virtue of that provided for by article 4 of law 834, of 15 July 1978 and article 12 of law 3726, on cassation procedure, The Court; Rules: First: It reject the request for dismissal made by the appealed party; Second: It places the appealed party in arrears so that it concludes on the merits, in compliance of the decision handed down on 12/5/05; (sic)*.;

HAVING HEARD AGAIN: CARLOS CORNIELLE, Esq. in representation of the appealed party conclude *in voce* in the following manner: we ask again for dismissal of this appeal action, based on the existence of an empowerment of the same, suit, before the court of the city of new york (sic)*;

HAVING HEARD AGAIN: DR. ANGEL MONERO CORDERO: in representation of the appellant party, conclude *in voce* in the following manner: we vigorously oppose the new consideration that has been requested, as out of order, lacking a legal basis and out of order by any measure, because upon rejecting it, we asked the honorable court to pronounce in default against the appealed party due to failure to conclude; we ratify the conclusions read, as well as the conclusions of the accumulation; we ask that act No. 147/2005, containing the notification of the empowerment of the court of Nwe *(sic)* York be discarded in the debates, by virtue of that established by article 52 of law 834 of 15 July 1978, , for attempting for it to be filed after having presented conclusions on the merits; term of 15 days to expand conclusions and reply writ(sic)*;

3

[Coat-of-arms of the Dominican Republic    4

## Dominican Republic
# JUDICIAL BRANCH

HAVING HEARD THE COURT:  The petition of the appellant party regarding to the discarding of act No. 147/2005 of 27 May 2005 from the debates by reason that notice of same was served to it and further produced conclusions to said act;  The petition of consideration is rejected by reason that the fact that a foreign court is empowered of the same matter is not sufficient cause for a Dominican court to consider, especially in the matter at hand in which the Dominican court was empowered beforehand and further the competence of the foreign court of reference is precisely that which is being discussed before that court.  The appealed part is placed once again in arrears for the purposes of presenting conclusions on the merits (sic)*;

HAVING HEARD AGAIN: CARLOS CORNIELLE, Esq. in representation of the appealed party conclude *in-voce* in the following manner:  to draw up an act that the *ad-litem* power of attorney only authorized me to present conclusions on incompetence, which prevents me from concluding with respect to the merits(sic)*;

## THE COURT ORDERS

Default is pronounced due to failure by the appealed party to conclude, by reason that its empowered attorney of record, still present in this hearing and even with the Court's having placed them in arrears on several occasions, has expressly refused to present conclusions, supporting himself by a cause which this court regards as unjustified; said cause consists of the absence of a power of attorney to conclude on the merits;  As for accepting as valid the cause of reference, this would make the administration of justice dependent on one of the parties interested in the process being *[sic]*, which would be nefarious and harmful; They are granted a term of 15 days for a justified brief of conclusions, once that is expired, the appealed party is granted an equal term for the same purposes, likewise the appellant party is granted a term of 15 days for a writ of reply, finally an equal term to the

4 

[Coat-of-arms of the Dominican Republic                                    5

## Dominican Republic
# JUDICIAL BRANCH

appealed party for a counter-reply writ; Ruling reserved on the exception of competence and merits(sic)*;

This certification is issued, signed and stamped, at the request of CARLOS RADHAMÉS CORNIELLE M., in Santo Domingo, National District, capital of the Dominican Republic, this second (02nd) day of the month of June of the year two thousand and five (2005);

[signed and stamped]
JOHANNA VIRGINIA PÉREZ
SECRETARY

[signed and stamped]
SAHIRA MANZANO
*ad-hoc* Secretary

[Tax Stamp Annotations]
[All pages stamped]

MFCS / June.05 / ITABO.Sentencia 003-2005-00678.Suprema Corte de Justicia.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this eighth (8th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293

5



Translated by Mark Freehill

MARK FREEHILL COMMUNICATION SERVICES

US Certified Federal Court Interpreter No. 20293

Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC

International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA

RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (Cédula) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at Calle 5, No. 12, Residencial Santo Domingo, in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

**ACT NO.** _422/2004_.- In the City of Santo Domingo, National District, Capital of the Dominican Republic, on the _twenty-first_ (_21st_) day of the month of JULY of the year TWO THOUSAND AND FOUR (2004).

**ACTING** at the request of _CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES_ (CDEEE), an autonomous public utility, organized and existing pursuant to the General Law of Electricity No.125-01, of 26 July 2001, judicial successor of _CORPORACIÓN DOMINICANA DE ELECTRICIDAD_ (CDE), with its principal headquarters and domicile in the intersection formed by Av. Independencia and Fray Cipriano de Urtera Street of the _Centro de los Héroes de Constanza, Maimón y Estero Hondo (La Feria)_, of the city of Santo Domingo, duly represented by its Executive VicePresident, **ENGINEER CÉSAR SÁNCHEZ TORRRES**, a Dominican citizen, of legal age, married, bearer of the Electoral and Identification card _(cédula)_ No.001-011432102, domiciled and resident in this city, who has especially empowered and constituted attorney of record **DR. CARLOS MANUEL PADILLA CRUZ**, a Dominican citizen, of legal age, married, Attorney of the Courts of the Republic, registered in the Bar Association _(Colego de Abogados)_ of the Republic with the No.8560-90-90, provided with the Electoral and



Identification card No.001-0162071-4, domiciled and resident in the city, with professional city opened at **Business and Judicial Consultants Firm** *(Bufete de Consultores Jurídicos y Empresariales)*, **DR. CARLOS PADILLA & ASOCS.** At which place the party serving notice makes formal choice of domicile for all the legal consequences and purposes of this act.-

I, **CLARA MORCELLO**, Bailiff of the Bench of the Labor Court of the National District, First Hall, Dominican citizen, of legal age, single, provided with the electoral and identification card *(cédula)* No.001-0008537-2, with dwelling at No.11 Monte Cristo Street, San Carlos, of this city, duly named, received and sworn for the regular exercise of the acts of my own ministry.-

**E X P R E S S L Y,** and by virtue of the above request, I have presented myself within the boundaries of this same city; **FIRST:** At No. *1108* Rómulo Betancourt Avenue, *Urbanización La Julia*, which is where **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.** **I HAVE NOTIFIED EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.** has its corporate domicile opened, and once there, speaking personally with _____. who said they were the _____ of the party served notice with capacity from receiving acts of this nature, as they declare and to which I bear witness; **SECOND:** To *1108* *Urebanización La Julia*, which is where Mr. **JULIAN NEBREDA** has his professional domicile, in his capacity as President of **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE ITABO)**, and once there, speaking personally with *Brenda Rivas*, who told me she was *Employee*, of the party served notice, with capacity to

2



receive acts of this nature, as she declares and to which I bear witness, I **HAVE NOTIFIED** *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.,* which the party serving notice, *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES (CDEEE)*, by way of this act **CITES AND SUMMONS** it to appear as may be required by law <u>before the Fifth Hall of the Commercial and Civil Chamber of the Court of the First Instance of the National District, in its commercial attributions</u> , which holds its public hearings in one of the Halls of the Second Floor of the Building which houses the Palace of Justice of the *Centro de los Héroes de Constanza, Maimón y Estero Hondo (La Feria),* located on the block formed by *Hipólito Herrera Billini, Juan de Dios Ventura Simó; Juan B. Mejía and Horacion Vicioso Soto* Streets, of this city of Santo Domingo, National District, the hearing set for **WEDNESDAY** which we calculate is the **EIGHTEENTH (18th)** day of the month of **AUGUST** of the year **TWO THOUSAND AND FOUR (2004)**, at Nine o'clock in the morning (9:00 a.m.), for the following means and purposes:--

**HAVING NOTED:** That on the date 24 June of the year 2007, the General Law on the Reform of Public Enterprises No.141-97 was promulgated, which established the re-structuring of *CORPORACIÓN DOMINICANA DE ELECTRICIDAD* **(CDE)**, via the creation of new commercial companies, for the handling and operation of the business units in which *CORPORACÓN DOMINICANA* **(CDE)**, with said Law providing that the indicated process would be carried out by the Commission called the **Commission of Reform of Public Enterprises** *(Comisión de Reforma de la Empresa Pública –* **CREP)**.

3



**HAVING NOTED:**   That the **Commission of Reform of Public Enterprises** *(Comisión de Reforma de la Empresa Pública* – CREP), backed on the indicated law called for the Public bidding, to select the strategic partners who would capitalize the new companies that would be created to the effect, for the exploitation of the electricity generation business.

**HAVING NOTED:**   That as the result of this public bidding, several companies were chosen, for the exploitation of the electricity generation business, among them being *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* (EGE ITABO).

**HAVING NOTED:**  That despite the promulgation of the Law on the Reform of Public Enterprises No.1241-97, dated 24 June of the year 1997, it did not overturn Law 4115 dated 21 April of the year 1955, which is the organic law of *CORPORACIÓN DOMINICANA DE ELECTRICIDAD* (CDE), whereby the Corporation conserves all its faculties and attributions, by virtue whereby it proceeded to sign on the date 8 September of the year 1999 with the *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* (EGE ITABO), the **CONTRACT FOR THE GRANTING OF RIGHTS FOR THE EXPLOITATION OF ELECTRIC WORKS RELATED TO ELECTRIC GENERATION SERVICE IN THE DOMINICAN REPUBLIC.**

4



**HAVING NOTED:** That the object of said contract is the delegation for an indefinite time by the ***CORPORACIÓN DOMINICANA DE ELECTRICIDAD (CDE)***, to the benefit of ***EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE ITABO)***, of the right to construct, operate and exploit - on its own account and for its own benefit and at its sole risk – electric works related to the Generation of electricity, receiving the revenues generated by its activities, under the conditions which are described in the cited contract.

**HAVING NOTED:** That the **CONTRACT FOR THE GRANTING OF RIGHTS FOR THE EXPLOITATION OF ELECTRIC WORKS RELATED TO ELECTRIC GENERATION SERVICE IN THE DOMINICAN REPUBLIC** established rights and obligations for **EGE-ITABO.**

**HAVING NOTED:** That article 5, letter I, of the cited Contract for the Granting of Rights of Exploitation of Electric Works, establishes" **"The duty of the Generator: I) To increase the capacity of effective generation for its generation facilities, whether via the rehabilitation or conversion of the existing units or by the addition of new units with a minimum of 100 megawatts (MW) during the first year of operation."**



**HAVING NOTED:**  That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE ITABO),** violated Article 5, Letter I, upon no carrying out the procedure established in Attachment III of the Contract FOR the Granting of Rights dated 19 August 1999, to carry out the proofs of an increase of generation capacity in 100mw according to that established in article 5, letter (I), of the referred contract;

**HAVING NOTED:**  That **EGE-ITABO,** also violated article 5, in its letter a, of the mentioned contract for the granting of the right of exploitation of electric works, which establishes that "it is an obligation of **EGE ITABO** to carry out activities with subordination of the judicial framework established and to adhere to the norms handed down by the Superintendency of Electricity to decide the works that may be necessary for the service subject to this contract,"

**HAVING NOTED:** That **EGE ITABO** violated that provided for in articles 45 and 51 of the Regulation of the General Law of Electricity, which establishes that: "All electric companies installed in the Dominican Republic which carries *(sic)* out electricity generation, transmission and distribution operations, to contribute to the Superintendency of Electricity *(Superintendencia de Electrricidad* – SIE) and the National Commission of Energy *(Comisión Nacional de Energía* – CNE) up to one (1%) of the total monthly Sales," dividing said contribution during the first four (4) years by twenty-five (25%) for the National Commission of Energy and Seventy-Five Percent (75%) for the Superintendency of Electricity.



**HAVING NOTED:** That the Regulation that was promulgated on 19 July of the year 2002, which establishes in its article 49 that the contributions that have been made by electric companies to the CNE as well as to the SIE, motivated by the monthly billings effected by these latter since the date of publication of the law until the publication of the regulation, will be deemed as an advance, for the months between the second (2nd) day of the month of August of 2001, until the date of promulgation of the regulation, must be paid no later than 19 July 2002.

**HAVING NOTED:** That in order for the harm to exist, it must be constituted of two elements which are: the loss suffered and the earning that was not received, as has happened in the case at hand.

**HAVING NOTED:** That the harm conditioning liability must be certain and provable, as happened in the case at hand, where the harm is founded on precise facts such as all the obligations committed by *EGE ITABO* in the Contract for the Exploitation of Electric Works signed with the CDE as well as the violation of the norms from the bylaws of the Corporation.

**HAVING NOTED:** That the General Law of the Reform of the Public Enterprises No.141-97 dated 24 June of the year 1997, in its article 14, establishes that the parties sign an administration contract which grants the private sector the administration of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE ITABO)*.

7



HAVING NOTED: That on the date the 8th of the month of September of the year 1999, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE ITABO)* and NEW CARIBBEAN INVESTMENT, S.A. signed an Administration Contract with respect to *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* (EGE ITABO).-

HAVING NOTED: That the indicated contract has the purpose of granting the administration of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* (EGE ITABO), to the Strategic Investor shareholder directly, or via a Corporation it constitutes.

HAVING NOTED: That Article 3 of the cited Administration Contract: 3.1 Board of Directors: The business and matters of the Generator will be carried out and administered due to the Shareholders, under the direction of its Board of Directors, as it may be authorized and subject to the limitations established in the Bylaws and in the Laws of the Dominican Republic.

HAVING NOTED: That Pursuant to the provisions of Article 3.6 of the Administration Contract "The subscriber Corporation agrees to encourage the members designated by the Board of Directors to carry out their functions in such a manner that the business of the Generator be carried out at all times as an independent company with profit motive. With the exception of that established otherwise in this Contract, and with the exception of that approved otherwise by the CDE and the subscriber Corporation prior to such transaction, all the commercial transactions of the Generator and the Subscriber Corporation and the CDE or any of its Linked Parties (or its officials or employees) will be conducted under the treatment of equality which would be accorded to related third parties."



**HAVING NOTED:** That the persons who have held the position of Administrator General Manager have violated procedures established in the Administration Contract 3.6 *Empresa Comercial" (sic)* of payments to linked companies which did not have the unanimous approval of the board of Directors, which constitutes non-compliance with this article of the Administration Contract.

**HAVING NOTED:** That pursuant to Article 31 of the Code of Commerce: "Share companies are administered by one or several temporary mandated parties, salaried or not, who may or may  not be shareholders.  These mandated parties can delegate all or part of their attributions if the Bylaws allow it, but are liable with respect to the company for the acts of the persons whom they delegate."-

**HAVING NOTED:** That Pursuant to Articles 1991 and 1992 of the Civil Code pursues *(sic)* the mandated parties are not liable for the damage and losses that may result not just from their failure in execution, but rather for fraud or the infractions they commit in their actions."

**HAVING NOTED:** That the administrators are also liable for civil crimes and quasi-crimes *(cuasidelitos)*, such as would be the case of the simulation of reports, or negligence in compliance with some contractual obligation.



**HAVING NOTED:** That Article 3.7 of the administration Contract cited above, establishes that the signatory Corporation **NEW CARIBBEAN INVESTMENT, S.A.** would receive from *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE ITABO)**, a cannon for Technical Assistance and/or Technology Transfer (Management fee), which could never be more than 2.75% of the net annual sales.

**HAVING NOTED:** That the Administration Canon was paid by *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE ITABO)**, in foreign currency, without this having been foreseen in the administration contract, which generated economic losses for said company, due to the exchange difference, for the amount of **SEVEN MILLION EIGHT HUNDRED THOSUAND SIXTEEN THOUSAND GOLD PESOS (RD$7,816,000.00)**, for the period from September of the year 1999 to December of the year 2002.

**HAVING NOTED:** That that loss translates to the final results of the fiscal period, which affected the class A shareholder, at the time of the distribution of the profits of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE ITABO)**.

**HAVING NOTED:** That pursuant to the provisions of Article 38 of the Corporate Bylaws of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE ITABO), CASES IN WHICH A SPECIAL MAJORITY IS REQUIRED.** *(sic)* The following resolutions of the Board of Directors had to have been agreed to by unanimity of votes from the members of the Board.

10



**a)**  Entering into contracts or operations which may imply loans, payment obligations or other similar items, on the Company's rights or assets, with companies linked to same or their shareholders.

**b)**  To delegate, at its sole discretion, via the Administration Contract foreseen in article 14 of Law 141-97 or by any other instrument, to one or more persons, the totality or part of the powers bestowed on them or even those the Bylaws attribute to any of their officials.

**c)**  To present to the General Shareholders Meeting a plan for the annual distribution of the profits of the Company, and recommend a general action plan for the future prosperity and solvency of same.

**d)**  To decide on the advisability of handing down a Bidding Regulation and the designation of a Purchasing Committee to regulate the purchase  of assets that exceed an amount established by them.

**e)**  To sell the movable or real properties of the Company, as well s to give them in lease, in the event that the limitations established in article 38 of the Bylaws are applicable.

**f)**  To delegate in other persons their right to attend and vote in the Board of Directors, except insofar as it affects the vote of the member of the Board designated by the Class A shareholders, who cannot delegate their vote when dealing with any of the resolutions foreseen in article 38 of these Bylaws.  The delegation that is carried out must be attested to in the document duly legalized by a notary.

11



g)    To enter into contracts or operations that imply an encumbrance, mortgage or chattel, or anything else that affects the Corporation's rights or assets, when the limitations foreseen in article 38 of the Bylaws apply, with financial institutions duly authorized by the Monetary Board or with acknowledged international financial entities, with a risk classification no less than BBB in the Standard & Poors classification or equivalent qualifications utilized by other qualifying entities of similar characteristics.

h)  To decide on the placement of the initial funds of the company, resulting from the contribution of the Strategic Shareholder-Investor and/or the Subscriber Corporation, in the development of the electric activity to which the company is dedicated pursuant to article 2 of the Bylaws.

HAVING NOTED: That the Board of Directors of **EGE ITABO** executed service contracts, that did not have the unanimous vote of the members of said agency.

HAVING NOTED: That an example of the above is the service contract entered into by **EGE-ITABO**, with the Companies **COASTAL TECHNOLOGY DOMINICANA (CTD, *SERVICIOS DE ASISTENCIA TÉCNICA, S.A.* and COASTAL PETROLEUM DOMINICANA**, as indicated below.

12



**HAVING NOTED:** That in Session No.03-99 dated 5 October of the year 1999, the Board of Directors "approved" without the vote of the representatives of the Class B shareholders, Mr. **Otto González Nicolás**, in its Seventh Resolution, the acquisition by **COASTAL TECHNOLOGY DOMINICANA (CTD)** computer equipment, accounting programs, printers, office furnishings, safety equipment, electric parts, communication equipment, employee uniforms and any other assets which **COASTAL TECHNOLOGY DOMINICANA (CTD)** may have acquired in the name of the company **EGE-ITABO** and consequently to reimburse any expense in which **COASTAL TECHNOLOGY DOMINICANA (CTD)** may have incurred.

**HAVING NOTED:** That said items refer exclusively to purchases and expenses made during the period of the constitution of the company **EGE-ITABO** The total value to pay **COASTAL TECHNOLOGY DOMINICANA (CTD)** for the above stated items will not exceed **TWO HUNDRED THOUSAND DOLLARS OF THE UNITED STATES OF AMERICA (US$250,000.00).-**

**HAVING NOTED:** That notwithstanding the irregular approval of the indicated Resolution, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* paid the amount of **TWO HUNDRED AND FORTY THOUSAND THREE HUNDRED AND TEN DOLLARS AND 90/100 (US$240,310.90)** to the benefit of **COASTAL TECHNOLOGY DOMINICANA** (Company linked to **COASTAL ITABO, LTD**), however according to the minutes, this was approved by unanimous vote, with its not being duly signed by the class B shareholder as indicated above.

13



**HAVING NOTED:** That **COASTAL TECHNOLOGY DOMINICANA, S.A.,** in order to support the payment of that established without the approval of the class B shareholder, Mr. **Otto González Nicolás**, in the board, there are payments made for the item of professional services and office equipment acquired by **NEW CARIBBEAN INVESTMENTS (NCI)** which are not foreseen within the approval of the board whose extract is the following: <u>"To expressly authorize the acquisition from</u> **COASTAL TECHNOLOGY DOMINICANA (CTD)** <u>the computer equipment, accounting programs, printers, office furnishings, safety equipment, electric parts, communication equipment, employee uniforms and any other asset which</u> **COASTAL TECHNOLOGY DOMINICANA (CTD)** <u>may have acquired in the name of ITABO. The approval was only for the disbursements made by</u> **COASTAL TECHNOLOGY DOMINICANA (CTD)** <u>in the name of</u> ***EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A."-***

**HAVING NOTED:** That **NEW CARIBBEAN INVESTMETNS (NCI)** is the company that signed the Administration Contract as the counterpart of **CDE** and therefore has a link to **COASTAL TECHNOLOGY DOMINICANA (CTD).**

**HAVING NOTED:** That on the date 5 October 1999, the General Manager of **EGE-ITABO**, Mr. **Sergio del Campo Fayet**, signed a contract with ***SERVICIOS DE ASISTENCIA TÉCNICA, S.A. (SAT)*** for the services of consulting in Engineering administration and inspections of works related to the rehabilitation project.



HAVING NOTED: That *SERVICIOS DE ASISTENCIA TÉCNICA, S.A. (SAT)* is a company linked to **GENER..** This contract did not have the unanimous approval required by Article 38 of the Corporate Bylaws, whereby this article was violated in its item **a)** of the bylaws of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* (EGE-ITABO).-

**HAVING NOTED:** That in the Board of Directors dated 8 AMarch 2001, the costs accumulated with the company *SERVICIOS DE ASISTENCIA TÉCNICA, S.A. (SAT)* were approved.-

**HAVING NOTED:** That the minutes of the board which approved the payment of the services provided by *SERVICIOS DE ASISTENCIA TÉCNICA, S.A. (SAT)* and **COASTAL MANAGEMENT CORP.** says:

> "To ratify and approve the costs accumulated to 31 January 2001 with the companies SAT and Coastal Management Corp up to an value of US$3,600,000 (being defined) and US$1,800,000 (being defined) respectively, and related to the contribution of technical personnel for the functions of engineering of construction and administration of the Rehabilitation Project, with the payment being approved for the services by contribution of personnel until the 5th day of March of 2001, on which date the contract with SAT has been terminated......"

15



**HAVING NOTED:** That as can be seen the approval was given with the word "being defined" after the amounts of **US$3,600,000.00 and US$1,800,000.00.-**

**HAVING NOTED:** That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE-ITABO)** has not made disbursements approved by the board in the name of **Coastal States Management Corp,** just as approved in the eighth resolution of the minutes of the session dated 8 March 2001, but rather it has been doing so through the company **COASTAL MANAGER LTD,** A *(sic)* **COASTAL POWER DOMINICANA LTD., AND COASTAL TECHNOLOGY DOMINICANA.**

**HAVING NOTED:** That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE-ITABO)** has made payments to **COASTAL STATES MANAGEMENT CORP.** Charged against the approval dated 8 March 2001 of **ONE MILLION EIGHT HUNDRED THOUSAND DOLLARS (US$1,800,000)** for an amount of **THREE MILLION FOUR HUNDRED AND SIXTY-TWO THOSUAND SEVEN HUNDRED AND EIGHTY-TWO DOLLARS AND 76/100 (US$3,462,782.76)**, i.e,. **ONE MILLION TWO HUNDRED AND EIGHTY FOUR THOUSAND SEVEN HUNDRED AND TEN DOLLARS AND 91/100 (US$1,284,710,91)** or 92% above the amount that appears as approved in the minutes, which constitutes another violation of the norms by the bylaws of the company, which has caused great economic losses and damages to the principal class A shareholder, *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTIRCAS ESTATALES* **(CDEEE)** legal successor of **CDE.-**

16



HAVING NOTED: That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* (EGE-ITABO) has made payments to *SERVICIOS DE ASISTENCIA TÉCNICA, S.A.* (SAT) for an amount of **US$4,025,278.58**, i.e., **US$425,278.58** more than that approved by the Board of Directors on the date 8 march 2001, which is equivalent to 12% above the amount that appears as approved in the cited act **(US$3,600,000)**, all this in clear and open violation of the Corporate Bylaws.

HAVING NOTED: That the costs accumulated by *SERVICIOS DE ASISTENCIA TÉCNICA, S.A.* (SAT) as of 31 January 2001 came to the amount of **US$3,438,425.25**, without adding invoice No. 0011 dated 30 march 2001 for an amount of **US$586.853.33**, which contained charges corresponding to the months of December 2000 and January 2001.

HAVING NOTED: That the cited invoice does not clearly specify what the charges are corresponding to the months of December and January.

HAVING NOTED: That the company *SERVICIOS DE ASISTENCIA TÉCNICA, S.A.* (SAT) received totally free of taxes the amount of **THREE MILLION SIXTY-SIX THOUSAND TWO HUNDRED AND THIRTY-ONE DOLLARS AND 62/100 (US$3,066,231.62.)**



HAVING NOTED: That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE-ITABO)** withheld the amount of **NINE HUNDRED AND FORTY-SIX THOUSAND EIGHT HUNDRED AND TWENTY DOLLARS AND 65/100 (US$946,820.65)** which was paid to the General Agency of Internal Taxes *(Dirección General de Impuestos Internos)*, even when the amount of the invoices of *SERVICIOS DE ASISTENCIA TÉCNICA, S.A.* **(SAT)** received by **EGE-ITABO** came to the amount of **FOUR MILLION TWENTY-FIVE THOUSAND TWO HUNDRED AND SEVENTY-EIGHT DOLLARS AND 58/100 (US$4,025,278.58),** which withholdings for taxes were carried out even when the Board of Directors did not approve anything related to the payment of taxes.


HAVING NOTED: That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE-ITABO)** made transactions with **COASTAL PETROLEUM DOMINICANA** that did not have the approval of the representative of *CORPORACIÓN DOMINICANA DE ELECTRICIDAD* **(CDE)** (class A shareholders), which came to a total amount of **FOUR HUNDRED AND NINE MILLION ONE HUNDRED AND FORTY-FOUR THOUSAND SIX HUNDRED AND SEVENTY-THREE PESOS AND 35/100 (RD$409,144,673.55)** in the period between 26 May 2000 and 10 January 2001.



**HAVING NOTED:** That the Board of Directors dated 10 June 2002, did not have the presence of the representative of *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES (CDEEE)*, (class A shareholder), and in said board it was decided to continue buying fuel from the Higuamo plant of the company **COASTAL PETROLEUM DOMINICANA** under the conditions for supply presented in the above contract, this decision did not have the approval required by Article 38 of the Bylaws.

**HAVING NOTED:** That the authorization grated by the Board of Directors dated 8 March 2001, was for the price established in the Contract of U.S. Gulf Coast Waterborne Mean, plus a premium of 1.99 cents on the US dollar per gallon.

**HAVING NOTED:** That notwithstanding, in the contract signed by *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* with **COASTAL PETROLEUM DOMINICANA, S.A.** ON THE DATE 19 April 2001, the price for the purchase of fuel was that of U.S. Gulf Coast Waterborne Mean, plus a premium of 7.99 cents of the US dollar per gallon.   Therefore a contract was signed under conditions very different from the conditions approved by said Board of Directors, which constitutes another flagrant violation of the norms from the bylaws of the Company, in prejudice to the shareholders, particularly the class A shareholders.-

19



**HAVING NOTED:** That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* made transactions with **COASTAL PETROLEUM DOMINICANA, S.A.** that did not have the approval of the representative of *Corporación Dominicana de Empresas Eléctricas Estatales (CDEEE)* which came to the amount of **TWENTY-EIGHT MILLION SEVEN HUNDRED AND TWENTY-EIGHT THOUSAND PESOS AND 16/100 (RD$28,728,700.16)** in the period between 22 February and 4 September of the year 2002.

**HAVING NOTED:** That according to our information **EGE-ITABO** has made payments for purchases of fuel from the month of March until the month of October of the year 2002 to the company *DISTRIBUIDORES INTERNACIONALES DE PETRÓLEO, S.A.* for a value of **ELEVEN MILLION EIGHTY-FOUR THOUSAND THREE HUNDRED AND EIGHTEEN PESOS AND 07/100 (RD$11,084,318.07).-**

**HAVING NOTED:** That the *COMPANY DISTRIBUIDORES INTERNACIONALES DE PETRÓLEO, S.A.* is a licensee company of **COASTAL PETROLEUM DOMINICANA, S.A.** and its shareholders are the same local shareholders participating in the ownership of **COASTAL PETROLEUM DOMINICANA, S.A.,** whereby *DISTRIBUIDORES INTERNACIONALES DE PETRÓLEO, S.A.* is a company linked to **COASTAL PETROLEUM DOMINICANA, S.A.** and by analogy, linked to **COASTAL ITABO, LTD.**

**HAVING NOTED:** That the Board of Directors of the **COMPANY DISTIBUIDORES INTERNACIONALES DE PETRÓLEO, S.A.** on the date 8 March 2001, decided: ".....To approve as of the month of March to recognize and reimburse the **CORPORATIONS GENER, S.A. AND COSATAL ITABO LITD,,** or its affiliates, the salaries and labor benefits that said companies recognize for the executives of these corporations which provide services to **ITABO**, in the manner and to the degree to which **ITABO** may have set the compensation of its salaried directors. The above in the understanding that semi-annually the Secretary of the Board of Directors will be informed of the payments made and those projected to be made for the following six months, as well as any modification proposed in the terms of the compensation," the adjustments made in the compensation were not presented to the Secretary of the Board of Directors within the term approved by the Eighteenth Resolution of the indicated Board, which constitutes non-compliance of same, and consequently a violation of the norms from the bylaws and the decisions of the Board of Directors by **ITABO.**

**HAVING NOTED:** That on the date 6 March of the year 2001 a contract was signed by **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. AND CENTRAL PUERTO, S.A.** to give continuation to the Rehabilitation Project, in which the services to be provided by the latter to the benefit of the former were established, this contract was not approved unanimously by the Board of Directors.

HAVING NOTED:  That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* made payments for the amount of SIX HUNDRED FIFTY-EIGHT THOUSAND ONE HUNDRED AND TWO DOLLARS AND 22/100 OF THE UNITED STATES OF AMERICA (US$658,102.22) to the benefit of CENTRAL PUERTO, S.A., a linked company, without the unanimous approval of the Board of Directors as established by article 38, item a) of the Bylaws of EGE-ITABO which require a unanimous vote for entering into contracts that imply payment obligations with companies linked to EGE-ITABO or its shareholders, for which reason the payments made to Central Puerto, S.A. mean another flagrant violation of the norms from the bylaws, which have caused serious economic damage to *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES* (CDEEE).

HAVING NOTED:  That the Board of Directors dated 10 June 2002, approved sending a communication to the Secretary of the Board of Directors for obtaining the approval of the payment of ONE HUNDRED AND FIFTY-FIVE THOUSAND UNITED STATES DOLLARS (US$155,000.00) to AES GENER for the executives provided to the Management of the company incurred during 1999 and 2000, since the Secretary of the Board of Directors was not present, however, on the date 14 May 2002, the Secretary of the Board Engineer César Sánchezsent a letter to *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* in which he objected to this payment.

22



**HAVING NOTED:**  That an invoice exists dated 24 January of the year 2002 from *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. (EGE-ITABO)* to **GENER, S.A.** for the costs related to the advance termination of the work contract with **Mr. Sergio del Campo** who acted as General Manager of **EGE-ITABO**.  This invoice, according to our reports, was compensated with an accounts payable to **GENER, S.A.** for an amount of **ONE HUNDRED AND NINETEEN THOUSAND TWO HUNDRED AND FORTY-TWO UNITED STATES DOLLARS AND 22/100 (US$119,242.22)** leaving a balance to the benefit of **EGE-ITABO** for the amount of **THIRTY-FIVE THOUSAND SEVEN HUNDRED AND FIFTY-SEVEN UNITED STATES DOLLARS AND 78/100 (US$35,757.78)** which implies that **EGE-ITABO** paid **GENER, S.A.** the amount of **ONE HUNDRED AND FIFTY-FIVE THOUSAND UNITED STATES DOLLARS (US$155,000.00)**, which constitutes a violation of article 38, item a) of the Bylaws of **EGE-ITABO** which requires the approval by unanimous vote for entering into contracts that imply payment obligations with companies linked to **EGE-ITABO** or their shareholders.

**HAVING NOTED:**  There are other violations of the norms by the bylaws in the payment to linked companies, which did not have the due approval of the Board of Directors, such as the following cases:

a)    The disbursement of the amount of **US$3,704.85** to the benefit of **COASTAL REFINING & MARKETING INC.** (a company linked to the shareholder **Coastal Itabo, Ltd**) for the supply of hoses.

23



b) A disbursement for the amount of **TWO THOUSAND THRREE HUNDRED AND TWENTY-FOUR UNITED STATES DOLLARS (US$2,324,00)** to the benefit of Coastal St. Helens Chemical (company linked to the shareholder **Coastal Itabo, Ltd**) for the service of transproting and packing computers.

**HAVING NOTED:** That on the date the 31st of the month of June of the year 2000, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE-ITABO)** paid an invoice for the amount of **US$65,288.88** with taxes included to the benefit of **COASTAL POWER COMPANY** for professional and administrative services during the period between 8 September and 31 December 31 *(sic)* of the year 1999, without this payment having the required approval of the Board of Directors, which constitutes a violation of the cited article 38, item a) of the Corporate Bylaws of **EGE-ITABO**, which requires a unanimous vote for entering into contracts that imply payment obligations with companies linked to **EGE-ITABO** or its shareholders.

**HAVING NOTED:** That on the date the 25th of the mongh of June of the year 2003, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* held its Ordinary General Meeting of shareholders convened extraordinarily, to consider among other points the annual Report of the Board of Directors regarding the corporate actions and the annual accounts and balances, the report from the accounts *comisarios*, to resolve that which was in order with respect to the Financial Statements of the Company.

24



**HAVING NOTED:**   That in said General Meeting dated 25 June 2003, ***CORPORACIÓN DOMINICANA DE ELECTRICIDAD*** (CDE) in its capacity as class A shareholder, voted against the resolution declaring the reports rendered by the Board of Directors over its annual actions and the business of the Corporation to be considered and approved.-

**HAVING NOTED:**   That in the same fashion, ***CORPORACIÓN DOMINICANA DE ELECTRICIDAD*** (CDE) in its capacity as class A shareholder, voted in that meeting against the resolution which considered the reports from the Accounts *Comisarios* to be considered and approved and approved the proposal to discharge the President and members of the Board of Directors and the General Manager who directed the company until 31 December 2002.-

**HAVING NOTED:**  That **CDE** also voted against the Resolution approving the Financial Statements, made available to the shareholders for the period exercised terminated *(sic)* 31 December 2002; and granting discharge to Messrs. *(sic)* **DANIEL A. SANTOS** for the carrying out of his functions of Accounts *Comisario* of the company for the same period.

**HAVING NOTED:**   That the Board of Directors of ***EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.*** on the date the 4th of the month of August of they year 2003, held Session No.4 of 2003, in which it designated Mr. Mark Tracy as General Manager and granted discharge to Mr. Kevin P. Manning for his exercise; with the representative of the class A shareholder **(CDE)** voting against this resolution.



**HAVING NOTED:**  That as a product of the violations cited above, the damages and losses suffered by **CDEEE**, are quantified in the amount of **FIVE HUNDRED MILLION GOLD PESOS AND 00/100 (RD$500,000,000.00).**

**HAVING NOTED:**  That pursuant to the provisions of Article 516 of the Code of Commerce: "The consideration of the commercial business occurring in their respective jurisdictions is left to the responsibility of the courts of the first instance. *(sic)*

**HAVING NOTED:**  That pursuant to Article 631 of the Code of Commerce (modified by Article 6 of Law 845 of 15 June of the year 1978). *(sic)* The courts of commerce shall consider:  **1.-**  All the disputes related to the commitments and transactions among businessmen, merchants and bankers;  **2.-  On the disputes among partners by reason of a commercial company;**  **3.-**  On all the disputes related to acts of commerce among any persons.

**HAVING NOTED:**  That pursuant to Article 640 of the indicated Code of Commerce:  "However, it shall be decided in the last resort on suits for losses and damages, when they are founded exclusively on the same principal suit. *(sic)*

**HAVING NOTED:**  That Articles from 414 to 422 of the Code of Civil Procedure establish the Procedure before the Courts of Commerce.



**HAVING NOTED:** That the provisions of Article 527 of the Code of Civil Procedure, on the Rendering of an Accounting, establishes: "The account custodians *(cuentadantes)* commissioned by justice will be sued before the judges that may have been named; tutors, before the judges of the place where the tutorship has been conferred; and **all the other account custodians (*cuentadantes*) before the the judges of their domicile,**

**HAVING NOTED:** That the other provisions on the Rendering of an Accounting will be contained in Articles 528 ff. of the Code of Dominican Civil Procedure.

**HAVING NOTED:** That the executives of ***EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* (EGE-ITABO)**, must Render an Accounting before the Courts of Commerce of the Dominican Republic, to ***Corporación Dominicana de Electricidad* (CDE)**, on the handling of the accounts of this Corporation, the violations of the norms by the bylaws, that have been cited in this suit.

**HAVING NOTED:** That pursuant to Article 1382 of the Dominican Civil Code: "Any damage by a man causing damages to another, obliges he by whose fault it happened to remedy it."

**HAVING NOTED:** That pursuant to the provisions of Article 1383 of the same code: "Everyone is responsible for the damage they have caused, not just by an act of theirs, but also due to negligence or imprudence."



**HAVING NOTED:** That article 1384 of the referred Code establishes: "Not only is one responsible for the damage caused by an act of theirs, but also that caused by the act of the persons for whom they must respond, or the things that are under their care....."

**HAVING NOTED:** That *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* has violated the provisions and legal obligations established and in effect in the **CONTRACT FOR THE GRANTING OF RIGHTS FOR THE EXPLOITATION OF ELECTRIC WORKS RELATED TO ELECTRIC GENERATION SERVICE IN THE DOMINICAN REPUBLIC**, signed on the date 8 September of the year 1999, by *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **and** *CORPORACIÓN DOMINICANA DE ELECTRICIDAD* **(CDE)**, as well as the provisions of Article 38 and 39 of the Corporate Bylaws, which make up the legal provisions in effect give rise to requesting in this case **a Rendering of Accounting** from EGE-ITABO that covers the period from the year 1999 until the date of the year 2004.-

**HAVING NOTED:** That the **COMPANY NEW CARIBBEAN INVESTMENT, S.A.** , like *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A,* have not fulfilled its contractual and bylaws obligations and have been administering **EGE-ITABO**, without rendering the proper accounting, taking acts of disposition of economic resources belonging to all the partners without taking into account the requisites foreseen in the Corporate Bylaws and in the signed contracts, as if they were sole owners of said company.



**HAVING NOTED:** That in any process on the Rendering of an Accounting for the carrying out of accounting expertise, a designation of experts is required for technically carrying out the evaluation of the violations established in this suit.

**HAVING NOTED:** That **The Patrimonial Fund of the Reformed Companies** (*El Fondo Patrimonial de las Empresas Reformadas* – **FONPER)**, created via Law 124-01 dated 24 July of the year 2001, charged the conducting of a Technical, Financial and compliance Audit of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* **(EGE-ITABO)**, during the period transpired from the year 1998 until the year 2002, which was carried out by the **GRANT THORNTON AUDITING FIRM** and delivered on the date 30 July of the year 2003.-

**HAVING NOTED:** This audit establishes serious violations of the legal and administrative norms that govern the electric sector, as well as contractual and bylaws violations, etc.

**HAVING NOTED:** That any party losing in justice must be sentenced to the payment of the costs, disbursing same to the benefit and favor of the acting attorneys.

**FOR ALL THESE REASONS AND THOSE THAT CAN BE ADDED IN HEARING OR SUPPLIED BY THE** HONORABLE EMPOWERED JUDGE, **LET** *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* **(EGE-ITABO)** and its President, Mr. **JULIAN NEBREDA, HEAR** *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES* **(CDEEE)** ASK THE EMPOWERED JUDGE **TO RULE BY** SENTENCE:



en

**FIRST:** That **YOU ORDER** *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* (EGE-ITABO) in the person of its President or General Manager, as well as any other person turning out to be involved and responsible, and in the capacities they hold, **TO PROCEED TO RENDER AN ACCOUNTING** to *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES* (CDEEE) of their Financial and Commercial operations with the linked companies: **NEW CARIBBEAN INVESTMENT, S.A., COASTAL ITABO LITD, COASTAL TECNOLOGY** *(sic)*, **CTD,** *SERVICIOS DE ASISTENCIA TÉCNICA, S.A.* (SAT), **COASTAL PETROLEUM DOMINICANA, COASTAL MANAGER LTD, COASTAL POWER DOMINICANA LTD., COASTAL POWER DOMINICANA, LTD, COASTAL REFINING & MARKETING INC.,** *DISTRIBUIDORES INTERNACIONALES DE PETRÓLEO, S.A., GENER, S.A.* among others, as well as other commercial and financial operations described in detail in this suit, from the 8th of the month of September of the year 1999 until the date of the year 2004.-

**SECOND:** That **YOU DESIGNATE OR DESIGNATE YOURSELF** Judge *Comisario* before whom the Accounting is to be Rendered, and Supervisor of the procedure for the Rendering of the Accounting.

**THIRD:** That **YOU ORDER** by sentence, further, the filing by the Secretariat of this Court of the business books established by the Law, corresponding to *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* (EGE-ITABO) in its fiscal period from 8 September 1999 until the 1st of July of the year 2004.-



**FOURTH:** That **YOU ORDER** *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* (EGE-ITABO) and its President Mr. **JULIAN NEBREDA** to the payment of **A PENALTY** for the amount of **TWO HUNDRED THOUSAND PESOS (RD$200,000.00)** national currency, for each day of delay in making the deposit of the business books, in the manner and under the terms indicated in the Sentence to be intervened.

**FIFTH:** That **YOU ORDER** the designation of the experts necessary to carry out the required expert study to determine the reality of the course of the economic and financial evolution of *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A (EGE-ITABO).-*

**SIXTH:** That **YOU SET** the term within which the Accounts must be Rendered or given.

**SEVENTH:** That **YOU SENTENCE** *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* (EGE-ITABO) and its President Mr. **JULIAN NEBREDA** to the payment of **A PENALTY** for the amount of **TWO HUNDRED THOUSAND PESOS (RD$200,000.00)** national currency, for each day of delay in proceeding with the Rendering of an Accounting.

**EIGHTH:** That in the event of Rendering and Accounting and it should Result in finding that the absence of a specific amount or quantity is unjustified, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* (EGE-ITABO), and its President Mr. **JULIAN NEBREDA**, be sentenced to the payment of said missing amount or quantity.

31



**NINTH:** That in the event that *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* **(EGE-ITABO)**, and its President, Mr. **JULIAN NEBREDA**, should not Render an Accounting within the terms and in the manner specified in this suit, **YOU ORDER** that they be compelled to do so by means of an Executive, Movable and Real Property Attachment, and Sale of their assets up to the amount you the Court sees fit to set and agree to in order to totally satisfy the capital, the interest, arrears, benefits, damages and losses owed to *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES* **(CDEEE),** as a consequence of the financial operations carried out in violation of the Bylaws of the Corporation.-

**TENTH:** That after the above clauses have been executed, **YOU ORDER**, also by the same sentence, that *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* **(EGE-ITABO)** and its President Mr. **JULIAN NEBREDA, TO DELIVER** all of its movable properties (Investment Certificates, share certificates of the company and all linked companies for which they are shareholders, and the real properties (Title certificates and others), all this with their corresponding documentation.

**ELEVENTH: That YOU SENTENCE** *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.* **(EGE-ITABO)** and its President Mr. **JULIAN NEBREDA** to the payment of **A PENALTY** for the amount of **TWO HUNDRED THOUSAND PESOS (RD$200,000.00)** national currency, for each day of delay in compliance of the above extract.

**TWELFTH:** That **YOU ORDER** the designation of the experts necessary in order to examine the originality, source, correctability and fairness of the

32



documentation and assets thus delivered, corresponding to the Sued Company and its President.

**THIRTEENTH:  That YOU SENTENCE** *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* **(EGE-ITABO)** and its President Mr. **JULIAN NEBREDA** to the payment of a **PENALTY** for the amount of **ONE HUNDRED THOUSAND PESOS (RD$100,000.00)** national currency, in the event that after depositing the documentation of reference, it were not done completely, for each day of delay in completing the ordered filing.

**FOURTEENTH:** That in the event that the absence of a specific amount or quantity should Result being unjustified, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* **(EGE-ITABO)** and its President Mr. **JULIAN NEBREDA**, to the payment of the amount of **FIVE HUNDRED MILLION PESOS (RD$500,000,000.00)** national currency, to the benefit and favor of *CORPORACIÓN DOMINICANA DE EMPRESAS ELÉCTRICAS ESTATALES* **(CDEEE)**, judicial successor of the CDE, as fair and worthy compensation for the economic and material damages caused to the Corporation.

**FIFTEENTH:** That **YOU ORDER** that the **SENTENCE** to be intervened be declared provisionally enforceable at this instant *(sobre minuta)*, notwithstanding any appeal that may be interposed against same and without the need for providing a bond.

**SIXTEENTH:** To sentence the defendant party to the payment of the legal interest on the amount to which it turns out to be sentenced for remedying the damages and losses, as of the sentence to be intervened.



**SEVENTEENTH:** To sentence the defendant party to the payment of the costs of the procedure, ordering their disbursement to the benefit of **Dr. Carlos Manuel Padilla Cruz,** attorney who affirms having advanced them in full.

**UNDER THE MOST ABSOLUTE AND EXPRESS RESERVATIONS OF LAW.** -------------------------------------------------------------------------------

And so that the parties served notice, *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A* **(EGE-ITABO)** and Mr. **JULIAN NEBREDA** not allege lack of knowledge or ignorance about the contents of this act, I have thus notified, stated and warned them, having left in the hands of the person with whom I said I had spoken in the place of my presenting myself respective copies of this act, identical to its original, which consists of **THIRTY-FIVE** (35) *(sic)* pages, duly initialed, by me, the Undersigned Bailiff, on each of its pages, to which I Certify and bear witness. **Cost RD$ $200,000**.

I BEAR WITNESS

[Signed and stamped]                      [All pages stamped and initialed]
**THE BAILIFF**

MFCS / June.05 / ITABO.Act 422 2004.English.1

MADE AND SIGNED in Santo Domingo, Dominican Republic this thirteenth (13th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293



Certified by Mark Freehill
**MARK FREEHILL COMMUNICATION SERVICES**
US Certified Federal Court Interpreter No. 20293
Calle 5, No. 12, Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's
Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer
of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic,
domiciled at *Calle 5, No. 12, Residencial Santo Domingo*, in this city; HEREBY CERTIFY AND BEAR WITNESS that the
following is a true and accurate version in the English language of a document presented to me in the Spanish language:

**TO THE HONORABLE JUDGE MAGISTRATE PRESIDING OVER THE FIFTH
HALL OF THE CIVIL AND COMMERCIAL CHAMBER OF THE COURT OF
FIRST INSTANCE OF THE NATIONAL DISTRICT. VIA SECRETARY.**

**Expanded Writ of Conclusions of Statement
Incompetence and Declination proposed by ITABO
(Hearing 30-3-05)**

**Re.**

Suit for Rendering of Accounts and Damages and Harm, expropriation of
assets and other ends, irregularly brought in violation of the arbitration
clauses agreed to in the contracts celebrated between the parties and the
Corporate By-Laws of the Empresa Generadora de Electricidad ITABO,
S.A. (ITABO) by the Corporación Dominicana de Empresas Eléctricas
Estatales (CDEEE) against ITABO and its President, Mr. Julián Nebreda,
by means of Act No. 422/2004 dated July 21st, 2004, formalized at the
request of the CDEEE by Court Official Clara Morcelo, Bailiff of the
Labor Court of the National District.

**Concluding Party:**
Empresa Generadora de Electricidad ITABO, S.A.
(Co-defendant)

**Lawyers:**
Lic. Giselle Leger
Lic. Carlos Radhamés Cornielle M.

Honorable Judge:

The deponent, the **EMPRESA GENERADORA DE ELECTRICIDAD
ITABO, S.A. (ITABO),** a business partnership incorporated and organized
pursuant to the laws of the Dominican Republic, with its corporate domicile
located at Avenida Rómulo Betancourt No. 1108, Sector La Julia in this city of
Santo Domingo, duly represented by its General Manager, Mr. Mark Tracey, of

1



Canadian nationality, of legal age, bearer of the Personal Identification Card No. 001-1793523-9, of domicile and residence in this city of Santo Domingo;

THROUGH its incorporated lawyers, the undersigned Messrs.: (a) **LIC. GISELLE LEGER**, a lawyer of the bar of the courts of the Republic, bearer of the Personal and Electoral Identification Card No. 002-0020730-6; and (b) LIC. CARLOS RADHAMES CORNIELLE M., lawyer of the bar of the courts of the Republic, bearer of the personal and electoral identification card number 001-0068402-6; the former with professional study open at Avenida Rómulo Betancourt No. 1108, Sector La Julia, Santo Domingo, and the second, with professional study open at Avenida Pedro Henríquez Ureña No. 55 corner Máximo Cabral, Sector Gazcue in this city of Santo Domingo, and in the first of whose law offices the deponent makes formal choice of domicile;

ON THE OCCASION OF the **Lawsuit for Rendering of Accounts, Damages and Harm, Expropriation of Assets and other ends,** brought irregularly (in violation of the arbitration clauses agreed to in the contracts celebrated between the parties, and ITABO´s Corporate By-laws) by the Dominican Corporation of State-Owned Electrical Enterprises (CDEEE) against ITABO and its President, Mr. Julián Nebreda, contained in Act No. 422/2004 dated July 21, 2004, legalized/formalized at the request of CDEEE by Court Official Clara Morcelo, Bailiff of the Labor Court of the National District; and as **expanded conclusions for purposes of declaration of incompetence of the judicial entity and declination to the International Arbitration Court of the International Chamber of Commerce (CCI),** presented in the last hearing held such effect before that Honorable Hall on March 30 of the year 2005, and deposited through the Office of the Secretary on that same day; is most respectfully pleased, and in obedience to the corresponding constitutional and legal principles, international conventions, doctrinal opinions, and jurisprudential criteria, in fact and in law, very respectfully bases the requests formulated, which are repeated based on the following

## ALLEGATIONS

### I. Background and Processes

1. The facts and circumstances which precede the judicial action brought by CDEEE, in violation of the agreements made with ITABO and its managers, and which have given rise in turn to the formulation of the exception of incompetence and declaration/abandonment in favor of the International Chamber of Commerce (CCI) with seat in Paris, France, in question, have been minutely and explicitly stated in Notes Nos. 1 to 25 (pages 2 to 19) of the writ of conclusions presented to you by ITABO, articulated in a hearing held to such effect last March 30, 2005, and deposited through the Office of the Secretary on that same date. We very respectfully invite Your Honor to take note out those developments.

2



**II. Question under Debate on which the court reserved ruling**

2. The object of the Lawsuit of the Dominican Corporation of State-Owned Electrical Enterprises (CDEEE) at this moment is not the point of debate nor to be decided by the Honorable Fifth Civil and Commercial Chamber, but rather the exception of incompetence and degradation/abandonment invoked by ITABO and which it bases on the clauses of commitments contained in the Basic Contracts which governed the Process of capitalization of the electrical industry owned by the now nonexistent Dominican Electrical Corporation (CDE), which constituted a public enterprise of the Dominican State. Said exception of incompetence is based by ITABO on the limited provisions of articles 1134 of the Civil Code and 631 of the Commerce Code, and article II, numbers 1 and 3 of the New York Convention of the year 1958.[1]

3. The conclusions relating to incompetence will define the decision of that Honorable Court, with the because the judge that presided over that Honorable Hall on the day of the last hearing refused him to combine they proposed incompetence with the merits of the objection/response, despite the request and declaration of default requested by CDEEE's lawyer. In support of that, we would like to state, as recorded in the official document, that the hearing debates at a decision of reservation of ruling occurred as follows:

- ❑ Said lawsuit was recorded as No. 8 on the Agenda of Hearings, but in reality, it was the only hearing held by the court and heard not by the titular judge, Dr. Matías Modesto del Rosario (who was absent because of illness), but rather by the judge who presides over the First Hall, Dr. Anselmo Alejandro Bello F., who acted as substitute judge. The Judge declared the hearing in session and granted the floor to the plaintiff, and then to the defendant.

- ❑ CDEEE in its capacity as plaintiff concluded by requesting that the court accept the convictions requested by the official document introducing the lawsuit No. 422/04 dated July 21, 2004, for the ends specified in same.

- ❑ ITABO, upon presenting its defense, gave an oral explanation prior to the reading of its rate of conclusions, in order to orient the Judge about the nature of the lawsuit and the statement of the defense which ITABO would formulate by means of writ of conclusions.

- ❑ Having made the explanation, the lawyers representing ITABO stated the request for declaration of incompetence of judicial jurisdiction and its declining in favor of the International Arbitration Court of the International Chamber of Commerce (CCI), so that CDEEE's demands and the determination of their appropriateness be decided by the panel of arbitrators to be created to such effect.

- ❑ After the conclusions were read, the court was asked to confirm that in the notes of the case file, the documentary evidence had been deposited, of the arbitration

---

[1] Please see Notes 26 to 40 of ITABO's writ of conclusions presented in the said hearing of March 30, 2005.

3



clause contained in the Basic Contracts, and the empowerment, which ITABO had been required to make, of the International Arbitration Court of the International Chamber of Commerce (CCI).

☐ Mr. Julián Nebreda, President of ITABO, was represented by the distinguished lawyer Lic. Olivo Rodríguez Huerta, who requested that the court make note that he adhered completely to the exception of incompetence proposed by ITABO.

☐ In the debates, subsequent to said conclusions by the parties, the judge granted the floor to the lawyer of CDEEE, who repeatedly attempted to invoke: (i) that the arbitration commitment clause was not binding on the Dominican State, because the "matter" under discussion was of a public order, and that in those cases, the State did not have the obligation to acknowledge the commitment to an arbitration trial, appealing to the old doctrine of article 1004 of the Civil Procedure Code, already discarded by legislative and jurisprudential decisions; and (ii) that rejected the exception of incompetence, and that same be combined in order to be decided jointly with the merits of the case in a hearing to be held in a term period of 15 days in accordance with art. 4 of Law 834 dated July 15, 1978.

☐ In its rebuttal ITABO advised the court: (i) the substantive nature of the norms instituted by the New York Convention of 1958 and constitutionality of the rule of arbitration jurisdiction over ordinary jurisdiction when the parties in accordance with arts. 1134 of the Civil Code and 631 of the Commercial Code, decide to submit their disputes to an arbitration jurisdiction such as CCI; (ii) the serious disturbance that would be closed by a lawsuit such as that of CDEEE for the investment climate and prestige of the Dominican State in such basic matters as the respect for agreements assumed by the State itself with private parties and investors who have trusted in the rule of law; and (iii) the inappropriateness of merging the exception of incompetence with the merits, because that would necessarily imply that if ITABO were called to discuss the merits, it would be forced to formulate its defense before the court, which would be equivalent to abandoning the exception of incompetence, and would also mean the production of thousands of documents and expert opinions and accounting audits, which are prior to the discussion of the merits and which the provision of art. 4 of Law No. 843 is not mandatory for the Judge, but rather optional for those cases in which dilatory petitions are presented which do not influence the empowerment of the court or other aspects of the case.

☐ The Judge ruled, making reservations of deciding on the exception of incompetence proposed by ITABO and did not accept the request for merging said exception with the merits, as requested by CDEEE. Subsequently he granted to ITABO and to Mr. Julián Nebreda a term period of 15 days to justify the exception proposed, despite the fact that such term period was not requested, because ITABO's writ of conclusions was duly justified in the 29 pages contained in the development of its justifications. The Judge granted an identical term

4



period of 15 days to CDEEE to expand the considerations and reasons for its demand and its conclusions of hearing.

### III. Admissibility of the Exception of Incompetence and Declination

4. The exception of incompetence and declaring before the International Chamber of Commerce (CCI), invoked by ITABO, based on the arbitration clauses agreed to between the parties, was presented with a formal request for decision on the following:

FIRST:- TO DETERMINE and TO DECLARE by the decision to be pronounced: ( a ) that the CDEEE by attempting to derive a partnership relation with ITABO has brought a lawsuit for rendering of accounts and other ends in question before this honorable court, as ordinary jurisdiction; ( b ) that the former Dominican Electrical Corporation (CDE) as participant in the capitalization process, which gave rise to the birth of ITABO as a business partnership, throughout the capitalization process, and in articles 58 of ITABO's Corporate By-laws, art. 12.3 of the Contract for Signing of Shares dated August 13, 1999, art. 9 of the Contract for Granting of Rights for the Exploitation of Electrical Works relating to the Service of Generation of Electricity in the Dominican Republic, dated December 8, 1999, art. 7.1 of the Agreement of Transfer of the Energy Sale Contract dated September 8, 1999, and art. 6 of the Administration Contract, stipulated the binding clauses on arbitration, to resolve conflicts between shareholders, or between shareholders and the company itself, or within the Board of Administration, related to the interpretation and application of ITABO's Corporate By-laws; ( c ) that said arbitration clauses attributed express competence to the International Arbitration Court of the International Chamber of Commerce, with seat in Paris, if after signing the Basic Contracts of Capitalization, the Dominican Republic ratified the Convention of Acknowledgment and Execution of Foreign Arbitration Rulings signed in the city of New York on January 10, 1958, which, as indicated, we joined on April 11, 2002, and which took effect as of July 10, of the year 2002; ( d ) that art. 2 of the New York Convention establishes that: "*1. Each one of the Contracting States shall recognize the agreements in writing in accordance to which the parties promise to submit themselves to arbitration for all differences or particular differences that have arisen or may arise between or among them regarding a particular, contractual, or non-contractual relationship concerning a matter that can be resolved by arbitration.*"; "*2... *"; "*3. The court of one of the Contracting States to which a litigation is submitted regarding which the parties have concluded an agreement in the sense of the present article, shall remit the parties to arbitration, at the request of one of them, unless it determines that said agreement is null and void, ineffective, or inapplicable*"; ( e ) that the Basic Contracts for capitalization, and the ITABO Corporate By-laws, which contained the arbitration clauses, are valid and binding instruments, which have not been voided or annulled, nor have they been declared ineffective or inapplicable, and moreover, that they continue to

5



govern in accordance with arts. 1134 of the Civil Code and 631 of the Commercial Code; ( f ) that the arbitration jurisdiction instituted by the New York Convention is based on an international agreement, which has the category of substantive provision, in accordance with art. 3 of the Constitution of the Republic, with hierarchy over local laws of attribution of competence, because the parties in such contracts and statutes had submitted themselves to the jurisdiction of said international arbitration court, which makes the exception to decline in order/appropriate.

**SECOND:-** TO DECLARE, consequently, the incompetence of power of this honorable jurisdiction, because of the matter (*ratione materiae*), to hear and rule on the demand for a rendering of accounts and other purposes, before us, which according to the arbitration clauses contained in the Basic Capitalization Contracts, should be heard by the International Arbitration Court of the International Chamber of Commerce of Paris, and which we request of you based on the provisions of Art. 3 of Law No. 834 dated July 15, 1978; all, with all of their consequences of law/right.

**THIRD:-** TO DECLARE, because of that fact, the disempowerment of this honorable jurisdiction in judicial matters, and by the same ruling that you order to decline to hear the present matter, so that the parties resolve their disputes, objections, or claims before the arbitration court which will be created in conformance with the Regulations of the said International Arbitration Court of the International Chamber of Commerce, with seat in the city of Paris (No. 38 Cours Albert 1er., 75008 Paris, France) as competent jurisdiction and before which the parties agreed to submit their disagreements and litigations.

**FOURTH:-** TO STATE ON RECORD to the concluding party that the exception of incompetence presented is made under express and special reservations of making, if necessary, any other petition attempting to guarantee the competence of the arbitration jurisdiction chosen by the agreements in question, which will guarantee the solution of the dispute within the framework of its stipulations.

**FIFTH:-** TO COMPENSATE the costs, in the event there is no opposition by the counterparts, imposing them obligatorily otherwise.

**SIXTH:-** TO ORDER, in order to avoid the damage/harm and danger that may be caused by delay, the decision "*sur le champ*", with regard to the exception of incompetence presented, before ruling on any other aspects informed or merits of the present suit.

6



5.  In our writ of conclusions deposited in that honorable court on March 30, 2005, we have pointed out that as a result of the corresponding procedure of international public bidding, the following contracts were celebrated between CDE[2] and ITABO:

    i)      Contracts of Subscription of Shares, including ITABO´s By-laws;
    ii)     Administration Contracts;
    iii)    Contracts for Granting of Rights for Exploitation of Electrical Works relating to the generation of electricity;
    iv)     Contract for Sale of Energy;
    v)      Agreement for Transfer of the Contract for Sale of Energy

6.  Said contracts have been called and shall be called hereinafter the "Basic Contracts," which have been deposited by the deponent, in its First Inventory of documents, dated August 18th of the year 2004.

7.   We have explained that ITABO´s Corporate By-laws and the Basic Contracts[3] stipulate that the parties would try to resolve their differences in an amicable manner, and only in the event that such efforts should be futile would said By-laws and agreements indicated above be implemented, which in their relevant part contain the following provision:

### A.  Corporate By-laws of ITABO

*"ARBITRATION*

*Art.  58.  In the event that, in the deliberations of the Ordinary or Extraordinary General Assembly, a tie should arise that cannot be resolved by mutual agreement, the shareholders will be obligated to resort to arbitration performed in accordance with what is subsequently provided in the present article.  It shall likewise be binding to resort to arbitration whenever, when differences or disputes arise between the shareholders or between one or more shareholders and the company or within the Board of Administration related to the interpretation and application of the present by-laws, it is impossible to resolve them by common agreement between them.*

---

[2] We invite Your Honor´s attention to take into account, as has been explained, that at the moment of signing the contracts indicated, who did so was the Dominican Electric Corporation (CDE), which was inherited over time by the Patrimonial Fund for Development of the Reformed Enterprises (FONPER), by mandate of art.  20 of the General Law on Reform of State-Owned Enterprises No.  141-97 dated June 24, 2001, and arts.  1 and 2 of Law No.  124-01 dated July 24, 2001, and not the Domincian Corporation of State-Owned Electrical Enterprises (cDEEE), created by art.  138 of Law No.  125-01 dated June 25, 2001, which was not incorporated as successor of the former CDE.

[3] Article 58 of ITABO´s By-Laws, article 12.3 of the Contract for Subscription of Shares dated August 13, 1999, article 9 of the Contract Granting Rights for the Exploitation of Electrical Works related to the service of electrical generation in the Dominian Republic dated December 8, 1999, article 7.1 of the Agreement for Transfer of the Energy Sale Contract dated September 8, 1999, and article 5 of the Administration Contract.

7



*Any dispute, which according to what is established above is not resolved by mutual agreement between the parties in conflict, <u>must be resolved by means of arbitration held in accordance with the provisions of Law No. 50-87 dated June 4, 1987, of the Dominican Republic, and under the rules and procedures of arbitration established by the Regulation of the Arbitration Court of the Chamber of Commerce and Production of the National District, Inc., of November 1988</u>[4] (the "Rules of Arbitration").*

*Said arbitration shall take place in Santo Domingo, Dominican Republic, and excepting if the Parties should decide otherwise, the number of arbitrators shall be three, designated by means of agreement between the Parties and, in the event that they cannot come to an agreement, the arbitrators shall be designated in conformance with the procedure established in Title II in the said Regulation.*

*As established by Article 34 of the Arbitration Regulation, after approval by the Board of Directors of the Board of Conciliation and Arbitration of the Chamber of Commerce and Production of Santo Domingo, the Parties may set the seat of the Arbitration Court in any other place, in this country or abroad, in which case each party shall assume its expenses of transportation and lodging, and jointly, all of the expenses for transfer of the Arbitration Court and the work of the Secretariat of said court. If one of the Parties opposes the transfer of the arbitration court, the expenses incurred for such effect shall be for the account of the requesting party.*

*The arbitration award, which is pronounced to that effect, shall be deemed the results of a procedure initiated and effected in Santo Domingo, Dominican Republic.*

*Any arbitration held pursuant to the above must be conducted in the Spanish-language.*

*The shareholders, upon acquiring such capacity, by virtue of the present by-laws, irrevocably waive their right to resort to ordinary courts or courts of exception in order to request the opinion of the Court, insofar as the Law permits, in relation to any matter of law, which may arise in the course of the arbitration or with respect to the decision made by the arbitrators. Likewise, they irrevocably waive any right to object to, or argue the validity or enforcement nature of, both the arbitration proceedings and the arbitration awards pronounced in conformance with the provisions of the present article, including any objection based on incompetence or inappropriate jurisdiction.*

---

[4] The definition of "Rules of Arbitration" contained in article 1 of the Contract for Exploitation of Electrical Works, indicates that same are "the rules and procedures of arbitration established in the Regulation of the Board of Conciliation and Arbitration of the Chamber of Commerce and Production fo the National District, of November 1988 <u>and its modifications</u>..." so that the present Regulation adopted by the Board of Directors of the Board of Conciliation and Arbitration is the applicable one.

8



*For purposes of the present article, it is acknowledged that the CDE or its creditors shall always be governed by the provisions of the Commercial Code of the Dominican Republic and Dominican Common Law, so that no immunity whatsoever shall be alleged regarding the arbitration proceeding referred to in the present article.*

*It is expressly reminded that if it is in order, either of the parties in conflict may request that the Arbitration Court merge any arbitration procedure, which may arise or be related to the present statutes/by-laws, if the principal motive of the disputes comes from or is related to the by-laws. Such merged arbitration must be resolved by the arbitration court designated to hear the preceding, which has first been initiated. Excepting as otherwise provided in the above paragraphs, the right of the parties to proceed with the resolution of the disputes by means of arbitration, established in these by-laws, shall be independent of their rights or the right of other entities to proceed with the resolution of the disputes in conformance with what is established in the agreements or contract signed between them.*

*The shareholders and the company waive any right to recourse or appeal of any decision or arbitration award that may result from the arbitration, so that such decision or arbitration award shall be deemed definitive and binding for all, and must be obeyed without any delay whatsoever. Any arbitration award or decision may be executed by any competent court.*

*If the Dominican Republic ratifies the New York Convention on the acknowledgment and execution of foreign arbitration rulings adopted by the United Nations Conference on International Commercial Arbitration, dated June 10, 1958, and/or the Panamá Convention on Commercial Arbitration, the parties accept to resolve their disputes by means of international arbitration, in conformance with the rules of the International Chamber of Commerce (ICC Rules of Conciliation) dated August 1, 1988, and under the laws of New York. No arbitrator designated according to the present article shall be a citizen of any of the jurisdictions of the Parties, nor may that arbitrator be an employee or agent nor former employee or former agent of any of the said persons."*

## B. Contract for Exploitation of Electrical Works:

### "ARTICLE 9. – RESOLUTION OF DISPUTES

*(a) Any Dispute which arises from or with relation to the present Contract and which is not resolved by mutual agreement between the parties in conflict, must be resolved at the request of either of the parties, through arbitration held in conformance with the Arbitration Law and under the Rules for Arbitration. The parties waive from now and forever. the submission of any litigation to any court of judicial or international order, except for what is stated below in letter h.*

9



*(b) The arbitration shall take place in Santo Domingo, Dominican Republic, and unless the Parties decide otherwise, the number of arbitrators shall be three, designated by means of agreement between the Parties or, if they do not come to an agreement, the arbitrators shall be designated in accordance with Title II of the rules of Arbitration, or in the case of substitution, the applicable title.*

*(c) As established in Article 34 of the Rules of Arbitration, after the approval of the Board of Directors, the Parties may set the seat for the arbitration court in any place outside of Santo Domingo in the Dominican Republic or abroad, in which case each one of the Parties shall assume its expenses of transportation and lodging, and jointly all of the expenses related to the transfer of the arbitration court and the expenses of the Secretary of the arbitration court. If one of the Parties opposes the transfer of the arbitration course, the requesting party shall pay the expenses incurred to such effect.*

*(d) The arbitration award pronounced to set effect shall be deemed the result of a proceeding initiated and performed in Santo Domingo, Dominican Republic.*

*(e) Any decision which may be rendered in this regard shall be unappealable before any jurisdiction or court of the Dominican Republic or abroad, and shall be deemed definitive and binding for the parties immediately, and shall not be subject, for its enforcement nature, to the requirements of Articles 1020 and 1021 of the Civil Procedure Code, as established by the arbitration rule the effect of the Chamber of Commerce and Production of the National District, in its Article 52. Any monetary penalty shall include legal interest as of the dates of any noncompliance or other violation of the present Contract up until the date on which said penalty is paid, at a rate determined by the arbitrator(s).*

*(f) Any arbitration held pursuant to the above must be conducted in the Spanish-language.*

*(g) By these means the Parties irrevocably waive their right to resort to ordinary courts or, in so far as permitted by the Laws of the Dominican Republic, courts of exception in order to request the opinion of any courts in relation to any matter of law which may arise in its course of arbitration or with regard to the decision made by the arbitrators. Likewise, they irrevocably waive any right to object to or argue the validity or enforcement nature both of the arbitration proceedings and of the arbitration awards pronounced in conformance with the provisions of the presence Article, including any objection based on incompetence or inappropriate jurisdiction.*

*(h) For purposes of the present Contract, it is acknowledged, and the CDE agrees, that the CDE or its creditors shall always be governed by the provisions of the Commercial Code and common law consecrated by the Laws of the*

10



Dominican Republic, and shall not allege any immunity whatsoever regarding the arbitration process referred to in the present Article.

(i) It is expressly agreed that if appropriate, either of the Parties in conflict may request that the arbitration court merge any arbitration proceeding, which may arise or the related with the present Contract, with any arbitration which may arise or have relation to the Company with one or more of the Basic Contracts. Such consolidated arbitration must be resolved by the arbitration court designated to hear the arbitration proceeding, which had been initiated first.

(j) The parties irrevocably waive any right to object to or appeal any decision or arbitration award resulting from the arbitration, so that such decision or arbitration award shall be deemed definitive and binding for all, and shall be obeyed without any delay whatsoever. Any arbitration award or arbitration decision may be executed by any competent court.

(k) In the event that the Dominican Republic to ratify the New York Convention and/or the Panama Convention, the parties agree to resolve their disputes by means of international arbitration, in conformance with the rules of the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988, and under the laws of New York. No arbitrator designated according to the present article shall be a citizen of the jurisdictions of any of the Parties, nor May said arbitrator be an employee or agent or former employee or former agent of any of said persons.

## C. Administration Contract

"ARTICLE 6.- RESOLUTION OF DISPUTES. *Any Dispute, controversy, or claim which may arise from the present Contract or from the noncompliance, termination, or validity of same, shall be resolve in accordance with the By-laws.* "[5]

## D. Contract for Subscription of Shares

"12.3. Arbitration

(a) Any Dispute, which may arise from war with relation to the present Contract and which is not resolved by mutual agreement between the parties in conflict, must be resolved at the request of either of the parties, by means of arbitration held in conformance with the Arbitration Law and under the Rules of Arbitration. The parties leave from now and forever the submitting of any litigation to any courts of a judicial or international order, excepting as expressed below in letter(k).

(b) The arbitration shall take place in Santo Domingo, Dominican Republic, and unless the Parties decided otherwise, the number of arbitrators shall be three, designated by

---

[5] It refers to the provision of ITABO´s By-Laws, which binds the CDEEE, which has been transcribed in Note No. 12 of the present petition.



*means of agreement between Parties or, in the event they do not reach an agreement, the arbitrators shall be designated in accordance with Title II of the Arbitration Rules, or in case of substitution, the applicable title.*

*(c) As established in Article 34 of the Arbitration Rules, after approval of the Board of Directors, the Parties may set the season of the arbitration part that any place outside of Santo Domingo, in the Dominican Republic or abroad, in which case each one of the Parties shall assume its expenses for transportation and lodging, and jointly all the expenses related to the transfer of the arbitration court and expenses of the Secretary of the arbitration. If one of the Parties of those transfer of the arbitration court, the requesting party shall pay the expenses incurred to such effect.*

*(d) The arbitration award pronounced to such effect shall be deemed to be the result of a proceeding initiated and effected in Santo Domingo, Dominican Republic.*

*(e) Any decision which may be rendered in this regard shall not be able to be appealed before any jurisdiction or course of the Dominican Republic or abroad, and shall be deemed definitive and binding for the parties immediately, and shall not be subject, for purposes of execution, to the requirements of Articles 1020 and 1021 of the Civil Procedure Code, as established by the arbitration in effect of the Chamber of Commerce and Production of the National District, in its Article 52. Any monetary penalty shall include legal interest as of the date of any noncompliance or other violation of said Contract until the date on which such penalty is paid, at a rate determined by the arbitrator(s).*

*(f) Any arbitration held pursuant to the above must be conducted in the Spanish-language.*

*(g) By these means the Parties irrevocably waive their right to resort to ordinary courts or, in so far as permitted by the Laws of the Dominican Republic, courts of exception in order to request the opinion of any courts in relation to any matter of law which may arise in its course of arbitration or with regard to the decision made by the arbitrators. Likewise, they irrevocably waive any right to object to or argue the validity or executory nature both of the arbitration proceedings and of the arbitration awards pronounced in conformance with the provisions of the presence Article, including any objection based on incompetence or inappropriate jurisdiction.*

*(h) For purposes of the present Contract, it is acknowledged, and the CDE agrees, that the CDE or its creditors shall always be governed by the provisions of the Commercial Code and common law consecrated by the Laws of the Dominican Republic, and shall not allege any immunity whatsoever regarding the arbitration process referred to in the present article.*

*(i) It is expressly agreed that if appropriate, either of the Parties in conflict may request that the arbitration court merge any arbitration proceeding, which may arise or be related to the present Contract with any arbitration which may arise or have relation to*



*the Company with one or more of the Basic Contracts. Such consolidated arbitration must be resolved by the arbitration court designated to hear the arbitration proceeding, which had been initiated first.*

*(j) The parties irrevocably waive any right to object to or appeal any decision or arbitration award resulting from the arbitration, so that such decision or arbitration award shall be deemed definitive and binding for all, and shall be obeyed without any delay whatsoever. Any arbitration award or arbitration decision may be executed by any competent court.*

*(k) In the event that the Dominican Republic ratify the New York Convention and/or the Panama Convention, the parties agree to resolve their disputes by means of international arbitration, in conformance with the rules of the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988, and under the laws of New York. No arbitrator designated according to the present article shall be a citizen of the jurisdictions of any of the Parties, nor may said arbitrator be an employee or agent or former employee or former agent of any of said persons.*

### E. Agreement for the Transfer of the Energy Sale Contract

"7.1 Choice of Norms.

> *The parties agree that the agreements referring to liability/responsibility and compensation, force majeure, dispute resolution, expenses, headings, commercial acts, selection of Law, integrity of the Contract, participation of third parties, amendment, waiver of rights, relationship of the parties, survival, language, other guarantees, consents, divisibility, injury, confidentiality, successors and grantees and copies, are those agreed to by the CDE in articles VII, VIII, IX, and X of the Contract for Sale of Energy."*

8. The stipulations to which the parties agree concerning the national arbitration jurisdiction of the "Chamber of Congress of Production of the National District Inc.," today known as the "Chamber of Commerce and Production of Santo Domingo Inc.," provided for by Law No. 50-87 of June 4, 1987, were supplanted by the obligatory holding of an international arbitration before the International Chamber of Commerce (ICC), because of the fact that the Dominican Republic had ratified the New York Convention by means of Resolution No. 178-01 of the National Congress, duly promulgated by the Executive on November 8, 2001. In the event of occurrence of such events or suspensive condition, the Basic Contracts in their relevant part provide the following:

> *"If the Dominican Republic ratifies the New York Convention on the acknowledgment and execution of foreign arbitration rulings adopted by the United Nations Conference on International Commercial Arbitration, dated June 10, 1958, and/or the Panamá Convention on Commercial Arbitration, the parties agree to resolve their disputes through international arbitration, in*

13



*accordance with the Arbitration Rules of the International Chamber of Commerce (ICC Rules of Conciliation) dated January 1, 1988, and under the laws of New York. No arbitrator named according to the present article shall be a citizen of any of the jurisdictions of the parties . or of the jurisdiction of any of the initial shareholders; neither may that arbitrator be an employee or agent/representative or former employee or agent/representative of any of said persons."*

9. Having stated this, it is in order to explain and defend now, that the arbitration commitment clauses in the context of the negotiations of the Capitalization of ITABO, are valid and the parties were able to sign them, as they did, and in no way is the "public order" involved in those corporate or contractual relationships, because of the management delegated or rights acknowledged to the investors in such process, which does not injure the **public interest** of the service assumed, which is governed by other principles which to not have to do properly with the relationships between the parties.

10. The first things to be pointed out that should be invoked are: (i) that this is a question of the fact that there has been on the part of CDE (original owner of the state's interest) a waiver of a privilege or immunity, in which is acknowledged the commercial nature of its intervention as a participant in the process of capitalization, and which is expressly and eminently contemplated in the contracts[6]; and (ii) the submission of both the new enterprise, that is to say ITABO, and of its original shareholders (among them "CDE"), to the arbitration jurisdiction, and the express waiver of judicial jurisdiction, for the solution of their disputes.[7]

11. Those agreements between the parties about the arbitration clauses are the law between them (*"pacta sunt servanda"*). That is equivalent to saying that in accordance with arts. 1134 of the Dominican Civil Code and article 631 of the Commercial Code, any claim, dispute, difference, or litigation between them must be petitioned before the arbitration jurisdiction chosen by the parties. The arbitration commitments being express and formal, one can state that in corroboration of our arguments, these texts in part provide the following:

    Art. 1134 Civil Code:

    *"The agreements legally made have force of law for those who have made them. They cannot be revoked except by mutual consent or for the causes which are authorized by law.*
    *They must be executed in good faith."*

    Art. 631 Commercial Code:

---

[6] Please see Paragraphs Seventh and Eighth of Art. 58 of ITABO's Corporate By-Laws.
[7] Please see Art. 58, Paragraph Eighth of ITABO's Corporate By-Laws, applicable to the rest of the Basic Contracts, which establishes the application of the Commercial Code and common law in the relationship between the parties, and likewise on the applicable law of the State of New York in case of arbitration controversy before the CCI.

14



> "*The commercial courts shall hear: 1st: All disputes related to commitments and transactions between businessmen, merchants, and bankers;2nd.    Disputes between associates, over a commercial company; 3rd. disputes concerning acts of commerce between any persons.*
>
> *Nevertheless, the parties may, when a contract, agree to submit to arbitrators. the disputes, listed above, when they occur.*"

12.    The Basic Capitalization Contracts do not escape the scope of those provisions, under the rule, as indicated in the work *Escrits*, in honor of Henri Motulsky[8], continue the most authorized doctrine, of:

> "Arbitration, being a private justice of (normally) contractual origin, is limited by the boundaries of the autonomy of the will."

13.    The Master Mattheiu de Boisséson makes a similar statement in his work *Le droit francais de l'arbitrage Interne et International*[9], in which he offers us with irrefutable authority the following clarifying and precise observations:

> "When valid, that is to say, when it refers to **litigations that fall, in application of article 631 of the Commercial Code, within the competence of the commercial court**, the commitment clause supposes that the litigation is between those who can submit to arbitration through a commitment, keeping in mind the public order."[10]

> "It is possible to insert into the By-Laws of those partnerships a commitment clause.    On multiple occasions it has been judged that the same rule applies to associations in participation (partnerships) whose activity is commercial.

> For the validity of its insertion into the by-laws of a partnership not be questioned, the commitment clause must be intended for disputes which are liable to occur between partners of the partnership.

> The partners are by definition the persons who hold shares or parts in the partnership.    The corporate mandataries, if at least they hold for themselves a fraction of the capital, may also conclude a commitment clause."[11]

> "Jurisprudence has extended the application of the principle stated in Art. 631 of the Commercial Code to litigations which oppose **not only the partners of a**

---

[8] Henri Motulsky: *Escrits, Etudes et Notes sur L'arbitrage*. Dalloz, Paris, 1974, Page 60.
[9] Matthieu de Boisséson, GLN Joly Editions, Paris, 1990.
[10] Matthieu de Boisséson, Op. Cit, Page 30 (in-fine).
[11] Op. Cit., Page 44.

15



**partnership, but also the shareholders vis-à-vis the partnership itself** (for example, with regard to the subscription of shares)."[12]

## V. Refutation of CDEEE´s Argument

14. In its oral conclusions, presented to the court in the said last hearing, in an attempt to ignore the authority and link/binding nature of the arbitration clauses and the legal provisions which complimentarily uphold it, CDEEE has attempted, with superficial arguments and without any legal basis, to oppose ITABO´s requests by invoking the discredited notion of "non-arbitrationality" of the State, and which in synthesis it stated by alleging the following:

> "…that the jurisdiction of the empowered judicial order is competent, by virtue of the provisions of article 1004 of the Civil Procedure Code, which establishes that the questions submitted to the decision of the court are outside of the competence of the arbitrational jurisdiction, because they are matters which interest the "public order, the State ….."

15. Such a fragile and unsubstantiated argument, given what has been agreed in all of the contracts celebrated between the parties on the occasion of the capitalization process, including ITABO´s own Corporate By-Laws, evaporates before the irresistible rule of the arbitration clauses signed, attributing express competence to the International Arbitration Court of Paris contemplated by the New York Convention of 1958.

16. ITABO´S own Corporate By-Laws, in their Article 58[13], signed by CDE, and whose rights now CDEEE attempts to exercise as plaintiff, by referring to the capacity of its shareholders and signers, establish that:

> "…
>
> The shareholders, by acquiring such a capacity, by virtue of the present by-laws, **irrevocably waive their right to resort to the ordinary or exceptional courts** in order to request the Court´s opinion, insofar as the Law permits, in relation to any matter of law/right which may arise in the course of the arbitration or with respect to the decision taken by the arbitrators. Likewise, **they irrevocably waive any right to dispute or argue the validity or enforcement nature** of both the arbitration procedures and the arbitration awards pronounced in conformance with the provisions of the present article, **including any objection based on incompetence or inappropriate jurisdiction.**
>
> For the purposes of the present article, it is acknowledged that the **CDE or its creditors shall always be governed by the provisions of the Commercial Code of the Dominican Republic and Dominican Common Law**, so that

---

[12] Op. Cit., Page 45.
[13] Paragraphs Seventh and Eighth.

> no immunity whatsoever shall be alleged concerning the arbitration proceeding referred to in the present article.
> ..."

17. The points made, doctrinal texts, quotes from jurisprudence, and other annotations consigned below, shall demonstrate the inappropriateness and inapplicability in the matter of the legal text pointed out by CDEEE as the basis of its allegations, and the powerful reasons that make the admissibility of the exception of incompetence and declination proposed by ITABO imperative.

18. From the simple analysis of the facts and petitions contained in the lawsuit in question, one perceives clearly that the claims made by CDEEE consist of differences and/or disputes which (even though CDEEE has not specified the capacity in which it acts), can be interpreted as disagreements between shareholders, or between shareholders and the partnership itself, or within the Board of Administration related to the interpretation and application of ITABO's Corporate By-Laws. Definitively it is a question of the scrutiny of ITABO'S administrative performance and the possible responsibility/liability of its directors, or of ITABO itself, as CDEEE improperly alleges, which are questions of a commercial nature.

19. All of those documents contain what both parties, at the moment of their signing, freely agreed, and to which no allegation can be opposed in the sense that it is a matter which "is of the public interest," when the origin of the difference is based on a commercial contractual relationship between two parties, who have acted as private parties.

20. Thus, for purposes of demonstrating the inappropriateness of CDEEE's request for rejection, under the mistaken argument of art. 1004 of the Civil Procedure Code, we cite the well known writer Jean Robert,[14] who with respect to the sense and scope of art. 1004 of the Civil Procedure Code, makes the following remarks:

> 33.- The text of former art. 1004 CPC, together with art. 83, led one to discard from arbitration the matters which "concern" the public order/interest. The drafting of art. 2060 of the Civ. C. by Law dated July 5, 1972, which prohibits commitments in subjects which "interest" the public order is likewise a **total ambiguity**, as if letting one think that by the text's instituting all conventional repeal to the laws which "interest" the public order (art. 1006 Civ. C.), there would be a coincidence of the public order of merits and jurisdictional public order.
>
> Since 1950, nevertheless, jurisprudence, based on arts. 1004 and 82 at that time in effect, has indicated that it was not sufficient to prohibit a commitment, that the subject in question should give rise to a regulation called on to be of public order, but rather than the agreement/convention referred to as commitment **effectively violate the public order (41).....**

---

[14] L´arbitrage, Droit Interne-Droit International Privé, 6th Edition, Dalloz, Paris, 1993, Pages 28 and 29.

17



Particularly glorious in its expression is the ruling of the Court of Paris dated June 15, 1956 (43), according to which "the nullity of the commitment is not derived from the fact that the litigation touch on questions of public order, but solely from the fact that **public order has been violated.**"

Although with different formulations, a series of decisions has been pronounced in that same regard over the course of years."

21.   CDEEE's attitude, with the bringing of the lawsuit which concerns us, is framed within a position which is seriously criticized internationally.  As the most authorized doctrine[15] so well expresses it:

"This need for a new examination imposes itself, in a particularly overwhelming manner, for the idea according to which persons of public right are incapable of signing a commitment.   This axiom is no longer followed by the principal interested parties."

"There are many contracts in which the State, a public, industrial, or commercial establishment signs a commitment clause; and that phenomenon proves that the authorities who sign those contracts had considered it natural that the differences which might result from them could be submitted to arbitration.   That **those authorities now come to deny their signature,** as shown by some proceedings, is reproachable; since every act of this nature represents a **violation of the very notion of the respect of contracts,** worsened by being a fact of the instituted powers to watch over the general interest."

22. And it adds:[16]

"Since the moment when the public body is deliberately placed on the same plane as private parties, arbitration is open to it under the same conditions as to the former; that is to say, that **the commitment is possible for any public establishment which concludes a contract of private law,** and that the commitment clause restricted to commercial matters can be adopted by public, industrial, and commercial services and by public establishments of that same nature.

It is sufficient then that the agreement/convention in which the commitment clause is inserted have the nature of an **act of commerce/trade "by nature"** in the sense of art. 632 so that in conformance with art. 631-3[rd] of the same Code, commercial competence must be admitted: that is to say that **the commitment clause is valid in that same condition.**"

---

[15] Henri Motulsky, Op. Cit. Page 85.
[16] Henri Motulsky, Op. Cit. Page 91.

18



23. We now allow ourselves, in expanding on those texts, to mention the valuable principles which in the international realm, the doctrine invoked has had the occasion to establish. Thus it is that the said Master Jean Robert,[17] when referring to the principle of incompetence of national jurisdictions to issue pronouncements on a matter submitted to the arbitration jurisdiction according to the will of the parties, states:

> "121. *Incompetence of jurisdictions.* The double principle affirmed by art. 1458 is that of the incompetence of jurisdictions of the State to hear a litigation submitted to an arbitration agreement, but at the same time the principle of the relative nature of this incompetence.
>
> The relative nature in itself is a consequence of the incompetence, by only referring to the existence of an arbitration agreement, it would cease to have effect in the event that the plaintiff in the petition having manifested, through the empowerment which it has made of the jurisdiction that he does not consider himself bound by the agreement, the defendant should acquiesce by the sole fact of accepting the debate on the merits and not propose the exception of incompetence. From that it is thus derived that **the defendant that understands that the litigation is resolved by arbitration, has the obligation of opposing the exception of incompetence before/against any defense.**
>
> Having said this, the court whose incompetence is thus proposed must give satisfaction to the request, nevertheless with the distinction opened by art. 1458 and which is nevertheless important.
>
> The text in effect understands that it gives a particular treatment to two different situations, according to which at the moment when the litigation is brought before the jurisdiction of the State, the arbiter has previously been or not been empowered.
>
> **123. If the arbitrator has already been empowered with the litigation, the jurisdiction of the State must, without another examination, declare itself to be incompetent.** This is the consequence of right consecrated for the first time by art. 1466, and which gives to the arbitrator, whose jurisdictional power is contested in its principle or scope, the power to rule on his investiture. If in effect, in the case of an arbitration agreement (and more frquently of a commitment clause), one of the parties empowers the jurisdiction of the State despite the fact that the arbitrator had previously been empowered by the other party, the former/first one  is understood to respond to the jurisdiction of the arbitrator. Whereas in the rule of the former Civil Procedure Code, the question was frequently discussed of knowing whether it corresponded to the arbitrator whose jurisdictional power was contested, to supersede or not his decision until the jurisdiction of the State had made a pronouncement on the existence or validity of the arbitration agreement, the new law has resolved the debate, by granting the arbitrator the power to make a ruling. From the moment when he

---

[17] Op. Cit., Page 101.

does so (under reservations of the eventual control of the sentence which he may render), **the principle of distribution of competences and the concern of giving absolute primacy to the agreement of the parties, demands that the jurisdiction of the State empowered after the arbitrator be declared incompetent.**

**124.** In the event that the arbitrator has still not been empowed, which then supposes the existence of a commitment clause and the absence of commitment, **the jurisdiction of the State must even so still be declared incompetent...**

24. Regarding this last aspect, we have already pointed out that, in the case which concerns us, the arbitration clauses signed between the parties retain all their authority and effect, and none of them has been attacked by an action which seeks to declare their nullity, ineffectiveness, or inapplicability.[18] They are therefore applicable.

25. Nevertheless, the arbitration clause has an *in rem* effect with respect to particular third parties, such as the courts of common law or the judicial entity. In that regard, we resort to numerous other comments which support ITABO's petition. In the opinon of Matthieu de Boisseson:[19]

"The commitment clause has an effect, not only with regard to the signatory parties, but also with regard to the Judges."

"One of the essential consequences of the insertion of a commitment clause in a contract is **the incompetence of the judicial jurisdictions** to hear the litigations in question."

"Article 1458 of the New Civil Procedure Code provides the following: "When a litigation of which an arbitration court is empowered by virtue of an arbitration agreement is brought before a jurisdiction of a State, the later must declare itself incompetent."

"If the arbitration court has not yet been empowered, the jurisdiction must likewise declare itself incompetent unless the arbitration agreement is manifestly null and void."

"In the two cases, the jurisdiction cannot invoke its incompetence automatically."

"Article 1458 summarizes and consecrates the principles of the previous jurisprudence over the disempowerment of ordinary judges in the presence of an arbitration agreement.

### "Principle of Disempowerment of Judicial Courts."

---

[18] Please see Note No. 33 of the writ of conclusions deposited on March 30, 2005.
[19] Op. Cit., Page 79 and following.

20



"**85.** Before or after the incorporation of the arbitration court, one or the other party, pushed by a legitimate interest or **tempted by a strategy of obstruction,** can try to place an obstacle in the way of the arbitration proceeding by attempting an action in the ordinary courts, whether before or after the incorporation of the arbitration court. Article 1458 of the New Civil Procedure Code distinguishes, as we have said, the two hypotheses in which those actions can intervene according to whether or not the arbitrator has been empowered."

"**86.** If it is the merits of the litigation that are brought before the judicial court, the principle of disempowerment is applied purely and simply: **The court must declare itself incompetent.** The exception resulting from the existence of the commitment clause constitutes an exception of procedure which, in order to be receivable, must be invoked before the judicial jurisdiction before any defense on the merits."

"Even if it is a question of a demand in nullification, whether of the arbitration agreement or the contract in which said agreement is included, **the judicial judges must likewise declare themselves incompetent ... "**

"**Relative Nature of Incompetence of the Jurisdictions of Judicial Order.**[20]

"Consequently, the courts cannot be empowered automatically of the question of their incompetence in the face of an arbitration agreement. The parties are the ones who should in effect invoke this exception and address it to the courts, or otherwise, waive them expressly, or tacitly by participating in a judicial instance."

"**The Influence of the State Contracts on the Nature of International Arbitration"**

"Arbitration, as a way of resolving litigations which arise between private parties, is frequently adopted to resolve differences which place a private enterprise against a State (or its dependency) or a foreign public/governmental enterprise. Frequently the execution of such arbitration requires recourse to rules of public international law or at least to the rejecting of the rules of private law."

"Should we consider that the application of rules of a public nature within the framework of international commercial arbitration leads to a questioning of the principles governing the matter?"

"This conclusion must be rejected. **In effect, it is because the object of the litigation is commercial, more precisely economic, that it can be submitted to a kind of specific resolution, even when a State is party in the litigious relationship.** If on the other hand the litigation arises between two States

---

[20] Op. Cit., Page 86.

21



and refers to the exercising of their prerogatives of public power, arbitration can result only in the scope of international public law."

26. Itabo´s intention has been more recently acknowledged by the Dominican Legislator, by establishing the modifications contemplated in Law No. 845 of 1978, on art. 1003 of the Civil Procedure Code, by which it established absolute freedom, in the sense that including the State, "*any person can establish commitments on the rights of which he may freely dispose...*"; and ordered that that text up to 1028 of the Civil Procedure Code are applicable unless contrary to said Law 845.

27. It is worth mentioning that that last legal provision modified the regime of arbitration matters, including art. 1004. Now, art. 1004 *does not limit the parties* who can assume an arbitration commitment, but rather the *matter* which can be subject to arbitration, this last not being the case.

28. We know that the Basic Capitalization Contracts refer to commercial matters, and not to the service provided to users for the generation and distribution of electrical energy, which is the public service in itself, and which is not the object of what CDEEE attempts to claim from Itabo, based on said contracts.

29. Lastly, art. 15 of Law 50-87 dated June 4, 1987, on Chambers of Commerce and Production, expressly modified and repeated part of art. 1004 of the Civil Procedure Code, instituting a new regulation on the subject, concerning matters related to the State, permitting that they be submitted to the arbitration court which would be created based the Board of Conciliation and Arbitration and the Regulation pronounced to such effect: "...**the State or any of its dependencies, whether they are City Halls, Townships, agencies, autonomous and decentralized enterprises and institutions of the State and general public administration entities,** no matter what the nature of the dispute..."

30. From the above, therefore, one concludes that it is absolutely invalid for CDEEE to allege to invoke the rejection of ITABO´s exception of incompetence based on a non-existent legal provision, as is the part invoked of art. 1004 of the Civil Procedure Code, which makes ITABO´s means of defense irrefutably admissible.

31. For such reasons, and those which may be supplied with your elevated criteria of justice, the Empresa Generadora de Electricidad ITABO, S.A., very respectfully requests, through the undersigned lawyers, that you be pleased to:

> **FIRST:** ACCEPT each and every one of the requests and conclusions read in the hearing to that effect held on March 30[th] of the year 2005, relative to the lawsuit in question, as well as those other which were offered orally, and of which record was taken and which are certified; and consequently that you rule by accepting such conclusions in the order proposed, DECLARING the incompetence of power because of the subject matter (*ratione materiae*) of this honorable jurisdiction, to hear and rule on the demand for rendering of accounts and other ends, which concerns us, and ORDERING to Decline the

22



matter in favor of the jurisdiction which according to the arbitration clauses contained in the Basic Capitalization Contracts, is the International Arbitration Court of the International Chamber of Commerce of Paris; all, with all of their consequences of law.

Under all classes of reservations of rights.

We request and hope to deserve from you justice, in the city of Santo Domingo, National District, this fourteenth (14th) day of the month of April of the year 2005 (two thousand five).

Respectfully,


Lic. Giselle Leger                    Lic. Carlos Radhamés Cornielle


MFCS / June.05 / IITABO.Itabo05-004d.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this thirteenth (13th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293

23



| Translation certified by Mark Freehill |
| MARK FREEHILL COMMUNICATION SERVICES |
| US Certified Federal Court Interpreter No. 20293 |

Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address:  CE No. 277 / PO Box 149020 / Coral Gables, FL  33114-9020  USA
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo*, in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented in the Spanish language:

**ACT NUMBER 147/2005**.- In the city of Santo Domingo de Guzmán, National District, this twenty-seventh (27th) day of the month  of May of the year Two Thousand Five (2005).----------------------------------------------------------------------------------------------

**ACTING AT THE REQUEST** of the **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.,** a commercial company incorporated and organized pursuant to the laws of the Dominican Republic, with its corporate domicile open at Avenida Rómulo Betancourt 1108, Sector La Julia, in this city of Santo Domingo, duly represented by its General Manager, Mr. Mark Tracey, of Canadian nationality, of legal age, bearer of the Personal Identification Card No. 001-1793523-9, of domicile and residence in this city of Santo Domingo, acting in his capacity as Legal representative of said company in accordance with the mandate by the corporate directive entity of the company; **I, Ruperto de los Santo María, bailiff ordinary of the Judgeship of the Peace of the 4th , bearer of the personal and electoral identification card No. 001-0443349-5, of domicile and residence at Calle Juan Henríquez Dunant ·18, Mira Flores, National District; EXPRESSLY** and pursuant to the above request, have come, within this same city: **FIRST**:  to Avenida Independencia corner Fray Cipriano de Utera, Centro de los Héroes, in this city, which is the place where I have been informed that the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)** has its domicile, and once there, it being precisely 10:12 A.M. in the morning, and speaking personally with Imbert Moreno, who informed me that he is the lawyer of the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)**, as he declared to me and which is of my personal knowledge,

1



and who when invited by me to countersign the present act has answered to me that he signs the act; **SECOND**: to Ave. 27 de Febrero No. 205, Edificio Bollero II, Suite 205, which is the place where I have been informed that **DR. ANGEL MONERO CORDERO** has his domicile, and once there, it being precisely 11:15 A.M. in the morning, and speaking personally with (illegible) Arias, who informed me that she is the secretary of my enjoining (*sic*) party; **THIRD**: To Calle Luis F. Tomen No. 359 Esq. Winston Arnaud, Ensanche Quisqueya, which is the place that I have been informed that **DR. CARLOS MANUEL PADILLA** has his domicile, and once there, it being precisely 10:45 A.M. in the morning, and speaking personally with Carlos M. Padilla, who informed me that he is (*illegible*) of my notifying/enjoining (*sic*) party; **I HAVE NOTIFIED** each one of my notified parties separately and individually, the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)**, in its capacity of party sued in the judicial action described below, and Messrs. **Dr. ANGEL MONERO and Dr. CARLOS PADILLA** in their capacities as empowered lawyers incorporated in the judicial suits brought before the Dominican courts, that my notifying party the **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.**, by means of the present act notifies it, declares, and warns it of the following; **FIRST**: that in the heading of the present act and attached to same it notifies it of an unextended copy of the documents related to a judicial suit brought by the notifying party against my notified party to be heard before the **United States District Court for the Southern District of New York,** for purposes of obtaining an order to suspend or discontinue and non-novation of the judicial actions brought before the courts of the Dominican Republic to which same refer. The documents are described as follows: A) Order to Show Cause dated May 26, 2005; B) Communication Request postponement Hearing, C) Citation/Summons and Demand/Suit; D) Memorandum of Right in Support of the request by ITABO for Provisional Compesnation in Favor of Arbitration, and in support of an Order to Show Cause. E) Statement by Carlos Radhamés Cornielle; F) Statement Giselle Marie Leger; G) Statement Javier Navarro; H) Statement according to Regulation 7.1.

2



**SECOND**: By means of this same act I inform my notified party that the hearing to hear the case for said suit by **Judge Richard M. Berman, U.S. D.J. of the United States District Court for the Southern District of the City of New York** has been set for Wednesday the First (1st) **day of June of the year 2005**. So that my notified party the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)** formulate their arguments of defense before said Court.

UNDER ALL RESERVATIONS OF LAW AND ACTIONS.------------------------------

And I, the undersigned bailiff, have so notified my notified party, the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)**, so that thereafter it not allege ignorance, leaving with it a copy of same in the hands of the person with whom I already said I have spoken, as well as its original, and the rest of the legalized copies are duly initialled and stamped by me, bailiff who so certifies and gives faith. ----------------------------------------------------------------------------------------------------

This act consists of seventy-two (72) sheets and its cost is RD$3,000 Pesos.

(Circular Seal: RUPERTO DE LOS SANTOS MARIA
National District
Bailiff Ordinary of the Judgeship of the Peace of the 4th Circumscription)

RECEIVED
CORPORATE UNIT (illegible)

27-05-05

27 May (illegible)

OFFICE OF LEGAL CONSULTANT
BY: _____
TIME: _____

MFCS / June.05 / ITABO.Itabo05-001.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this eighth (8th) day of the month of June of the year two thousand and five (2005).

_____
Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293



Translation certified by Mark Freehill
## MARK FREEHILL COMMUNICATION SERVICES
US Certified Federal Court Interpreter No. 20293
Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address:  CE No. 277 / PO Box 149020 / Coral Gables, FL  33114-9020  USA
RNC 1-22-01399-7

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo*, in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented in the Spanish language:

**ACT NUMBER 149/2005.** In the city of Santo Domingo de Guzmán, National District, this thirtieth (30th) day of the month of May of the year Two Thousand Five (2005).——

**ACTING AT THE REQUEST** of the **COMPANY GENERADORA DE ELECTRICIDAD ITABO, S.A.**, a business company incorporated and organized pursuant to the laws of the Dominican Republic, with its corporate domicile at No. 1108 Avenue Rómulo Betancourt, Sector La Julia, in this city of Santo Domingo, duly represented by its General Manager, Mr. Mark Tracey, of Canadian nationality, of legal age, bearer of the Personal Identification Card No. 001-1793523-9, of domicile and residence in this city of Santo Domingo, (illegible) who acts in his capacity as legal representative of said company, in accordance with the mandate of the corporate directive body of said company; **I Ruperto de los Santo María, bailiff ordinary of the Judgeship of the Peace of the 4th Circumscription of the National District, bearer of the Personal and Electoral Identification Card No. 001-0443349-5, of domicile and residence at No. 18 Juan Henríquez Dunant Street, Mira Flores, National District;** **EXPRESSLY** and pursuant to the above request, have come, within this same city: **FIRST**: to Avenue Independencia corner Fray Cipriano de Utera, Centro de los Héroes, in this city, which is the place where I have been informed that the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)** has its domicile, and once there, it being precisely 8:02 A.M. in the morning, and speaking personally with Ramón Tejada, who informed me that he is the lawyer of the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)**, as he swore to me and of which I am personally aware, and who invited by

1



me to  countersign the present act has answered to me:  that the act was countersigned; **SECOND**: to Ave. 27 de Febrero No. 205 Edificio Bollero II, Suite 205, which is where I have been informed that **DR. ANGEL MONERO CORDERO** has his domicile, and once there, it being precisely 8:45 A.M. in the morning, and having spoken personally with Ingrid Arias, who told me that she is a secretary of my notifying/enjoining  (*sic*) party; **THIRD**:  To Calle Luis F. Tomen No. 359 Esq. Winston Arnaud, Ensanche Quisqueya, which is the place where I have been informed that **DR. CARLOS MANUEL PADILLA** has his domicile, and once there, it being precisely 8:20 A.M. in the morning, and speaking personally with Awilda Martínez, who informed me that she is a secretary of my notifying/enjoining  (*sic*) party; **I HAVE NOTIFIED** separately and individually each one of my notified parties, the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)**, in its capacity as party defendant in the judicial action which shall be indicated below, and Messrs. **Dr. ANGEL MONERO and DR. CARLOS PADILLA,** in this capacities as empowered lawyers incorporated in the judicial suits brought before the Dominican courts, that my notifying party **EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.**, by means of the present act notifies it, declares, and warns it of the following; **FIRST**:  That in the heading of the present act and attached to same I have (*illegible*) an  unextended copy of the documents related to the judicial suit brought by the notifying party against my notified party to be heard before the United States District Court for the Southern District of New York, for purposes of obtaining an order of suspension, discontinuation, and non-novation of the judicial actions brought before the courts of the Dominican Republic to which same refer.  The documents are described as follows:  A) Order to Demonstrate Cause dated May 26, 2005; B) Communication of Request for postponement of Hearing, C) Citation/Summons and Suit/Demand; D) Memorandum of Right in Support of ITABO's petition for Provisional Compensation in Favor of Arbitration, and in support of an Order to Show Cause. E) Statement of Carlos Radhamés Cornielle; F) Statement of Giselle Marie Leger; G) Statement Javier Navarro; H) Statement according to Regulation 7.1; H) The corresponding attachments.



**SECOND**:  By means of this same act I inform my notified party that the hearing to hear the case for said suit/demand by Justice Richard M. Berman, U.S.D.J. of the United States District Court for the Southern District of New York City, has been set for Wednesday the (illegible) of June of the year 2005.  In order that my notified party the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)** make its defense arguments before said Court.

UNDER ALL RESERVATIONS OF LAW AND ACTIONS.-----------------------------

And I, the bailiff undersigned, have so notified my notified party, the **CORPORACION DOMINICANA DE EMPRESAS ELECTRICAS ESTATALES (CDEEE)**, so that afterwards it may not allege ignorance, leaving with it a copy of same in the hands of the person with whom I already said that I have spoken, which like its original and other legalized copies are duly initialled and sealed/stamped by me, bailiff who so certifies and gives faith.----------------------------------------------------------------------------------------

This act consists of seventy-two (325) (*sic*) sheets and its cost is RD$3000 Pesos.

(Circular Seal:  RUPERTO DE LOS SANTOS MARIA
National District
Bailiff Ordinary of the Judgeship of the Peace of the 4th Circumscription)

                      RECEIVED
                      CORPORATE UNIT (illegible)

                      30 May (illegible)

                      OFFICE OF LEGAL CONSULTANT
                      BY:_____
                      TIME: _____

MFCS / June.05 / ITABO.Sentencia 003-2005-00678.Suprema Corte de Justicia.English

MADE AND SIGNED in Santo Domingo, Dominican Republic this eighth (8th) day of the month of June of the year two thousand and five (2005).

_____
                            Mark Freehill
         U.S. Certified Federal Court Interpreter No. 20293