**BAKER & McKENZIE**

Baker & McKenzie LLP
805 Third Avenue
New York, New York 10022, USA

Tel: +1 212 751 5700
Fax: +1 212 759 9133
www.bakernet.com

**Asia Pacific**
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

**Europe & Middle East**
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**North & South America**
Bogota
Brasilia
Buenos Aires
Calgary
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

July 1, 2005

<u>BY HAND DELIVERY</u>

Honorable Richard M. Berman
United States District Judge
United States Courthouse
40 Centre Street, Room 201
New York, New York 10007-1581

Re: <u>*Empresa Generadora de Electricidad ITABO, S.A. ("ITABO") v. Corporación Dominicana de Empresas Eléctricas Estatales ("CDEEE")*</u> (05 Civ. 5004)

Dear Judge Berman:

We represent plaintiff ITABO in the above-referenced matter.

Annexed please find certified translations of contractual provisions, Bylaws, and Dominican statutes cited in the Third Declaration of Giselle Marie Leger, which was served and filed with ITABO's reply papers on June 27, 2005. For the convenience of the Court, an updated version of the appendix to ITABO's reply brief (the table of exhibits) is also annexed hereto.

Respectfully Submitted,

Grant Hanessian

Enclosures

Cc: Steven Gerber, Esq. (by FedEx and email)
Hugo Chaviano, Esq. (by FedEx and email)
Susan R. Knox, Esq. (by FedEx and email)

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

# ITABO'S EXHIBITS

| Document | Location of Original in ITABO's Submissions | Location of Certified Translation in ITABO's Submissions |
|---|---|---|
| **1. Documents from the ICC Arbitration** | | |
| a. Request for Arbitration (without Exhibits) | Navarro-Velasco Decl. (May 25, 2005) Exh. 1 | June 14, 2005 Letter, Exh. 1A |
| b. May 18, 2005 fax from ICC | Second Leger Decl. (June 1, 2005) Exh. 5 | June 14, 2005 Letter, Exh. 1B |
| c. June 3, 2005 letter from ICC | Second Navarro-Velasco Decl. (June 27, 2005) Exh. 1 | With Original (Same Exh.) |
| d. June 8, 2005 letter from ICC to the parties | Second Navarro-Velasco Decl. Exh. 2 | With Original (Same Exh.) |
| e. June 10, 2005 letter from ICC to the parties and arbitrators | Second Navarro-Velasco Decl. Exh. 3 | With Original (Same Exh.) |
| f. June 13, 2005 letter from the arbitrators to ICC | Second Navarro-Velasco Decl. Exh. 4 | With Original (Same Exh.) |
| g. June 15, 2005 ITABO motion requesting interim relief | Second Navarro-Velasco Decl. Exh. 5 | With Original (Same Exh.) |
| h. June 16, 2005 letter from ICC to the parties with copy to the arbitrators | Second Navarro-Velasco Decl. Exh. 6 | With Original (Same Exh.) |
| i. June 17, 2005 letter from ITABO to ICC | Second Navarro-Velasco Decl. Exh. 7 | With Original (Same Exh.) |
| **2. Basic Contracts** | | |
| a. Stock Subscription Agreement | Navarro-Velasco Decl. Exh. 1A | June 14, 2005 Letter, Exh. 2A (Articles 12.1, 12.2, 12.3) July 1, 2005 Letter, Exh. A (Articles 6.2, 7.4, 12.1, 12.2, 12.3 and 13.3) |
| b. ITABO Bylaws | Navarro-Velasco Decl. Exh. 1A | June 14, 2005 Letter, Exh. 2B (Article 58) July 1, 2005 Letter, Exh. B (Articles 12, 37(b), 38, 39, 45, 47, 48, 49 and 58) |

| Document | Location of Original in ITABO's Submissions | Location of Certified Translation in ITABO's Submissions |
|---|---|---|
| c. Administration Contract | Navarro-Velasco Decl. Exh. 1B | July 1, 2005 Letter, Exh. C (Article 1 ("Dispute"), 3.3, 3.6, 3.7 and 6) |
| d. Exploitation Contract | Navarro-Velasco Decl. Exh. 1C | July 1, 2005 Letter, Exh. D (Articles 5(a), 5(i), 9(a), 9(k)) |
| e. Energy Sales Contract | Navarro-Velasco Decl. Exh. 1D | |
| f. Shareholder Agreement | Navarro-Velasco Decl. Exh. 1E | |
| **3. Documents from the First Chamber Action** | | |
| a. Bailiff's Act No. 1781/2004 (Demand) | Third Leger Decl. (June 27, 2005) Exh. A | With Original (Same Exh.) |
| b. Bailiff's Act No. 1798/2004 (Complaint) | Cornielle Decl. (May 25, 2005) Exh. 1 | June 14, 2005 Letter, Exh. 3A |
| c. ITABO's written arguments to the Court of Appeal | Cornielle Decl. Exh. 2 | June 14, 2005 Letter, Exh. 3B |
| d. May 27, 2005 Order | Second Cornielle Decl. (June 2, 2005) Exh. 1 | June 14, 2005 Letter, Exh. 3C |
| **4. Documents from the Fifth Chamber Action** | | |
| a. Bailiff's Act No. 422/2004 (Complaint) | Cornielle Decl. Exh. 3 | June 14, 2005 Letter, Exh. 4A |
| b. ITABO's written arguments to the Fifth Chamber | Cornielle Decl. Exh. 4 | June 14, 2005 Letter, Exh. 4B |
| **5. Documents Concerning Service on CDEEE** | | |
| a. Act No. 147/2005 | Second Leger Decl. Exh. 2 | June 14, 2005 Letter, Exh. 5A |
| b. Act No. 149/2005 | Second Leger Decl. Exh. 4 | June 14, 2005 Letter, Exh. 5B |
| **6. Other Documents** | | |
| a. Motion for Permanent Injunction | Third Leger Decl. Exh. B | With Original (Same Exh.) |
| b. *Hoy* Article re: Ambassador Hans Hertell | Third Leger Decl. Exh. C | With Original (Same Exh.) |
| c. OPIC letter to Dominican Republic President Mejia | Third Leger Decl. Exh. D | With Original (Same Exh.) |
| d. Article 58 of the Dominican Commercial Code | Third Leger Decl., ¶ 21[1] | July 1, 2005 Letter, Exh. E |

---

[1] Originally submitted in English; the original Spanish text is Exh. F to ITABO's June 30, 2005 Letter to the Court.

[Excerpts From the Contract for the Subscription of Shares, between CREP and ITABO, signed in Santo Domingo, Dominican Republic, 1999]

...

### 6.2. Acceptance of Contracts and Obligations

The Subscriber Corporation accepts without conditions or limitations the Bylaws in the form attached to this document as Attachment Document A, the Basic Contracts signed by the Parties and the obligations arising from same, as well as the Adjudication Award, and promises to fully comply with its obligations under this Contract and the other Basic Contracts.

...

### 7.4 Acceptance of Contracts and Obligations

The CDE accepts without conditions or limitations the Bylaws in the form attached to this document as Attachment Document A, all the Basic Contracts and the obligations arising from same, as well as the Adjudication Award, and promises to fully comply with its obligations under this Contract and the other Basic Contracts. In like manner, it undertakes and is obliged to provide the general services required by the Generator to carry out the business it is responsible for, in the manner as attested to in Attachment Document E.

...

## ARTICLE 12
## RESOLUTION OF DISPUTES

### 12.1 Notification of Dispute.

In the event that any dispute, controversy or claim should arise among the Parties with respect to this Contract or the non-compliance with, termination of or the validity of same, the Party wishing to declare a dispute must first notify the other Party of their intention identifying the matter under dispute.

### 12.2 Resolution by the Parties.

Within the 30 days after the delivery of the prior notification of the dispute, the Parties will make a good faith attempt to resolve such dispute via mutual consultations. In the event that the dispute should not be resolved via discussions within the thirty (30) days after the advance notification of same, any Party can refer the conflict to the principal executive officers of the Subscriber Corporation and the CDE and the Commission for further consideration. In the event that said individuals cannot resolve the conflict and the Parties do not reach an agreement within fifteen (15) days, or a greater period to which the parties agree, then the Parties shall be obligated to recur to the arbitration conducted pursuant to that which is subsequently provided for in this Article.



12.3   Arbitration.

(a)   Any dispute that may arise from or be related to this Contract and that may not be resolved by mutual agreement of the parties in conflict, must be resolved at the request of any of the parties, via arbitration held pursuant to the Law of Arbitration and under the Regulations of Arbitration. The parties waive from now and forever submitting any litigation to any court of the international or judicial order except for that stated below in item (k).

(b)   The arbitration will take place in Santo Domingo, Dominican Republic and, unless the Parties should decide otherwise, the number of arbiters will be three, designated by mutual agreement by the Parties, and in the event of not arriving at an agreement, the arbiters will be designated pursuant to Title II of the Arbitration Regulations, or in the case of substitution, the applicable title.

(c)   Just as established by article 34 of the Arbitration Regulation, upon approval of the Board of Directors, the Parties can set the seat of the Arbitration Tribunal in any place outside Santo Domingo, in the Dominican Republic or abroad, in which case, each one of the Parties will assume their expenses for transportation and lodging, and jointly all the expenses for the moving of the Arbitration Tribunal and the work of the Secretariat of said tribunal. If one of the Parties should oppose the moving of the Arbitration Tribunal, the expenses incurred for such effect will be borne by the requesting party.

(d)   The award that is handed down to this effect will be deemed to be the result of a procedure initiated and carried out in Santo Domingo, Dominican Republic.

(e)   Any decision that can be rendered in this regard, will not be appealable before any jurisdiction or court of the Dominican Republic or abroad, and will be deemed to be definitive and binding on the parties immediately, and will not be subject, for its enforceability, to the requisites of Articles 1020 and 1021 of the Code of Civil Procedure, as established by the arbitration regulation in effect of the Chamber of Commerce and Production of the National District, in its Article 52. Any monetary sanction will include the legal interest from the date of any non-compliance or other violation of this Contract until the date on which said sanction is paid, at a rate determined by the arbiter(s).

(f)   Any arbitration held by virtue of the above will be conducted in the Spanish language.

(g)   The Parties hereby irrevocably waive their right to resort to the ordinary courts or, to the degree allowed by the Laws of the Dominican Republic, those of exception to request the opinion of any court, with respect to any matter of law that may arise in the course of arbitration or with respect to the decision taken by the arbiters. In like manner, they irrevocably waive any right to challenge or dispute the validity or enforceability of the arbitration procedure as well as the awards handed down pursuant to that foreseen in this article, including any objection based on incompetence or inappropriate jurisdiction.



(h) For the purposes of this article, it is agreed, and the CDE agrees, that the CDE or its successors at all times will be governed by the provisions of the Code of Commerce and common law enshrined by the Laws of the Dominican Republic and therefore it will not enjoy any right as an entity of the Government of the Dominican Republic and will not claim any immunity insofar as the arbitration process to which this Article refers.

(i) It is expressly agreed that if it should be in order, any of the Parties to the conflict can request the Arbitration Tribunal to merge any arbitration procedure that may arise or be related to this Contract with any arbitration that may arise or be related to the Generator or with one or more of the Basic Contracts. Such consolidated arbitration must be resolved by the arbitration court designated to consider the procedure that may have been first initiated.

(j) The Parties irrevocably waive any right to appeal any decision or award that may result from arbitration, whereby any decision or award will be deemed to be definitive and binding on all and must be obeyed without any delay. Any arbitration decision or award can be enforced by any competent court.

(k) In the event that the Dominican Republic should ratify the New York Convention and/or the Panama Convention, the parties accept to settle their disputes via international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) of 1 January 1988, and under the laws of New York. No arbiter designated as per this article shall be a citizen of any of the jurisdictions of the parties nor of the jurisdiction of any of the initial shareholders, nor shall that arbiter be able to be an employee or agent, nor former employee or agent, of any of the said persons.

...

13.3   Commercial Acts: Immunity

The CDE agrees that the signature, execution and compliance by it of this Contract constitutes a private commercial act. Further, the CDE agrees, unconditionally and irrevocably, that (i) if any process may be initiated against it or its assets, with respect to this Contract or any transaction foreseen in it, (including an arbitration process), immunity will not be claimed with respect to said processes by it or on its behalf; (ii) it waives any right to immunity it may possess now or may acquire in the future in any jurisdiction with respect to any of said processes; and (iii) it consents in general, with respect to the execution of any judgment against it in any process (including any arbitration process) in any jurisdiction, in the giving of any remedy or the issuance of any measure in connection with said processes.

...



**MARK FREEHILL COMMUNICATION SERVICES**
US Certified Federal Court Interpreter No. 20293
Tel: 809-623-1959  Fax: 809-530-5571  Cel: 809-440-1981  mark.freehill@codetel.net.do
Calle 5, No. 12 , Residencial Santo Domingo, Santo Domingo, DOMINICAN REPUBLIC
International Address: CE No. 277 / PO Box 149020 / Coral Gables, FL 33114-9020 USA

I, Mark Freehill, United States Federal Court Interpreter No. 20293, duly certified by the United States Government's Federal Court Interpreter Program, a United States citizen, of legal age, married, translator/interpreter by profession, bearer of Dominican Personal Identification Card (*Cédula*) No. 001-1488708-6, resident in Santo Domingo, Dominican Republic, domiciled at *Calle 5, No. 12, Residencial Santo Domingo*, in this city; HEREBY CERTIFY AND BEAR WITNESS that the following is a true and accurate version in the English language of a document presented to me in the Spanish language:

[Excerpts From the Corporate Bylaws of
EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A. signed on 24 June 1997]

...

**ARTICLE 12: NO INTERFERENCE IN BUSINESS MATTERS.** Neither the shareholders nor their heirs, creditors, and other successors, may intervene in the business of the Company; all without prejudice to the right of the shareholders or their mandated agents to take part in the deliberations of the General Shareholder Meetings, and to exercise the other rights accorded them by these Bylaws.

......

**ARTICLE 37.- POWERS.**

Except as reserved by the provisions of article 14 of Law 141-97, the Board of Directors maintains the management and administration of the Company during the period in which the General Meeting is not deliberating and during that period it shall resolve any matter and carry out any act, as long as it is not among those exclusive attributions of the General Meeting. Consequently, without this listing being limiting, the Board of Directors, shall have the following powers, faculties and attributions.

...

b.   To handle the funds available pursuant to that foreseen in the Administration Contract.

...

**ARTICLE 38.- CASES WHEN A SPECIAL MAJORITY IS REQUIRED.**

The following resolutions of the Board of Directors must be agreed to unanimously by the members of the Board:



1

a.  To enter into contracts or operations involving loans, payment or similar obligations, on assets or rights of the Company, with companies linked to same or to its shareholders.

b.  To dispose of the assets that are essential for the activities of the company, via one or several accumulative operations that exceed fifty percent (50%) of the total value of the assets of the company, as recorded in the accounting books of same.

c.  To grant encumbrances over the assets of the company, when the amount of the encumbrance exceeds fifty percent (50%) of the total value of the assets of the company as recorded in the accounting books of same, except when it may be for the obtaining of credit with financial institutions duly authorized by the Monetary Board, in the Dominican Republic, or international or foreign financial institutions, with a risk qualification no less than BBB in the Standard & Poors classification or equivalent classifications utilized by other classifying companies, with similar characteristics.

d.  To enter into contracts of association, joint venture or other similar ones, between the Corporation and companies linked to same or to their shareholders.

e.  Acquisition of any title, or assignment or transfer of any title, of participation, shares, capital amounts or others, of companies linked to the shareholders of the Company.

f.  To grant powers, mandates or representations of any kind for carrying out any of the acts mentioned in the above items.

## ARTICLE 39.- RELATED COMPANIES

They are the subsidiary, affiliated or controlling companies. A company is a subsidiary with respect to another, when the latter controls the former and is affiliated with respect to the other or others, when all are under common control. Controlling companies are those that have the ability to control others, whether by their direct or indirect participation in over fifty (50%) percent of the capital, or in more than fifty percent (50%) of the votes in the meetings, or in direct control of the subsidiary or affiliate companies, with said control including the ability to designate individually or jointly one or more members of the board or exercise the administration of the business of the company through the designation and control of the executives.

...

## ARTICLE 45.- ON THE GENERAL MANAGER

Via the Contract entered into to that effect and as proposed by the members of the Board of Directors named by the Class B shareholders, the Company shall be able to designate a General Manager Administrator, whose functions shall be established by said Board of Directors.

2



...

## ARTICLE 47: THE ACCOUNTS *COMISARIOS*

In the Formative General Meeting and in the successive Ordinary Meetings which are held, at least one *Comisario* will be named, charged with presenting a report to the General Meeting the following year, on the situation of the Company, the balance sheet and on the accounts presented by the Board of Directors. Each class of shares shall have, if it should so decide, the right to designate an Accounts *Comisario*. The *comisario(s)* must be public accountants of acknowledged professional capacity and moral solvency, proposed by the external auditors' firm of the Company, or by any other auditors' firm, and can be re-elected one or more times.

In the case of refusal, resignation, death or impediment of the *Comisario* designated by the Ordinary Shareholders Meeting[1], when no designated *comisario* should exist, the designation or replacement shall take place via a writ by the Presiding Judge of the Court of Commerce of the domicile in which the company may have set its corporate domicile, pursuant to art. 57 of the Code of Commerce of the Dominican Republic, at the request of any interested party; however, the General Shareholders Board *(sic)* shall at all times be able to revoke the *Comisario* and name their substitute.

The First General Meeting and the subsequent Annual General Meetings shall decide on the compensation of the Accounts *Comisarios*.

**ARTICLE 48.-** The *Comisario* or *Comisarios* will prepare and deliver their report to the Secretariat no later than the date on which the convening notice is published or remitted for the holding of an Ordinary General Meeting in order for the shareholders to be able to receive same before the holding of the Ordinary General Meeting.

**ARTICLE 49.-** In addition to the powers, obligations which the Code of Commerce of the Dominican Republic entrusts to them, the Accounts *Comisario(s)* must examine, periodically and at least every three months, the regularity of the operations of the Company and present a signed report in this regard to the Board of Directors.

...

## CHAPTER VII

## ARBITRATION

**ARTICLE 58.-** In the event that in the deliberations of the Ordinary or Extraordinary General Meetings an impasse should arise that cannot be resolved by mutual agreement, the shareholders shall be obliged to resort to arbitration conducted pursuant to that which is subsequently provided for in this article. It will be likewise obligatory to resort to arbitration at all times, when differences or disputes should arise among the shareholders

---

[1] Here the original Spanish term used for a Shareholder Meeting is *Junta*, instead of *Asamblea* used elsewhere. The term *Junta* also refers to the Board of Directors - Translator

3



or between one or more of them and the corporation or within the Board of Directors related to the interpretation and application of these bylaws, should it be impossible to resolve it by common agreement among them.

Any dispute which, as per that which is established above, cannot be resolved by mutual agreement among the parties in conflict, must be resolved via arbitration held pursuant to the provisions of Law No. 50-87 of 4 June 1987 of the Dominican Republic and under the arbitration procedures and rules established by the Regulation of the Arbitration Tribunal of the *Cámara de Comercio y Producción del Distrito Nacional, Inc.*, of November 1988.

Said arbitration will take place in Santo Domingo, Dominican Republic and, unless the parties should decide otherwise, the number of arbiters will be three, designated by mutual agreement among the parties, and in the event of not arriving at an agreement, the arbiters will be designated according to the procedure established in Title II of the mentioned Regulation.

Just as established by article 34 of the Arbitration Regulation, upon the approval of the Board of Directors of the Council on Conciliation and Arbitration of the Chamber of Commerce and Production of Santo Domingo *(sic)*, the parties can set the seat of the Arbitration Tribunal in any other place. within the country or abroad, in which case, each one of the parties will assume their expenses for transportation and lodging, and jointly all the expenses for the moving of the Arbitration Tribunal and the work of the Secretariat of said tribunal. If one of the parties should oppose the moving of the Arbitration Tribunal, the expenses incurred for such effect will be on the account of the requesting party.

The award that is handed down to this effect will be deemed to be the result of a procedure initiated and carried out in Santo Domingo, Dominican Republic.

Any arbitration held by virtue of the above will be conducted in the Spanish language.

The shareholders, upon attaining that status, by virtue of these bylaws, irrevocably waive their right to recur to the ordinary courts or those of exception to request the opinion of the Court, insofar as the law allows, with respect to any matter of law that may arise in the course of arbitration or with respect to the decision taken by the arbiters. In like manner, they irrevocably waive any right to challenge or dispute the validity or enforceability of the arbitration procedure, as well as the awards handed down pursuant to that foreseen in this article, including any objection based on incompetence or inappropriate jurisdiction.

For the purposes of this article, it is acknowledged that the CDE or its successors at all times will be governed by the provisions of the Code of Commerce of the Dominican Republic and Dominican Common Law, whereby no immunity will be claimed insofar as the arbitration process to which this article refers.

It is expressly agreed that if it should be in order, any of the parties to the conflict can request the Arbitration Tribunal to merge any arbitration procedure that may arise under or be related to these bylaws with any arbitration that may arise or be related to other arbitration actions if the principal motive for the disputes are derived from or related to

4



these bylaws. Such merged arbitration must be resolved by the arbitration court designated to consider the procedure first initiated. Except as provided in the preceding paragraphs may provide otherwise, the right of the parties to proceed with the resolution of the disputes via arbitration established in these bylaws will be independent of their right or the right of other entities to proceed with the resolution of their disputes as per that which is established in the agreements or contracts signed by them.

The shareholders and the Company waive any right to appeal any decision or award that may result from arbitration, therefore any decision or award will be deemed to be definitive and binding on all and must be obeyed without any delay. Any arbitration decision or award can be enforced by any competent court.

If the Dominican Republic should ratify the New York Convention on the recognition and enforcement of foreign arbitration sentences adopted by the United Nations Conference on International Commercial Arbitration on 10 June 1958, and/or the Panama Convention on Commercial Arbitration, the parties accept to settle their disputes via international arbitration, pursuant to the Rules of Arbitration of the International Chamber of Commerce (ICC Rules of Conciliation) of 1 January 1988, and under the laws of New York. No arbiter designated as per this article shall be a citizen of any of the jurisdictions of the parties nor of the jurisdiction of any of the initial shareholders, nor shall that arbiter be able to be an employee or agent, nor former employee or agent, of any of the said persons.



[Excerpts from the **ADMINISTRATION CONTRACT** between **Empresa Generadora de Electricidad Itabo, S.A.** and **NEW CARIBBEAN INVESTMENT** signed in Santo Domingo, Dominican Republic, 08 September 1999.]

## ARTICLE 1.- DEFINITIONS, RULES OF INTERPRETATION

...

Dispute *(Disputa)*: Any difference or disagreement of any nature between the Generator and the Subscriber Corporation or the Strategic Investor Shareholder in connection with or arising from this Contract or concerning the Generator, its Bylaws or its operations.

...

3.3  General Manager Administrator

By virtue of article 45 of the Bylaws and this Contract, the Board of Directors is empowered to designate a General Manager Administrator, whose functions and powers will be those established in the contract that is held to that effect, with the powers and faculties decided by said Board of Directors.

...

3.6  Commercial Company.

The Subscriber Corporation agrees to encourage the members it designates on the Board of Directors to carry out their functions in such fashion that the business of the Generator is carried out at all times as an independent company for profit. With the exception of that established otherwise in this Contract and with the exception of that approved otherwise by the CDE and the Subscriber Corporation prior to such transaction, all the commercial transactions between the Generator and the Subscriber Corporation and the CDE or any of its Linked Parties (or its officers or employees) will be conducted under treatment of equality with that which would be granted to unrelated third parties.

3.7.  Counterpart

The signing of this contact by the Subscriber Corporation implies the right to receive from the Generator, a fee *(canon)* for Technical Assistance and/or Technology Transfer (management fee), which cannot be greater than 2.75% of the net annual sales.

...

## ARTICLE 6.- RESOLUTION OF DISPUTES

Any Dispute, controversy or claim that may arise from this Contract or from non-compliance, termination or validity of same, will be resolved pursuant to the Bylaws.

...

7



[Excerpts from the CONTRACT FOR THE GRANTING OF RIGHTS FOR THE EXPLOITATION OF ELECTRIC WORKS RELATED TO THE SERVICE OF ELECTRIC GENERATION IN THE DOMINICAN REPUBLIC between CDE and ITABO, signed on 06 September 1999.]

## CONTRACT FOR THE GRANTING OF RIGHTS FOR THE EXPLOITATION OF ELECTRIC WORKS RELATED TO THE SERVICE OF ELECTRIC GENERATION IN THE DOMINICAN REPUBLIC

### SIGNED BY
THE *CORPORACIÓN DOMINICANA DE ELECTRICIDAD*

AND

THE *EMPRESA GENERADORA DE ELECTRICIDAD ITABO, S.A.*

ON THE DATE: 06 SEPTEMBER 1999
SANTO DOMINGO, DOMINICAN REPUBLIC

...

### ARTICLE 5.- OBLIGATIONS OF THE GENERATOR

The obligations of The Generator will be:

a) To carry out its activities subject to the established judicial framework and to adhere to the norms handed down by The Superintendency to decide the works that may be necessary for the services subject to this contract;

...

i) To increase the effective generation capacity of its Facilities for Generation, whether via the rehabilitation or conversion of its existing units or via the addition of new units in a minimum of one hundred megawatts (100 MW) during the first year of operation.

In the event that the Generator, having utilized its best efforts, should find it impossible to meet this obligations within the foreseen term, The Generator will have the automatic right to obtain an extension for a period no greater than six months. In such case, The Generator must communicate to The Superintendency, within a term no less than three (3) months before the first year of operation finalizes, the date on which the obligation will be met. In said communication, The Generator must show it has contracted and taken the other actions necessary to execute said increase within the indicated term and to justify the motives beyond the control of The Generator which provoked the non-compliance.

...

8

## ARTICLE 9.- RESOLUTION OF DISPUTES

a) Any Dispute that may arise from or with respect to this Contract and that may not be resolved by mutual consent among the parties in conflict, must be resolved at the request of any of the Parties, via arbitration held pursuant to the Law on Arbitration and under the Rules of Arbitration. The parties waive from now and forever the submission of any litigation to any court of the judicial or international order, except as expressed below in letter h *(sic)*.

...

k) In the event that the Dominican Republic should ratify the New York Convention and/or the Panama Convention, the parties accept to settle their disputes via international arbitration pursuant to the rules of the International Chamber of Commerce (ICC Rules of Conciliation) dated 1 January 1988, and under the laws of New York. No arbiter designated as per this article will be a citizen of the jurisdictions of any of the Parties, nor can that arbiter be an employee or agent nor a former employee or agent of any of said persons.

...



[Excerpts From the Dominican Code of Commerce]

...

Art. 5.8 – During the three months preceding the time set by the bylaws for the session of the general meeting[2], the *comisarios* will have the right, each time they deem it advisable to the corporate interests, to formally receive the books and examine the operations of the company ...

...

MFCS / June.05 / ITABO.All Excerpts.Final.English.cer

---

MADE AND SIGNED in Santo Domingo, Dominican Republic this thirtieth (30th) day of the month of June of the year two thousand and five (2005).

Mark Freehill
U.S. Certified Federal Court Interpreter No. 20293

---

[2] In the original Spanish *reunión de la junta general* - Translator

13

cederá a su nombramiento o a su reemplazo por auto del Presidente del Tribunal de Comercio del domicilio de la compañía, a instancia de cualquier interesado, y citados en forma los administradores.

(V. ley 813, del 19 de febrero de 1945, G. O. 6216). (Apéndice No. 18). Cuando después de realizadas las deducciones establecidas en la Ley y en los Estatutos, los beneficios netos anuales sean superiores al ocho por ciento del capital nominal de la sociedad y siempre que se ordene la repartición entre los accionistas de un dividendo no inferior a dicho porcentaje, la junta general anual podrá disponer, salvo disposición contraria de los Estatutos que se retenga la totalidad o parte del excedente de los beneficios netos anuales para constitución de reservas u otros fondos no previstos en la ley o en los estatutos.

Art. 58.— Durante el trimestre que preceda a la época fijada por los estatutos para la reunión de la junta general, los comisarios tendrán derecho, cada vez que lo juzguen conveniente al interés social, a tomar comunicación de los libros y examinar las operaciones de la compañía. En casos de urgencia, siempre podrán convocar la junta general.

Toda compañía por acciones (1) deberá formar, cada seis meses, un estado sumario de su situación activa y pasiva. Ese estado se pondrá a la disposición de los comisarios. Se formará además anualmente, conforme al artículo 9 del presente Código, un inventario que contenga la indicación de los valores muebles e inmuebles, y de todas las deudas activas y pasivas de la compañía. El inventario, el balance y la cuenta de las ganancias y pérdidas se pondrán a la disposición de los comisarios el cuadragésimo día, a más tardar, antes de la junta general, y serán presentados a esta junta (2).

---

(1) V. Ley 262 promulgada el 21 de febrero de 1919, G. O. No. 2990 (Apéndice No. 14).
(2) V. Ley 4548 del 22 de septiembre de 1956, G. O. No. 8032 (Apéndice No. 6).

Quince días por lo menos antes de la reunión de la junta general, todo accionista podrá enterarse, en el domicilio de la compañía, del inventario y de la lista de los accionistas, y hacer que le den copia del balance que resuma el inventario, y del informe de los comisarios.

Se separará anualmente la vigésima parte, por lo menos, de los beneficios líquidos, destinada a la formación de un fondo de reserva. Esa separación dejará de ser obligatoria, cuando el fondo de reserva haya alcanzado a la décima parte del capital social (3).

En caso de pérdida de las tres cuartas partes del capital social, los administradores estarán en el deber de convocar la reunión de la junta general de todos los accionistas, con el objeto de resolver sobre la cuestión de saber si hay lugar a decretar la disolución de la compañía. En cualquier caso, la resolución de la compañía será publicada. En caso de que por falta de los administradores no se reuna la junta general, como en el caso de que esta junta no haya podido constituirse regularmente, todo interesado podrá pedir la disolución de la compañía ante los tribunales.

Art. 59.— La disolución podrá decretarse a instancia de cualquiera parte interesada, pasado un año desde la época en que el número de los socios se haya reducido a menos de siete. El artículo 55 es aplicable a las compañías por acciones (1).

Se prohibe a los administradores tomar o conservar interés directo o indirecto en cualquiera empresa o trato hecho con la compañía o por cuenta de ésta, a menos que hayan sido autorizados para ello por la junta general. Se dará anualmente a la junta general una cuenta especial de la ejecución de los tratos o empresas autorizados por ella, en los términos del párrafo precedente.

---

(3) V. Ley No. 1241 promulgada el 14 de septiembre de 1946, G. O. 6503 (Apéndice No. 19).
(1) V. Ley No. 262 publicada el 21 de febrero de 1919, G. O. No. 2990 (Apéndice No. 14).